**ROSEN & ASSOCIATES, P.C.**
*Counsel to LAK3, LLC*
747 Third Avenue
New York, NY 10017-2803
(212) 223-1100
Sanford P. Rosen

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**POUGHKEEPSIE DIVISION**

| | |
|---|---|
| In re:<br><br>SEAN M. DUNN,<br><br>　　　　　　　　　　　Debtor. | Chapter 7<br><br>Case No. 18-36566 (CGM) |

**MOTION FOR RELIEF FROM THE AUTOMATIC STAY**
**TO CONCLUDE STATE COURT LITIGATION**

TO THE HONORABLE CECELIA G. MORRIS,
CHIEF UNITED STATES BANKRUPTCY JUDGE:

　　　　　LAK3, LLC ("**LAK3**" or the "**Movant**"), a creditor of Sean M. Dunn, the above-captioned debtor (the "**Debtor**"), by its counsel, Rosen & Associates, P.C., as and for its motion (the "**Motion**") for the entry of an order, pursuant to 11 U.S.C. §362(d) and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure, granting relief from the automatic stay to conclude litigation in the State Court Action (defined herein), respectfully represents as follows:

**JURISDICTION, STATUTORY PREDICATE AND VENUE**

　　　　　1.　　　This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this case is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

# BACKGROUND

2. On August 4, 2017, LAK3 filed suit against (a) the Debtor; (b) his brother Gerald Dunn ("**Gerald**"); and (c) Well Dunn Maintenance & Contracting, the entity through which LAK3 believed the Debtor and Gerald did business ("**Well Dunn**"[1] collectively with the Debtor and Gerald, the "**State Court Defendants**") in the Supreme Court of the State of New York, County of Westchester (the "**State Court**"), in an action styled, *LAK3, LLC v. Sean Dunn, Gerald Dunn, and Well Dunn Maintenance & Contracting*, Index No. 61510/2017 (the "**State Court Action**"). A copy of the complaint in the State Court Action is annexed hereto as *Exhibit B*.

3. In the State Court Action, LAK3 asserts claims against the Debtor for fraud, breach of contract, breach of fiduciary duty and New York Lien Law trust fund diversion, and seeks damages in excess of one million dollars ($1,000,000) in connection with the Debtor's role as general contractor, hired to construct a single-family residence for LAK3.

4. On September 29, 2017, the State Court Defendants filed an Answer with Counterclaims, and on November 20, 2017, LAK3 moved to dismiss the counterclaims for lack of standing, as the State Court Defendants were unlicensed home improvement contractors who could not bring such claims against LAK3. On December 8, 2017, the State Court Defendants agreed to withdraw the counterclaims with prejudice.

5. On July 26, 2018, prior to the Debtor seeking relief in this Court, LAK3 moved for partial summary judgment (the "**Summary Judgment Motion**") against the State Court

---

[1] LAK3 has since learned that Well Dunn, which the Debtor has admittedly used as a trade name to conduct business during the relevant time period, is not a properly formed legal entity. *See* Ex. B at Ex. 2, 64. Upon information and belief, after filing his Petition herein, the Debtor subsequently incorporated an entity under the name, "Well Dunn Construction Corp." and, according to the online contractor listing provided by the Putnam County Department of Consumer Affairs, obtained a home improvement contractor's license from Putnam County. *See* Debtor's Amended Schedules of Assets [Doc. No. 9].

Defendants on its claims for breach of fiduciary duty and diversion of lien law trust funds, based on various admissions by the State Court Defendants, including the Debtor, revealed during discovery in the State Court Action. A copy of the papers submitted in support of the Summary Judgment Motion is annexed hereto as *Exhibit C*.

6. On September 17, 2018 (the "**Petition Date**"), the Debtor filed in this Court a voluntary petition under chapter 7 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**"). The Summary Judgment Motion was fully submitted but undecided when the State Court Action was stayed as to the Debtor, as a result of the Debtor's bankruptcy filing.

7. Fred Smith, Esq. was appointed interim trustee pursuant to 11 U.S.C. § 701(a)(1) and is now serving as the trustee in the case pursuant to 11 U.S.C. § 702(d).

8. On September 21, 2018, LAK3 filed its reply in further support of the Summary Judgment Motion, in part making clear to the State Court that, in light of the Debtor's bankruptcy, LAK3 was no longer pursuing any claims in the State Court as against the Debtor. A copy of the reply affirmation of Michael R. Gordon in support of the State Court Summary Judgment Motion is annexed hereto as *Exhibit D*.

9. On November 26, 2018, LAK3 timely filed a proof of claim in this Court, asserting a claim for two million dollars ($2,000,000) based upon the Debtor's fraud (the "**Proof of Claim**").

10. On November 21, 2018, LAK3 filed a *Complaint Seeking Determination of (i) Dischargeability of Debt Pursuant to 11 U.S.C. §§ 523(a)(2), (4) and (6); and (ii) Denial of Debtor's Discharge Pursuant to 11 U.S.C. § 727(a)(3)*, commencing an adversary proceeding in

this Court (18-09038). The complaint is based on the identical set of facts which gave rise to the State Court Action.

11. On December 17, 2018, LAK3 amended the complaint to include two additional counts for denial of discharge under 11 U.S.C. §§ 727(a)(2) and (4) (the "**Amended Complaint**"). A copy of the Amended Complaint is annexed hereto as *Exhibit E*.

12. On January 3, 2019, the Debtor filed an answer to the Amended Complaint, in which he denied its substantive allegations.

13. On January 29, 2019, this Court convened a pretrial conference at which LAK3 requested and obtained this Court's permission to move for summary judgment on certain causes of action based upon the Debtor's pre-Petition admissions.

14. LAK3 has since concluded that its resources as well as those of this Court will be best preserved and more efficiently deployed if LAK3 prosecutes the State Court Action to judgement, and then seeks to enable this Court to rely upon that judgment to adjudicate the claims asserted in the Amended Complaint.[2]

## RELIEF REQUESTED

15. By this Motion, the Movant seeks the entry of an order granting it relief from the automatic stay in order to conclude the State Court Action. Notably, the Movant does not seek stay relief to recover on any judgment it may obtain in the State Court Action from assets that constitute property of the Debtor's estate.

---

[2] Prior to filing of the Petition in this Court, the State Court Defendants asserted third-party claims in the State Court Action. A copy of the third-party complaint is attached hereto as *Exhibit F*. Prior to the commencement of this case, the third-party defendants in the State Court Action moved to dismiss the third-party claims. That motion was also suspended when the Petition herein was filed and the automatic stay went into effect. In order to achieve finality in the State Court Action, lifting of the automatic stay should permit the resolution of all litigation in the State Court Action.

4

## BASIS FOR RELIEF REQUESTED

16. The requested relief is warranted under section 362(d)(1) of the Bankruptcy Code, which permits a court, upon "request of a party in interest and after notice and a hearing," to grant relief from the stay by "modifying, or conditioning such stay... *for cause*." 11 U.S.C. § 362(d) (emphasis added). The burden is on the moving party to make an initial showing of cause. *See In re Taub,* 438 B.R. 39, 44 (Bankr. E.D.N.Y. 2010).

17. The United States Court of Appeals for the Second Circuit has observed that neither the statute nor the legislative history defines the phrase "for cause," but in deciding whether cause exists to allow litigation to proceed in another forum, courts should consider the following factors (the "*Sonnax* **factors**"):

> (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

*See Sonnax Industries, Inc. v. Tri Component Products Corporation (In re Sonnax Industries)*, 907 F.2d 1280, 1286 (2d Cir. 1990); *see also In re Arnott*, 512 B.R. 744, 754 (S.D.N.Y Bankr. 2014) ("Application of the relevant Sonnax factors favors lifting the stay to allow Plaintiff to continue to prosecute her claims in district court"); *In re Fucilo*, No. 00-36261 (CGM), 2002 WL 1008935

(Bankr. S.D.N.Y. Jan. 24, 2002) (based on *Sonnax* factors, claims against debtor should proceed in state court action, with issues of dischargeability to be returned to the bankruptcy court). In a given case, a court need only apply the factors that are relevant and not need give each factor equal weight. *See Mazzeo v. Lenhart (In re Mazzeo),* 167 F.3d 139, 143 (2d Cir. 1999), *In re Keene Corp.*, 171 B.R. 180, 183 (Bankr. S.D.N.Y. 1994).

18.    Here, as set forth more fully below, consideration of the relevant *Sonnax* factors makes clear that the Movant's request for a limited modification to the automatic stay is warranted and should be granted.

### A. *Sonnax* factor 1: Complete Resolution of the Issues

19.    Relief from the automatic stay to conclude the State Court Action will result in a complete resolution of the issues, as it would enable the State Court, familiar with the facts of the case as well as the applicable state law, to resolve the dispute as to all State Court Defendants, including the third-party defendants in an expeditious fashion. Otherwise, requiring the Movant to liquidate its claim against the Debtor in this Court would result in duplicate litigation and the potential for inconsistent results. *See Schneiderman v. Bogdanovich (In re Bogdanovich)*, 292 F.3d 104, 114 (2d Cir. 2002) (permitting pending litigation to proceed if it would, "with some certainty, resolve [certain] outstanding questions before the bankruptcy court"), *In re Project Orange Assocs., LLC,* 432 B.R. 89, 108 (Bankr. S.D.N.Y. 2010) ("[G]iven the state court's familiarity with the issues... it is likely in a better position to give a quick ruling in the matter."), *In re Metz,* 165 B.R. 769, 771 (E.D.N.Y. 1994) (holding that it is prudent to modify the stay to avoid inconsistent rulings).

### B. *Sonnax* factor 2: Lack of Connection with and Interference with the Bankruptcy Case

20. Prosecution of the State Court Action will have no effect on the orderly administration of the Debtor's bankruptcy case, and will certainly not interfere with it. Instead, because the Movant is only seeking to liquidate (but not enforce) its claim and obtain findings of fact and conclusions of law that will provide the jurisprudential underpinning for this Court to determine nondischargeability and denial of discharge in the adversary proceeding, continuance of the State Court Action will actually contribute substantially towards the efficient administration of the Debtor's estate. *See In re G.S. Distribution, Inc.,* 331 B.R. 552, 567 (Bankr. S.D.N.Y. 2005) (litigation limited to liquidation of claims does not interfere with the bankruptcy case when the creditor may not enforce any judgment without further order of the court), *In re New York Med. Grp., P.C.,* 265 B.R. 408 (Bankr. S.D.N.Y. 2001) (same).

### C. *Sonnax* factor 4: Whether a Specialized Tribunal has been Established to Hear the Cause of Action

21. While no specialized tribunal has been established, all the claims asserted in the State Court Action strictly involve issues of New York law, including New York Lien Law. Thus, although this Court is certainly able, the State Court is the most appropriate forum because it is familiar with the legal framework of the causes of action as well as the factual history of the matter.

22. As already mentioned, the State Court Action has been pending since 2017 and, during that time, the trial judge assigned to the case has become intimately familiar with the extensive pre-trial discovery and relevant legal and factual issues. *See Project Orange Assocs., LLC,* 432 B.R. at 109 ("state court most efficient and appropriate place...considering [the state court judge's] involvement in the various actions."). Thus, although the State Court is not a

"specialized" tribunal in the usual sense, because it has intimate knowledge of the procedural history and applicable law, this factor strongly favors relief from the automatic stay.

    **D.  *Sonnax* factor 6: Involvement of Third Parties**

23. As noted above, there are two non-debtor State Court Defendants as well as three third-party defendants involved in the State Court Action. However, because the Debtor was the individual most involved with the claims at issue in the State Court Action, the automatic stay has prevented LAK3 from making any meaningful progress in prosecuting its claims against the non-Debtor State Court Defendants, and the third-party defendants' efforts to move to dismiss the claims against them have also stalled. *See Exhibit G* (correspondence from attorneys for the third-party defendants concerning the confusion surrounding the extent to which the stay in this Court will impact the State Court proceedings). Lifting the stay here will also serve to end that confusion. As such, this factor also militates in favor of stay relief.

    **E.  Sonnax factor 7: Whether Litigation in Another Forum would Prejudice the Interests of other Creditors**

24. The interests of other creditors would not be affected by the relief sought hereby because the State Court's liquidation of the Movant's claim will not harm the Debtor's estate or his other creditors. *See In re Robbins,* 964 F.2d 342, 346 (4th Cir. 1992) (holding that lifting the stay to permit the liquidation of a claim in another forum does no harm to the estate or creditors where the bankruptcy court retains jurisdiction over the allowance of claims against the estate). Upon information and belief, the Chapter 7 Trustee serving in this case has filed a report indicating that there are no assets of the estate to be administered - creditors holding discharged claims will receive nothing; those whose claims are not excepted from discharge will be free to enforce their claims against the Debtor's non-estate, non-exempt property in accordance with applicable state law.

25. Assuming, *arguendo*, there were estate property sufficient to make distributions to creditors, while the allowance of one creditor's claim necessarily "reduce[s] the recovery available to other creditors," this is not prejudice, for the same "can be said about every other claim." *New York Med. Grp., P.C.,* 265 B.R. at 414. In addition, "[p]ursuit of the litigation" will "not prejudice the Debtor's other creditors because... [the Movant] cannot enforce any money judgment it may receive without permission from this Court." *In re G.S. Distribution, Inc.*, 331 B.R. 552, 567-68 (Bankr. S.D.N.Y. 2005). Thus, modifying the stay to permit the State Court Action to proceed "would not harm the Debtor or [its] creditors," as it "would not alter the right of any creditor to participate in a distribution from the Debtor's bankruptcy case." *In re Fucilo,* No. 00-36261, 2002 WL 1008935, at *9 (Bankr. S.D.N.Y. Jan. 24, 2002).

**F.** ***Sonnax* factor 10: Interests of Judicial Economy and Expeditious and Economical Resolution of Litigation**

26. The interests of judicial economy and expeditious resolution of litigation also favor relief from the stay here. As noted above, resolution of the claims herein can most expeditiously be carried out by the State Court, which has been exposed to extensive pre-trial discovery and is best able to address the claims of all parties in a single uniform proceeding. This factor is especially important here, where, as mentioned, prosecution against the non-Debtor State Court Defendants and third-party defendants, although unaffected by the automatic stay, has nevertheless come to a halt. When an action "has been pending... for years," and other courts have "devoted substantial resources" to the litigation already, the "totality of the circumstances ...weighs heavily in favor of allowing the... [a]ction to proceed unencumbered by... the automatic stay." *Crown Heights Jewish Cmty. Council, Inc. v. Fischer (In re Fischer),* 202 B.R. 341, 355 (E.D.N.Y. 1996).

27. Moreover, as already mentioned, resolution by the State Court of the claims asserted in the Amended Complaint will alleviate the need for extensive duplicative proceedings. *In re Cicale,* No. 05-14462 AJG, 2007 WL 1893301, at *4 (Bankr. S.D.N.Y. June 29, 2007).

### G. *Sonnax* factor 10: Whether the Parties are Ready for Trial

28. When stayed litigation has already "reached an advanced stage," courts have typically "shown a willingness to lift the stay to allow the litigation to proceed." *IBM v. Fernstrom Storage & Van Co. (In re Ferstom Storage & Van Co.),* 938 F.2d 731, 737 (7th Cir. 1991). There is particularly good reason to modify the stay when a prepetition action "has progressed to the point where it would be a waste of the parties' and the court's resources to begin anew in the bankruptcy court," *Curtis,* 40 B.R. at 805, or when "[a]nother court has extensive knowledge of the facts and issues and has already made detailed findings," *In re SCO Group, Inc.,* 395 B.R. 852, 857 (Bankr. D. Del. 2007). Here, the State Court Action is nearly at the trial stage as to claims that the State Court does not dispose by way of summary judgment. Indeed, the State Court judge has reviewed the parties' detailed summary judgment submissions and decided that all claims should be resolved at trial. Accordingly, this factor also militates in favor of granting relief from the stay.

### G. *Sonnax* factor 12: Impact of the Stay on the Parties and the Balance of Harms

29. The Debtor will suffer no cognizable prejudice from stay modification. To be sure, he will be burdened by prosecuting his defense, but he would bear that defense burden even if the issues to be tried in the State Court Action were litigated here. Moreover, this Court has already held that "increased litigation costs do not rise to the level of prejudice" needed under *Sonnax. In re Keene Corp.,* 171 B.R. 180, 185 (Bankr. S.D.N.Y. 1994); *Burger Boys, Inc., v. S. St. Seaport Ltd. P'ship (In re Burger Boys, Inc.),* 183 B.R. 682, 688 (S.D.N.Y. 1994) ("[T]he increased

costs of litigating in a particular forum are not so prejudicial as to require continuance of a stay."). Here, because stay relief is the most efficient way of adjudicating the substantially similar, if not identical claims, asserted in the State Court Action and the Amended Complaint, the Debtor will benefit from reduced litigation costs.

30. Moreover, there is no evidence that the Debtor is unable to retain counsel, nor would any such inability be a reason to deny relief to the Movant. *See Cicale,* 2007 WL 1893301, at *5 (the fact that debtor is unable to procure counsel in the non-bankruptcy forum does not prevent stay relief, especially when there is a pending nondischargeability action premised under the same facts).

31. However, absent stay relief, Movant will be required to proceed in piecemeal fashion, prosecuting the Amended Complaint against the Debtor in this Court while also prosecuting the State Court Action against the non-Debtor defendants in the State Court, contending with a multiplicity of proceedings on the same issues, all while risking inconsistent results. *See In re SCO Grp., Inc.,* 395 B.R. 852, 859 (Bankr. D. Del. 2007) (finding prejudice to the movant when it "has already spent significant time and resources preparing for" litigation in another forum, and when the movant's "rights in these bankruptcy cases remain[] undetermined"). This harm to LAK3 would outweigh any harm to the Debtor.

32. The underlying principles and legislative history of section 362(d)(1) of the Bankruptcy Code "emphasize the importance of allowing a case to continue in the original tribunal so long as there is no prejudice to the estate." *SCO Group,* 395 B.R. at 857. Because such prejudice is absent, this factor strongly favors stay relief.

## CONCLUSION

33. In view of the foregoing, Movant respectfully requests that the Motion be granted.

WHEREFORE, Movant respectfully requests that this Court (i) enter an order, substantially in the form annexed hereto as *Exhibit A,* and (ii) grant it such other and further relief as to this Court seems just and proper, for all of which no prior request has been made to this or any other court.

Dated: February 14, 2019
      New York, New York

                            **ROSEN & ASSOCIATES, P.C.**
                            *Counsel to LAK3, LLC*

                            By: /s/ Sanford P. Rosen
                                   Sanford P. Rosen

                            747 Third Avenue
                            New York, NY 10017-2803
                            (212) 223-1100