# EXHIBIT C

**WORKING COPY**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

| | |
|---|---|
| LAK3, LLC,<br><br>    Plaintiff,<br><br><br>   -against-<br><br><br>SEAN DUNN, GERALD DUNN, AND WELL<br>DUNN MAINTENANCE & CONTRACTING,<br><br>   Defendants. | **INDEX NO. 61510/2017**<br><br><br>**IAS PART**<br><br><br>**JUSTICE**<br><br>**PLAINTIFF'S NOTICE OF MOTION<br>FOR PARTIAL SUMMARY<br>JUDGMENT** |

SEAN DUNN, GERALD DUNN, AND WELL
DUNN MAINTENANCE & CONTRACTING,

   Third-Party Plaintiffs,


   -against-


MICHAEL PICCIRILLO ARCHITECTURE PLLC,
MICHAEL PICCIRILLO, and VLADIMIR LEVIN,

   Third-Party Defendants.

**PLEASE TAKE NOTICE** that upon the annexed affirmation of Michael R.

Gordon, dated July 26, 2018, the exhibits annexed thereto, and the accompanying memorandum

of law, Plaintiff LAK3, LLC ("Plaintiff") will move this Court, at the Courthouse, 111 Dr.

Martin Luther King Jr. Blvd, White Plains, New York 10601, on August 20, 2018 at 9:30 a.m.,

1

or as soon thereafter as counsel can be heard, for an Order, pursuant to CPLR Rule 3212(e),

granting Plaintiff partial summary judgment in on liability on Plaintiff's Fourth and Fifth Causes

of Action in the Complaint in the captioned action, and for such other and further relief as is just

and proper.

**PLEASE TAKE FURTHER NOTICE THAT**, pursuant to CPLR Rule 2214(b),

answering papers and any cross-motion must be served at least seven days before the return date

of this motion.

Dated: Katonah, New York
July 26, 2018

GordonLaw LLP

By: _____
Michael R. Gordon

*Attorneys for Plaintiff LAK3, LLC*

51 Bedford Road, Suite 10
Katonah, New York 10536
Telephone    914.232.9500
Email        mgordon@gordonlawllp.com

TO:    WILLIAM A. SHILLING, JR., P.C.
       122 Old Route 6
       Carmel, New York 10512

       *Attorneys for Defendants*

       Michael Piccirillo Architecture, PLLC
       Michael Piccirillo
       Vladimir Levin
       345 Kear Street, Suite 203
       Yorktown Heights, New York 10598

       *Third-Party Defendants*

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

LAK3, LLC,

        Plaintiff,

        -against-

SEAN DUNN, GERALD DUNN, AND WELL
DUNN MAINTENANCE & CONTRACTING,

        Defendants.

**INDEX NO. 61510/2017**

**IAS PART**

**JUSTICE**

SEAN DUNN, GERALD DUNN, AND WELL
DUNN MAINTENANCE & CONTRACTING,

        Third-Party Plaintiffs,

        -against-

MICHAEL PICCIRILLO ARCHITECTURE PLLC,
MICHAEL PICCIRILLO, and VLADIMIR LEVIN,

        Third-Party Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

**GORDONLAW LLP**
**51 Bedford Road, Suite 2**
**Katonah, New York 10536**
**914.232.9500**
**mgordon@gordonlawllp.com**

## Table of Contents

Preliminary Statement...................................................................................1

Statement of Undisputed Facts......................................................................3

A.    Defendants knowingly furnished home improvement contracting work for
Plaintiff without a written contract.................................................................3

B.    Defendants Sean Dunn and Gerald Dunn used Well Dunn as their trade name; as of
August 2016, Well Dunn was not an entity of any kind......................................5

C.    Although Plaintiff paid Defendants $840,828.22 for the Project, Defendants stated that
they only paid subcontractors and suppliers $379,793.50...................................6

D.    Defendants are not licensed home improvement contractors, although they held
themselves out as such when they secured the Project from Plaintiff.......................7

E.    Defendants did not carry workers' compensation insurance for the Project.................8

F.    Defendants comingled Project-related monies with other monies and used Plaintiff's
money to pay for non-Project related expenses.................................................8

G.    Defendants kept almost no records regarding the Project and kept absolutely no records
as to cash paid to their laborers, who were all paid "off the books".........................10

Procedural History......................................................................................12

Argument...............................................................................................13

       PLAINTIFF IS ENTITLED TO PARTIAL SUMMARY JUDGMENET.................13

   A.  The legal standard applicable to this motion.................................................13

   B.  Plaintiff is entitled to partial summary judgment on the Fourth and Fifth Causes of Action
      for Breach of Fiduciary Duty and Lien Law Trust Fund Diversions.......................15

      1.  The Fourth Cause of Action: breach of fiduciary duty............................15

         a.  Defendants owe Plaintiff a fiduciary duty with respect to the funds that
            Plaintiff paid to Defendants......................................................16

i

      b.  Defendants breached their fiduciary duty to Plaintiff with respect to the monies paid to them by Plaintiff.................................................18

      c.  Plaintiff has been damaged by Defendants' breach of fiduciary duty......19

   2.  Fifth Cause of Action: Lien Law Trust Fund Diversion..........................19

Conclusion...........................................................................................22

ii

# Table of Authorities

***Cases***                                                                                             ***Page***

*AABCO Sheet Metal Co. v. Lincoln Ctr. For the Performing Arts,*
    174 Misc.2d 232, 663 N.Y.S.2d 490 (Sup. Ct. N.Y. Co. 1997)..........................16, 19

*Armentano v. Paraco Gas Corp.,*
    90 A.D.683, 935 N.Y.S.2d 304 (2d Dep't. 2011)..........................................15-16

*Atlas Bldg. Sys. v. Rende,*
    236 A.D.2d 494, 653 N.Y.S.2d 694 (1997)...............................................18

*Breslin Realty Dev. Corp. v. Lituchy,*
    269 A.D.2d 554, 703 N.Y.S.2d 746 (2d Dep't. 2000).....................................4

*Cohen Fashion Opt., Inc. v. V & M Opt., Inc.,*
    51 A.D.3d 619, 858 N.Y.S.2d 260 (2d Dep't. 2008)......................................13

*Fleck v. Perla,*
    40 A.D.2d 1069, 339 N.Y.S.2d 246 (4th Dep't. 1972)....................................18

*Golden Eagle/Satellite Archery v. Epling,*
    244 A.D.2d 959, 665 N.Y.S.2d 169 (4th Dep't. 1997)....................................16

*Holt Constr. Corp. v. Grand Palais, LLC,*
    108 A.D.3d 593, 969 N.Y.S.2d 499 (2d Dep't. 2013)....................................18

*Hulse v. Summerlin, LLC,*
    17 A.D.3d 317, 792 N.Y.S.2d 577 (2d Dep't 2005).......................................14

*Ideal Supply Co., Inc. v. Interstate Fire Protection, Inc.,*
    2016 N.Y. Misc. LEXIS 4242, 2016 NY Slip Op 32273(U) (Sup. Ct. N.Y. CO. 2016)
    .............................................................................18

*Ippolito v. TJC Dev., LLC,*
    83 A.D.3d 57, 920 N.Y.S.2d 108 (2d Dep't 2011).....................17, 18, 19, 20, 21

*Jorge v. Piola Prop. Mgt. LLC,*
    2017 N.Y. Misc. LEXIS 2428, 2017 NY Slip Op 50837(U) (Sup. Ct. Nassau Co. 2017)
    .............................................................................17

*JSignal LLC v. Artisan Constr. Partners LLC,*
    2017 N.Y. Misc. LEXIS 2436, 2017 NY Slip Op 31348(U) (Sup. Ct. N.Y. Co. 2017)
    .............................................................................17

*Landow & Landow Architects, P.C. v. Shorefront Jewish Geriatric Ctr.,*
    289 A.D.2d 492, 734 N.Y.S.2d 645 (2d Dep't. 2001).....................................4

iii

*LG Capital Funding, LLC v. Sanomedics Intl. Holdings, Inc.,*
    2015 N.Y. Misc. LEXIS 4294, 2015 NY Slip Op 32232(U) (Sup. Ct. Kings Co. 2015)
    .................................................................................................14-15

*Nichols v. Hartford Fire Ins. Co.,*
    61 A.D.2d 555, 403 N.Y.S.2d 335 (3d Dep't. 1978)...........................................14

*NY Professional Drywall of OC, Inc. v. Rivergate Dev., LLC,*
    100 A.D.3d 216, 952 N.Y.S.2d 852 (3d Dep't. 2012).......................................16

*Pacheco v. City of New York,*
    2010 N.Y. Misc. LEXIS 2426, 2010 NY Slip Op 31400(U) (Sup. Ct. N.Y. Co. 2010)...15

*People v. Valenza,*
    60 N.Y.2d 363, 469 N.Y.S.2d 642 (1983)...................................................16

*Prestige Plumbing & Heating, Inc. v. B&B Constr., Inc.,*
    2013 N.Y. Misc. LEXIS 4279, 2013 NY Slip Op 32262(U) (Sup. Ct. N.Y. Co. 2013)...18

*Quilliams v. Half Hollow Hills School Dist. (Candlewood School),*
    67 A.D.3d 763, 892 N.Y.S.2d 397 (2d Dep't. 2009)........................................14

*RLI Ins. Co., Sur. Div. v. New York State Dept. of Labor,*
    97 N.Y.2d 262, 740 N.Y.S.2d 276......................................................20, 21

*SantiEsteban v. Crowder,*
    92 A.D.3d 544, 939 N.Y.S.2d 28 (1st Dep't. 2012)..........................................16

*Serge Dore'Selections Ltd. v. Universal Wines & Spirits,*
    20 Misc.3d 1121(A), 867 N.Y.S.2d 378 (Sup. Ct. Westchester Co. 2008).................13

*Smallwood v. Lupoli,*
    107 A.D. 3d 782, 968 N.Y.S.2d 515 (2d Dep't. 2013)......................................15

*South Carolina Steel Corp. v. Miller,*
    170 A.D.2d 592, 566 N.Y.S.2d 368 (1991)...................................................18

*Zuckerman v. New York,*
    49 N.Y.2d 557, 427 N.Y.S.2d 595 (1980)....................................................13

**_Statutes_**

CPLR 3212(b)...........................................................................................13

CPLR 3212(e)...........................................................................................14

Labor Law §240 (1)................................................................................14, 15

Lien Law §70.......................................................................................16, 20

Lien Law §70(3)........................................................................................20

iv

Lien Law §71......................................................................................16, 21

Lien Law §71-a.....................................................................................16

Lien Law §71-a(4).................................................................................17

Lien Law §71-a(4)(a).............................................................................20

Lien Law §72.......................................................................................20

Lien Law §72(1)....................................................................................20

v

## Preliminary Statement

Plaintiff hereby moves pursuant to CPLR Rule 3212(e) for Partial Summary Judgment on

its Fourth and Fifth Causes of Action for, respectively, breach of fiduciary duty and Lien Law

Trust Fund diversion. The bases for this motion are (a) the deposition testimony of Defendants

Sean Dunn and Gerald Dunn and (b) clear and unambiguous documentation either produced by

Defendants, obtained from public sources, or substantively indisputable. This motion does not

rest on or require any statements by any Plaintiff's representatives.

This is a construction case.

In or about January 2016, Plaintiff, a limited liability company owned by Westchester

County residents Ned and Leslie Kleinschmidt and managed by Ned Kleinschmidt, entrusted

Westchester County residents Sean and Gerald Dunn and what they were led to believe was a

stand-alone business entity known as Well Dunn Maintenance and Contracting ("Well Dunn") to

build a single-family residence for the Kleinschmidts on Lake Mahopac (the "Project"). As it

turned out, none of the Defendants was (or is today) a licensed home improvement contractor in

Putnam County, Westchester County, or anywhere else for that matter.[1]

Things only got worse for Plaintiff once the Project began: among other things, (*a*) in

violation of General Business Law § 771 and § 135-5 of the Putnam County Administrative

Code, Defendants refused to, and never did, enter into a signed, written contract with Plaintiff,

and (*b*) in violation of the Lien Law, Defendants (and Sean Dunn's then fiancé) repeatedly and

---

[1]     The extent of Defendants' blatant disregard for the law is evident from the no doubt unusual
decision by the Department of Consumer Protection of Westchester County, which revoked Sean Dunn's
home improvement contractor license (apparently issued in the name of Sean Dunn doing business as
Well Dunn) in May 2015 because (a) he was operating an unlicensed home improvement contractor
business and (b) failed to pay the $10,000 in penalties that Westchester County assessed against him. *See*
Gordon Aff., Exh. 13.

with no hesitation whatsoever, dipped into the $840,828.22 Defendants extracted from Plaintiff (and deposited into two personal bank accounts[3]) for things such as car payments, exotic vacations, fancy Manhattan restaurants, high end clothing sprees, the payment of personal credit card bills, and other expenses having nothing to do with the construction of Plaintiff's house on Lake Mahopac.[2] Lest there be any doubt about the extent of Defendants' gross misuse of monies that Plaintiff paid for the construction of their house and Defendants' consequent violation of the New York Lien Law, Sean Dunn gave the following astonishing testimony:

> Q. So in other words, you use the bank account into which you put client money to pay your personal expenses, and that's how you compensate yourself?
>
> A. Yeah.
>
> Q. How long have you been doing that?
>
> A. Since I've started my business.

Gordon Aff., Exh. 2 (Transcript of deposition testimony of Sean Dunn) at 55:2-8.

Put simply, Defendants took unfair advantage of the position of trust and confidence Plaintiffs gave them, diverted for their own self-interest what were plainly Lien Law Trust funds, misused hundreds of thousands of dollars that did not belong to them, obtained money from Plaintiff under false pretenses, and repeatedly committed defalcations while acting as fiduciaries.

---

[2] As noted below, Plaintiff is not challenging at this time, on this motion, the construction errors and omissions by Defendants that plagued the Project. Those issues will be raised separately at trial.

[3] Sean Dunn first opened a personal bank account at Chase Bank and then transferred those funds to a personal account at Putnam County Savings Bank (Gordon Aff., Exhs. 15). These accounts were not business accounts for an entity that presented appropriate entity formation documentation; they were personal accounts opened in the name of Sean Dunn that he, his girlfriend, and his brother Gerald all tapped on a regular basis to satisfy their own personal and non-Project needs.

2

To be sure, aside from the numerous, material defalcations set forth in this motion, Plaintiff was severely damaged by the atrocious lack of quality and the exasperating delays and poor or non-existent construction management that Defendants inflicted on Plaintiff. Plaintiff will prove the extent of, and quantify the damage Plaintiff suffered as a result of, Defendants' construction deficiencies at trial. For now, Plaintiff seeks partial summary judgment only as to Defendants' liability under the Fourth and Fifth Causes of Action based on the following undisputed facts, each of which, alone or together, constitutes a basis for partial summary judgment in favor of Plaintiff on those claims:

- Defendants never entered into a written contract with Plaintiff for the Project;

- Defendants failed to maintain required home improvement contractor licenses;

- Defendants falsely represented that Well Dunn is a real business entity (it is not);

- Defendants falsely represented that they were properly insured (they were not);

- Defendants failed to keep required financial records (they did not); and

- Defendants improperly applied Lien Law trust funds for inappropriate purposes.

### Statement of Undisputed Facts

The following statement of undisputed facts is drawn from the accompanying affirmation of Michael R. Gordon, dated July 26, 2018 (the "Gordon Aff."), and the exhibits thereto. The Gordon Aff., in turn, is based on statements made by Defendants Sean Dunn and Gerald Dunn at their respective depositions, together with indisputable and unambiguous documentation.

**A.** **Defendants knowingly furnished home improvement contracting work for Plaintiff without a written contract**

Defendants admit that in or about January 2016, "Well Dunn" entered into an "oral" contract with Plaintiff to construct a single-family residence at the property known as 41 Averill Road, Mahopac, Putnam County, New York (the "Project"). Gordon Aff., Exh. 1 (Defendants'

3

Verified Answer and Counterclaim (the "Answer")), ¶¶ 109, 111; *see also* Gordon Aff., Exh. 2

(Deposition Transcript of Sean Dunn, ("SD Dep. T'Script")) at 146:4-6. There was no written

contract between the parties; it was oral. *See* Gordon Aff., Exhs. 1 (Answer), ¶ 111; 2 (SD Dep.

T'Script) at 170:2-5; 3 (Plaintiff's Notice to Admit ("Notice to Admit")), ¶¶ 2 and 5; and 4

(Defendants' Responses to Plaintiff's Notice to Admit ("Response to Notice to Admit")), ¶¶ 2

and 5. Defendants admit they began working on the Project in or about February 2016, were

awarded the role of Project General Contractor on or about March 18, 2016, and continued

working on the Project, without a written contract, until they were terminated on June 19, 2017.

Gordon Aff., Exhs. 1 (Answer), ¶¶ 32, 109, 111; and 5 (Deposition Exhibit P-24, Termination

Notice dated June 19, 2017). According to Defendants, their Project work consisted of "site

work, excavation, partial demolition, and construction." *Id.*, ¶ 113.

Sean Dunn admitted that when Defendants were terminated, the exterior finish had not

been applied to the house, the roof was not substantially complete, the mechanical work was not

substantially complete, the electrical work was not substantially complete, and, most critically,

the house was not suitable for human occupancy, rendering it substantially incomplete. *See*

*generally* Gordon Aff., Exh. 2 (SD Dep. T'Script) at 165-67).[3]

---

[3]     Since the purpose of the Project was to build a single family residence, and since it was not
habitable, substantial completion had not been achieved. *See Landow & Landow Architects, P.C. v.
Shorefront Jewish Geriatric Ctr.*, 289 A.D.2d 492, 493, 734 N.Y.S.2d 645, 646 (2d Dep't, 2001)
("substantial completion of the project occurred no later than May 1994, when the premises was occupied
for its intended use"); *Breslin Realty Dev. Corp. v. Lituchy*, 269 A.D.2d 554, 554, 703 N.Y.S.2d 746 (2d
Dep't 2000) ("substantial completion, as that term is defined in the agreement, occurred no later than
November 7, 1994, when the premises was occupied for its intended use.").

4

**B.** **Defendants Sean Dunn and Gerald Dunn used Well Dunn as their trade name; as of August 2016, Well Dunn was not an entity of any kind**

Although Defendants state that "*Well Dunn* issued invoices for all work and change orders required under the Contract, and Plaintiffs [sic], in fact, paid the value of these invoices to *Well Dunn,*" Well Dunn is actually just a trade name for Sean and Gerald Dunn. Gordon Aff., Exh. 4 (Response to Notice to Admit), No. 7. Defendant Sean Dunn admitted at his deposition that Well Dunn is a trade name under which he operates. Gordon Aff., Exhs. 2 (SD Dep. T'Script) at 35:7-11 ("I just kept operating as a d/b/a.") and 4 (Response to Notice to Admit), ¶¶ 7, 11. Throughout the Project, Well Dunn was not a corporation, partnership, limited liability company or any other form of stand-alone business association. Gordon Aff., Exhs. 6 (Dep. Exh. P-12, NYS Department of State Entity Information Page); and 4 (Response to Notice to Admit), ¶¶ 13-15. Sean Dunn also admitted that he never told the Kleinschmidts that Well Dunn was not a real company. (SD Dep. T'Script at 146:7-10). Indeed, despite the fact that it is nothing more than a trade name or pseudonym, it has been Sean Dunn's "habit," as he explained at his deposition, to refer to Well Dunn as a "separate entity." Gordon Aff., Exh. 2 (SD Dep. T'Script) at 66:18-22. Both Sean and Gerald Dunn admitted that they always knew Well Dunn was not a corporation, partnership or limited liability company during the time that they worked on the Project. Gordon Aff., Exh. 4 (Response to Notice to Admit), ¶¶ 15-16.

Sean Dunn and Gerald Dunn both admitted that they furnished work, labor, services, and/or materials to or for the benefit of the Project. Gordon Aff., Exh. 2 (Response to Notice to Admit), ¶¶ 9, 10. Gerald Dunn admitted that he has worked on approximately 100 project "in the name of Well Dunn," (Gordon Aff., Exh. 7 (Deposition transcript of Gerald Dunn ("GD Dep. T'Script")), at 117:8-12. He also admitted that he works in a supervisory capacity for Well Dunn (*id.* at 119:3-6), is a signatory on a Well Dunn Putnam County Savings Bank account allowing

5

him to deposit and withdraw funds from Well Dunn's bank account (*id.* at 78:18 – 79:7, 13-20;

*see also* Gordon Aff., Exhs. 2 (SD Dep't T'Script) at 284:4-14; 8 (Dep. Exh. P-19, "Well Dunn"

check signed by Gerald Dunn), has deposited money into and withdrawn money from the Well

Dunn bank account (Gordon Aff., Exh. 7 (GD Dep. T'Script) at 79:13-2), has written checks on

the Well Dunn bank account (*id.* at 79:21 – 80:6 and Gordon Aff., Exh. 8), has earned income

from "projects done in the name of Well Dunn," (Gordon Aff., Exh. 7 (GD Dep. T'Script) at

117:4-7), has a business card identifying himself as Vice-President of Well Dunn (id. at 69:8-

16), carries a Well Dunn Mastercard bearing the name, "Gerald J. Dunn, Well Dunn Maint &

Contract," (*id.* at 74:10 – 75:12), and furnished work and supervisory services for the Project (*id.*

at 145-46).

**C.    Although Plaintiff paid Defendants $840,828.22 for the Project, Defendants stated
that they only paid subcontractors and suppliers $379,793.50**

Defendants admit that Plaintiff paid them $840,828.22 in respect of the Project. Gordon

Aff., Exhs. 2 (SD Dep. T'Script) at 149:5-7; 4 (Response to Notice to Admit), ¶ 32; 9 (Dep. Exh.

P-22, Partial Release and Waiver of Lien Rights signed by Sean Dunn stating, in pertinent part,

that Well Dunn, by Sean Dunn, acknowledges receipt of $820,828.22 from Plaintiff, representing

"full payment" as of May 4, 2017); and 10 (Dep. Exh. 56, checks paid by Plaintiff to Well

Dunn). According to Defendants, of the $840,828.22 they admit receiving from Plaintiff, they

paid $379,793.50 to the persons and businesses who and that submitted requests for payment to

Defendants for work and materials they furnished on the Project. Gordon Aff., Exh. 10

(Defendants' Interrogatory Answers) at pp. 3-4.

6

**D.** **Defendants are not licensed home improvement contractors, although they held themselves out as such when they secured the Project from Plaintiff**

Before and during they were the Project general contractors, Defendants held themselves out to be licensed home improvement contractors. Gordon Aff., Exh. 4 (Response to Notice to Admit), ¶¶ 26, 27, 29. Sean Dunn admitted that when he first met the Kleinschmidts, he told them he was a licensed home improvement contractor in Putnam County. Gordon Aff., Exh. 2 (SD T'Script) at 120:8-10. At the time Plaintiff hired Defendants, the Well Dunn website stated that it was licensed in Putnam County. Gordon Aff., Exh. 11 (Dep. Exh. P-16, Well Dunn's website pages stating that "we are licensed contractors in all of Westchester County, Yonkers, Putnam, and all of Connecticut"). It is undisputed that neither Sean Dunn nor Gerald Dunn nor Well Dunn was a licensed home improvement contractor at any time while Defendants were working on the Project. Gordon Aff., Exhs. 4 (Response to Notice to Admit), ¶¶ 18, 21 (as to Gerald Dunn) and 2 (SD Dep. T'Script) at 30:23 – 31:4. Sean Dunn's testimony on the subject of his not being licensed from at least 2014 to the present was crystal clear on the subject:

A.     So I built two homes under that license from 2014 till the present from start to finish.

Q.     Do you now understand that when you did that work, you were unlicensed?

A.     I understand that now, yes.

Moreover, Sean Dunn admitted that not only was he not a licensed home improvement contractor in Westchester County, he actually did home improvement contract work in that county after his license was revoked and after he was fined $10,000 for operating an unlicensed home improvement contracting business. Gordon Aff., Exhs. 2 (SD Dep. T'Script) at 125:3-22; and 12 (Dep. Exh. 52-54, Westchester County records). Sean Dunn admitted he does not have a home improvement contractor's license. Gordon Aff., Exh. 2 (SD Dep. T'Script) at 23:10-13.

7

E.      **Defendants did not carry workers' compensation insurance for the Project**

Although he did not recall when he last carried workers' compensation insurance, Sean

Dunn admitted that he does not currently carry such insurance. Gordon Aff., Exh. 2 (SD Dep.

T'Script) at 78:16-19, 78:24 – 79:8. And pertinent government records confirm that none of the

Defendants carried the required workers' compensation insurance. Gordon Aff., Exh. 13 (Dep.

Exh. P-62, New York State insurance records).

F.      **Defendants comingled Project-related monies with other monies and used Plaintiff's
        money to pay for non-Project related expenses**

During his deposition, Sean Dunn testified as follows:

Q.      Was there ever a time where you had subaccounts within either Chase or PCSB to
        separate business from personal?

A.      No.

Q.      So the whole time, personal money and business money and business expenses
        and personal expenses were all commingled?

A.      Yes.

Q.      Throughout the whole time, right?

A.      Since I started my business, yes.

Gordon Aff., Exh. 2 (SD Dep. T'Script) at 78:6-15. Along the same lines, Sean Dunn admitted

that he used Project monies paid by Plaintiff to pay the expenses for other projects:

Q.      So do you end up using client funds from one customer to cover another project's
        expense when that customer is late?

A.      It is all in one account. It is all one big pool.

Q.      So there could be times where let's say you are working three jobs, Job A, the
        client is on time, Job B, the client is on time, Job C, the client is late. You would
        end up using the money from Client A and B to cover the expenses on Project C,
        right?

A.      Inadvertently, yes.

8

Q.     And that would happen periodically?

A.     From time to time.

Gordon Aff., Exh. 2 (SD Dep. T'Script) at 133:25 – 134:14.

Thus, it is undisputed that all of the $820,844.22 that Plaintiff paid to Defendants was

deposited into two general purpose bank accounts, first, an account at JPMorgan Chase and,

second, an account at Putnam County Savings Bank. *Id., see also* Gordon Aff., Exh. 14

(collectively, Dep. Exhs. 29-42, 46, 49-51, bank statements). From those accounts, Defendants

Sean Dunn and Gerald Dunn, as well as Sean Dunn's former fiancé (who had no role with WD

and was not involved in the Project) had access to the funds paid by Plaintiff. Gordon Aff., Exh.

2 (SD Dep. T'Script at 87:12-25). Both Sean Dunn and Gerald Dunn accessed the account to

pay for expenses that had nothing to do with the Project. Gordon Aff, Exh. 2 (SD Dep. T'Script)

at 284:4-17, 285:4-8. The critical testimony is as follows:

Q.     So during what period of time did Vika [Sean Dunn's former fiancé] have a debit
       card for this bank account roughly?

A.     I'd say from when I opened it till a year ago.

Q.     So roughly September 2016 to September of 2017?

A.     Till July of '17.

Q.     And during that time, did she regularly use the card?

A.     Yes.

Q.     And during that time that she was using this card, you were putting Well Dunn
       client money into that account, right?

A.     Yes, that's the only account I had.

Thus, by way of example, in the month immediately following Plaintiff's initial payment

of $165,000 to Defendants, Defendants (and Sean Dunn's former fiancé) dipped into the Well

Dunn account (which held Trust Fund monies advanced by Plaintiff) to pay for a trip to the

Maritime Aquarium in Norwalk, Connecticut ($86.75), purchases from Abercrombie & Fitch

($115.84) and Gucci ($1,029.56), six airline tickets totaling $1,723.53, purchases from Putnam

Wine & Liquors ($58.63), a trip to the Six Flags amusement park in Agawam, Massachusetts

($209.99), a night at the upscale Tao Restaurant in Manhattan ($357.98), and a trip to Capt'N

Jacks Island Grill in Wildwood, New Jersey ($50.88). Thereafter, Plaintiffs repeatedly spent

money from the account in which Plaintiff's monies were deposited on a wide variety of

personal expenses having absolutely nothing to do with the Project including the lease payment

on his then fiancé's Mercedes Benz. *See* Gordon Aff., Exh. 2 (SD Dep. T'Script) at 136:5-23.

*See also* Gordon Aff., Exh. 17, a compilation of further examples of personal expenses that Sean

Dunn and Gerald Dunn and Sean Dunn's former fiancé paid from the bank accounts holding

Plaintiff's Lien Law Trust funds.

**G.     Defendants kept almost no records regarding the Project and kept absolutely no records as to cash paid to their laborers, who were all paid "off the books"**

Along the same lines, Defendants admitted they did not maintain full, complete and

accurate records for the Project. *See* Gordon Aff., Exh. 2 (SD Dep. T'Script), at 54:3-21. The

only records that Defendants kept regarding the Project were the incomplete QuickBooks entries.

*Id.* at 63:10-15. According to Sean Dunn, whatever is not recorded on QuickBooks, which

apparently was the majority of Project-related transactions, was simply thrown out. See id. at

63:10-24, which consists of the following remarkable testimony:

Q.     What records relating to 41 Averill did you have in your possession when you
received the request to produce documents in this case?

A.     Just what I had on QuickBooks.

Q.     That's it?

10

A.     Yeah.

Q.     Where did all the other records go?

A.     I don't keep them.

Q.     You just throw them in the garbage?

A.     Well, I never -- for instance, when I make an order, I get a delivery ticket; I never keep them.

Q.     What do you do with them?

A.     They get thrown out.

Sean Dunn's explanation for his failure to keep Project records is that, as he put it, "just I have no idea what I'm doing when it comes to bookkeeping." *Id.* at 64:24; *see also id.* at 50:6-9 ("I am absolutely atrocious with bookkeeping, payroll, all that stuff, paying my bills. I've just always been bad at." There was a point, apparently prior to 2015 (and thus before the commencement of the Project), when Sean Dunn hired a bookkeeper named "Barbie" (Sean Dunn could not remember her last name at his deposition), but he "ran out of money to pay her" and thus let her go. *Id.*, 36:17-21, 38:11-14.

Of particular concern is that Defendants kept no records of what they paid to laborers working for them on the Project; incredibly, Sean Dunn admitted that all of those individuals were paid in cash, with no taxes withheld and no tax returns filed. *Id.* at 13:5-23, 14:4-7, 54:17-21; 209:23-25, 201:2-6, 211:8-18. As one example of what appears to be a crystal clear case not only of Lien Law Trust Fund diversion but outright tax fraud, Sean Dunn admitted the following: "Q. During that time period, you did not report any wages to the IRS or the State of New York, right? A. I don't think so." *Id.* at 210:3-6. Confirming the foregoing, Defendants' counsel confirmed by email on December 29, 2017 that the "recordkeeping with respect to his payments is not ideal because [Sean Dunn] paid many people in cash, off the books." Dkt. No. 43.

11

## Procedural History

This action was commenced in August 2017. Gordon Aff., Exh. 16 (Complaint); *see also* Dkt. No.2. Issue was joined in September 2017, when Defendants filed an Answer with Counterclaims. Exh. 1; *see also* Dkt. No. 6. On November 20, 2017, Plaintiff moved to dismiss the Counterclaim because, as unlicensed home improvement contractors, Defendants had no standing to bring any claims, including counterclaims, against Plaintiff. Dkt. No. 8. On December 8, 2017, after Plaintiff moved to dismiss the Counterclaim but before Defendants' time to respond to the motion expired, Defendants agreed to withdraw, with prejudice, the Counterclaim. Dkt. No. 21.

After issue joined, Plaintiff served written discovery demands and deposition notices on Defendants. Dkt. Nos. 35-39. Defendants have not yet complied with all of their On January 23, 2018, the Court entered a Preliminary Conference Order that confirmed that the priority of discovery in its entirety would be reversed and that Plaintiff would have no obligation to respond to Defendants' discovery demands until Defendants first complied with their own discovery obligations. Dkt. No. 47. Because Defendants have not yet complied with their discovery obligations – QuickBooks files still have not been made available to Plaintiff, as Defendants had agreed to do, Defendants have not produced text messages that they admitted existed and agreed to produce, and no Project photographs or videos have been produced – Plaintiffs' time to produce discovery has not yet been triggered. Gordon Aff., ¶ 21.

On May 31, 2018, Defendants filed a third-party complaint against the Project architects, Michael Piccirillo Architecture PLLC, Michael Piccirillo, and Vladimir Levin. Dkt. Nos. 49-54. No response to the third-party complaint has been filed.

12

<div align="center">

**Argument**

**PLAINTIFF IS ENTITLED TO PARTIAL SUMMARY JUDGMENT**

</div>

Plaintiff seeks partial summary judgment on liability as to the First, Fourth and Fifth

Causes of Action, for breach of fiduciary duty and for diversion of Lien Law Trust funds.

Plaintiff seeks such a judgment as against Defendants Sean Dunn and Gerald Dunn and, to the

extent Defendant Well Dunn exists in some capacity, against Well Dunn.

**A.      The legal standard applicable to this motion**

Pursuant to CPLR Rule 3212(b), a plaintiff is entitled to summary judgment when it

establishes through admissible proof that there are no genuine issues of material fact regarding a

valid cause of action. *See Zuckerman v. New York*, 49 N.Y.2d 557, 562, 427 N.Y.S.2d 595, 597

(1980) ("To obtain summary judgment it is necessary that the movant establish his cause of

action or defense 'sufficiently to warrant the court as a matter of law in directing judgment' in

his favor (CPLR 3212, subd [b]), and he must do so by tender of evidentiary proof in admissible

form."); *Cohen Fashion Opt., Inc. v. V & M Opt., Inc.*, 51 A.D.3d 619, 619, 858 N.Y.S.2d 260,

261 (2d Dep't 2008) ("the defendants failed to raise a genuine material issue of fact in opposition

to the plaintiffs' prima facie showing of entitlement to judgment as a matter of law ... ."). In

*Serge Dore' Selections Ltd. v. Universal Wines & Spirits*, 20 Misc. 3d 1121(A), 1121A, 867

N.Y.S.2d 378, 378 (Sup. Ct. Westchester Co. 2008), this Court summarized the summary

judgment standard: "The proponent of a motion for summary judgment ... must tender sufficient

evidence to demonstrate as a matter of law the absence of a material issue of fact. ... Once the

moving party has made a prima facie showing of entitlement of summary judgment, the burden

of production shifts to the opponent, who must now go forward and produce sufficient evidence

<div align="center">

13

</div>

in admissible form to establish the existence of a triable issue of fact or demonstrate an

acceptable excuse for failing to do so."

A motion for summary judgment may be granted as to one cause of action among many

pled or even a single part of a single cause of action. *See* CPLR Rule 3212(e) ("In any [action

other than a matrimonial action] summary judgment may be granted as to one or more causes of

action, or part thereof, in favor of any one or more parties, to the extent warranted, on such terms

as may be just." *See also Quilliams v. Half Hollow Hills School Dist. (Candlewood School)*, 67

A.D.3d 763, 766, 892 N.Y.S.2d 397, 399 (2d Dep't 2009 ("the subcontractor violated the

insurance procurement clause by failing to secure primary liability insurance in the stated

amount, so that the Supreme Court properly granted partial summary judgment against it as the

third-party cause of action to recover damages for breach of contract."); *Hulse v. Summerlin,

LLC*, 17 A.D.3d 317, 318, 792 N.Y.S.2d 577, 578 (2d Dep't 2005) ("plaintiffs established their

prima facie entitlement to judgment as a matter of law. The defendants failed to raise a triable

issue of fact sufficient to defeat the motion for partial summary judgment. Therefore, the

Supreme Court erred in denying the plaintiffs' motion for partial summary judgment on the issue

of liability on the cause of action alleging a violation of Labor Law § 240 (1), and in granting

that branch of the defendants' cross motion which was for summary judgment dismissing the

complaint."); *Nichols v. Hartford Fire Ins. Co.*, 61 A.D.2d 555, 556, 403 N.Y.S.2d 335, 336 (3d

Dep't 1978) ("Partial summary judgment, where warranted, may be granted as to a part of a

cause of action ( CPLR 3212, subd [e]).").

As can be inferred from the Second Department's decision in *Hulse, supra,* the standard

is the same whether the relief sought is summary judgment on an entire Complaint, a single

cause of action, or a single part of a single cause of action. *See LG Capital Funding, LLC v.*

14

*Sanomedics Intl. Holdings, Inc.*, 2015 N.Y. Misc. LEXIS 4294, *18, 2015 NY Slip Op

32232(U), 15 (Sup. Ct. Kings Co. 2015) ("With respect to plaintiff's motion for partial summary

judgment on its breach of contract claims, on a motion for summary judgment, the movant must

make a prima facie showing, by tendering evidentiary proof in admissible form, of its entitlement

to judgment as a matter of law"); *Pacheco v. City of New York*, 2010 N.Y. Misc. LEXIS 2426,

*11, 2010 NY Slip Op 31400(U), 10 (Sup. Ct. N.Y. Co. 2010) ("the branch of plaintiffs' motion

for partial summary judgment as to liability on the third cause of action for violation of Labor

Law § 240 (1) is granted. Summary judgment may be granted where no genuine triable issue of

material fact exists.").

Thus, where, as at bar, Plaintiff establishes through admissible evidence that Defendants

are liable as a matter of law in respect of a cause of action or a part thereof, partial summary

judgment should be granted in favor of Plaintiff.

**B.     Plaintiff is entitled to partial summary judgment on the Fourth and Fifth Causes of
        Action for Breach of Fiduciary Duty and Lien Law Trust Fund Diversions**

**1.     The Fourth Cause of Action: breach of fiduciary duty**

Plaintiff is entitled to partial summary judgment on the Fourth Cause of Action, for

breach of fiduciary duty, as there are no genuine issues of material fact regarding Defendants'

liability for that cause of action.  The elements of a claim for breach of fiduciary duty are "(1) the

existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly

caused by the defendant's misconduct." *Smallwood v. Lupoli*, 107 A.D.3d 782, 784, 968

N.Y.S.2d 515, 517 (2d Dep't 2013); *Armentano v. Paraco Gas Corp.*, 90 A.D.3d 683, 684, 935

N.Y.S.2d 304, 306 (2d Dep't 2011) (same).  A plaintiff pleading multiple causes of action,

including one for breach of fiduciary duty, is entitled to partial summary judgment as to the

breach of fiduciary duty claim when it proves the absence of any genuine issues of material fact

15

as to that claim. *See SantiEsteban v. Crowder*, 92 A.D.3d 544, 546, 939 N.Y.S.2d 28, 29-30 (1st Dep't 2012), affirming partial summary judgment to the plaintiff on its claim for breach of fiduciary duty, holding that, "[s]ince defendants' payments to themselves were unauthorized, as a matter of law, they are liable for breach of fiduciary duty … ." *See also Golden Eagle/Satellite Archery v. Epling*, 244 A.D.2d 959, 665 N.Y.S.2d 169 (4th Dep't 1997), granting the plaintiff's motion for partial summary judgment on its claim for breach of fiduciary duty.

At bar, Plaintiff is entitled to partial summary judgment on the Fourth Cause of Action, for breach of fiduciary duty, because Plaintiff has established each element of that claim as to each Defendant with sufficient, admissible evidence.

      **a.**      **Defendants owed Plaintiff a fiduciary duty with respect to the funds that Plaintiff paid to Defendants.** Defendants owed Plaintiff a fiduciary duty as to the funds paid Plaintiff paid to them. Lien Law Article 3-A imposed on Defendants a fiduciary duty to Plaintiff once Defendants undertook to accept from Plaintiff over $800,000 in Project dollars. *See People v. Valenza*, 60 N.Y.2d 363, 371, 469 N.Y.S.2d 642, 645 (1983) ("article 3-A of the Lien Law imposes on a contractor a fiduciary duty over funds received for the improvement of real property (see Lien Law, §§ 70, 71, 71-a)"; *NY Professional Drywall of OC, Inc. v. Rivergate Dev., LLC*, 100 A.D.3d 216, 218, 952 N.Y.S.2d 852, 854 (3d Dep't 2012) ("The owner or general contractor becomes a fiduciary over the accounts received to complete the construction project … ."); *AABCO Sheet Metal Co. v. Lincoln Ctr. for the Performing Arts*, 174 Misc. 2d 232, 234, 663 N.Y.S.2d 490, 491 (Sup. Ct. N.Y. Co. 1997) (Lien Law "provides that funds received by a general contractor in the course of a construction project constitute assets of a trust, that a person in a trust position shall be held to a fiduciary standard of care and duty and shall be

16

accountable for trust assets."); *Prestige Plumbing & Heating, Inc. v. B&B Constr., Inc.,* 2013

N.Y. Misc. LEXIS 4279, *14-15, 2013 NY Slip Op 32262(U), 11 (Sup. Ct. N.Y. Co. 2013).

Further, because the Project was the subject of a home improvement contract, Defendants

owed their fiduciary duty to Plaintiff, as owner. *See* Lien Law 71-a(4); *see also Ippolito v. TJC*

*Dev., LLC,* 83 A.D.3d 57, 64, 920 N.Y.S.2d 108, 113-114 (2d Dep't 2011) (plaintiffs, as owners,

were held to be "beneficiaries of the trust funds created by operation of Lien Law § 70 ... .");

*Jorge v. Piola Prop. Mgt. LLC,* 2017 N.Y. Misc. LEXIS 2428, *7, 2017 NY Slip Op 50837(U),

3, 56 Misc. 3d 1202(A), 63 N.Y.S.3d 305 (Sup. Ct. Nassau Co. 2017) ("The plaintiff correctly

cites to authority of the Appellate Division, Second Department, which holds that a homeowner

has the standing to sue as a trust beneficiary under this statute. Ippolito v. TJC Dev. LLC, 83

AD3d 57, 920 N.Y.S.2d 108 (2d Dept. 2011).").[4]

Since it is undisputed that Plaintiff paid to Defendants $840,828.22 for the Project, there

can be no doubt that Defendants were fiduciaries with respect to those funds. Defendants Sean

Dunn and Gerald Dunn should be deemed to be fiduciaries because they were the contractors

who did the Project Work and received Project payments from Plaintiff. Indeed, it is undisputed

that Plaintiff issued its checks to Defendant Well Dunn, but Defendant Well Dunn was nothing

---

[4]     In cases *not* involving home improvement contracts, the owner might not be deemed to be a trust
fund beneficiary. *See, e.g., JSignal LLC v. Artisan Constr. Partners LLC,* 2017 N.Y. Misc. LEXIS 2436,
*8, 2017 NY Slip Op 31348(U), 7 (Sup. Ct. N.Y. Co. 2017) ("In a distinguishable case, the Second
Department held that a homeowner may assert a cause of action pursuant to Lien Law Article 3-A against
a defendant contractor hired to perform home improvements. See Ippolito v. TJC Dev., LLC, 83 AD3d
57, 67-71, 920 N.Y.S.2d 108 (2011). In Ippolito, the Second Department relied on Lien Law § 71—a[4]
for that holding, which solely concerns 'a home improvement contract,' and describes that the relevant
funds 'remained the property of the owners, ... until the proper payment of such funds by the contractor to
the purposes of the home improvement contract.' 83 AD3d at 67. The present action involves the
improvement of retail space rather than a home."). It is undisputed that the contract at issue involves a
home improvement project, therefore *Ippolito, supra,* governs.

more than a trade name or pseudonym under which Defendants Sean Dunn and Gerald Dunn did

business. And even if Defendant Well Dunn were deemed to be some sort of entity, Messrs.

Sean and Gerald Dunn should still be deemed to be fiduciaries as they were the officers and

agents of Well Dunn. *See Ippolito*, 83 A.D.3d at 70, 920 N.Y.S.2d at 118 (adopting the position

of the Fourth Department in *Fleck v. Perla*, 40 A.D.2d 1069, 339 N.Y.S.2d 246 (4th Dep't 1972)

that "the individual officers or agents of a corporation ... may be liable in a civil action pursuant

to Lien Law article 3-A for the improper diversion of trust funds ... ."). *See also Holt Constr.*

*Corp. v. Grand Palais, LLC*, 108 A.D.3d 593, 597, 969 N.Y.S.2d 499, 503 (2d Dep't 2013)

("This Court has held that the individual officers of a corporate trustee may be held personally

liable pursuant to Lien Law article 3-A for knowingly participating in a diversion of trust assets

(see Ippolito v. TJC Dev., LLC, 83 AD3d 57, 70-71, 920 NYS2d 108 [2011]; Atlas Bldg. Sys. v.

Rende, 236 AD2d 494, 495, 653 NYS2d 694 [1997]; South Carolina Steel Corp. v. Miller, 170

AD2d 592, 566 NYS2d 368 [1991])."); *Ideal Supply Co., Inc. v. Interstate Fire Protection, Inc.*,

2016 N.Y. Misc. LEXIS 4242, 2016 NY Slip Op 32273(U) (Sup. Ct. N.Y. Co. 2016), adopting

the position of *Ippolito, supra,* and *Fleck, supra,* and denying motion to dismiss Lien Law Trust

Fund diversion claim against corporate officers.

      **b.**     **Defendants breached their fiduciary duty to Plaintiff with respect to**

**the monies paid to them by Plaintiff.** Defendants admitted that they deposited all of the money

into checking accounts that were accessible not only by Defendants but also by Defendant Sean

Dunn's former fiancé, no records were kept, the funds that Plaintiff paid to Defendants for the

Project were used for non-Project purposes such as shoe shopping sprees, lavish vacations, car

and motorcycle payments, and other construction projects. *See supra,* p. __. All of these

expenses constituted a direct violation of Defendants' fiduciary duty to Plaintiff, as Plaintiffs'

18

funds were not applied for the purpose for which they were intended: the construction of

Plaintiff's house.[5] They also constitute substantial defalcations by Defendants that took place

while Defendants, as a matter of law, pursuant to the New York Lien Law, were acting in a

fiduciary capacity.

      **c.**      **Plaintiff has been damaged by Defendants' breach of fiduciary duty.**

There can be no doubt that Plaintiff has been damaged by Defendants' breach of their fiduciary

duty. Monies that Plaintiff paid to Defendants were diverted for purposes other than the

construction of Plaintiff's house, which remained incomplete at the time Defendants were

terminated. Further, according to Defendants, they paid only $379,793.50 to subcontractors and

suppliers, even though Plaintiff paid them more than $800,000. That means that Defendants

pocketed almost $500,000 of money (which, as discussed below, was protected Lien Law Trust

Fund monies) that had been earmarked for the Project. While the amount of the damage will be

proven at trial, there can be no genuine issue that Plaintiff was damaged by Defendants'

defalcations.

      **2.**      **Fifth Cause of Action: Lien Law Trust Fund Diversion**

      "Lien Law article 3-A mandates that once a trust comes into existence, its funds may not

be diverted for non-trust purposes." *Ippolito*, 83 A.D.3d at 66-67, 920 N.Y.S.2d at 115. *Ippolito*

further explains that Lien Law § 70 defines Lien Law Trusts as funds "received by a contractor

under or in connection with a contract for an improvement of real property, or home

---

[5]     As noted, what makes this breach of fiduciary duty particularly odious is that Defendants
committed their defalcations – unlawfully diverting Lien Law Trust Funds – while acting in a fiduciary
capacity. In *AABCO Sheet Metal Co. v. Lincoln Ctr. for the Performing Arts*, 174 Misc. 2d 232, 234, 663
N.Y.S.2d 490, 491-492 (Sup. Ct. N.Y. Co. 1974), the Court made clear the severity of such malfeasance:
"[t]he failure to turn over trust funds within a specified period of time constitutes larceny ... . A debtor's
defalcation while acting in a fiduciary capacity makes the debt nondischargeable in bankruptcy ... .").

improvement ... ." 83 A.D.3d at 64-65, 920 N.Y.S.2d at 114. The Lien Law is very specific as

to the requirements for the deposit of Trust Funds received by a contractor in respect of a home

improvement project. As *Ippolito* notes, Lien Law § 71-a(4)(a) provides that:

> [u]nder a home improvement contract, payments received from an owner by a home
> improvement contractor prior to the substantial completion of work under the contract shall
> be deposited within five business days thereafter by the recipient in an escrow account in
> a bank, trust company, savings bank, or state or federal savings and loan association,
> located in this state.... . ***Such deposit or deposits shall remain the property of such owner***
> ***except as otherwise provided herein***.

*Ippolito*, 83 A.D.3d at 65, 920 N.Y.S.2d at 114. Emphasis supplied. The trust, once established

by virtue of the Lien Law, continues "'until all trust claims have been paid or discharged, or all

assets have been applied for trust purposes" (Matter of RLI Ins. Co., Sur. Div. v New York State

Dept. of Labor, 97 NY2d at 262, quoting Lien Law § 70 [3])." *Ippolito*, 83 A.D.3d at 65, 920

N.Y.S.2d at 114.

     *Ippolito* synthesized the Lien Law's trust fund requirements with respect to home

improvement contracts in pertinent part as follows:

> "contractors who receive money in advance for the construction of home improvements
> are required to place the money in a bank account and hold the money as the property of
> the owner until the money is paid for purposes of the home improvement. The funds
> deposited remain the property of the owner until: (1) the proper payment by the
> contractor for the purposes of the home improvement project; or (2) default or breach by
> the owner which excuses the contractor's performance, but only to the extent of any
> reasonable liquidated damage amount and only after 7 days prior written notice to the
> owner; or (3) substantial performance of the contract'. ... Any transaction by which any
> trust asset is paid, transferred or applied for any purpose other than a purpose of the trust
> as stated in subdivision one or subdivision two of section seventy-one, before payment or
> discharge of all trust claims with respect to the trust, is a diversion of trust assets, whether
> or not there are trust claims in existence at the time of the transaction, and if the diversion
> occurs by the voluntary act of the trustee or by his consent such act or consent is a breach
> of trust" (Lien Law § 72 [1])."

Ippolito, 83 A.D.3d at 66, 920 N.Y.S.2d at 114-115. *See also* Lien Law § 72 ("[a]ny transaction

by which any trust asset is paid, transferred or applied for any purpose other than a purpose of

the trust as stated in subdivision one or subdivision two of section seventy-one, before payment

or discharge of all trust claims with respect to the trust, is a diversion of trust assets, whether or

not there are trust claims in existence at the time of the transaction, and if the diversion occurs by

the voluntary act of the trustee or by his consent such act or consent is a breach of trust."[6]

Here, as discussed above, a Lien Law Trust Fund came into existence when Plaintiff first

paid to Defendants $165,000 as an advance payment against work done on the Project. *See*

*supra*, p. 6. Over the course of the Project, Plaintiff paid Defendants an additional $675,828.22

for a total of $840,828.22. *See supra*, p. 6. From that total amount, Defendants allegedly paid

subcontractors and suppliers on the Project $379,793.50, leaving a balance of $461,034.72.[7] *See*

*supra*, p. 6. At a minimum, then, pursuant to Lien Law § 71, $461,034.72 remains the property

of Plaintiff but has not been returned to Plaintiff. *See supra*, pp. 6. As Defendants were

terminated from the Project (because of innumerable problems with their work) before

completing their work and before the application of those funds, Defendants' retention of those

funds constitutes a *per se* diversion of Lien Law Trust funds.

While Defendants' retention of those funds is problematic enough, what is even worse is

the extent to which Defendants blatantly comingled and misapplied the trust fund monies that

Plaintiff paid to Defendants for the Project. As discussed above, Defendants readily admit they

---

[6]    We anticipate that Defendants might argue that they did not intend to divert Lien Law Trust Fund assets. If made, that argument should be rejected, as a Lien Law Trustee's intent is entirely irrelevant; if trust funds are applied to a non-trust purpose, there is a Lien Law Trust Fund diversion. *See RLI Ins. Co. v. N.Y. State DOL*, 97 N.Y.2d at 263, 740 N.Y.S.2d at 276 ("Use of trust assets for any purpose other than the expenditures authorized in Lien Law § 71 before all trust claims have been paid or discharged constitutes an improper diversion of trust assets, *regardless of the propriety of the trustee's intentions*."). Emphasis supplied.

[7]    Plaintiff by no means agrees that Defendants paid $379,793.50 to subcontractors and suppliers on the Project but will accept that amount for the limited purposes of this motion only.

deposited all of Plaintiff's $840,828.22 into two bank accounts, first at JPMorgan Chase and second, when the first account was closed, at Putnam County Savings Bank, that were used to pay Project, non-Project business (other construction project), and personal expenses. *See supra*, pp. 8-10. Defendants also admit that there was absolutely no segregation of the funds that Plaintiff paid for the Project, which, as noted above, are Lien Law Trust Funds. *See supra*, p. 21. In fact, as noted on pages 8-9 above, Sean Dunn was quite clear that he knowingly used Project funds to pay his personal expenses, the expenses associated with other projects, and the expenses of his girlfriend. Such conduct might very well one of the clearest and most brazen examples of Lien Law Trust Fund diversions this Court will ever see.

Accordingly, Plaintiff is entitled to partial summary judgment on its Fifth Cause of Action for Lien Law Trust Fund diversion.

## Conclusion

As discussed above, while this case is technically a construction case, it is even more so a case about rampant abuse and misappropriation of Trust Funds monies. Literally plundering two bank accounts holding those Trust Fund monies, and lying about their corporate and licensure status, Defendants committed defalcations while acting in a fiduciary capacity and took money that belonged to Plaintiff under false pretenses. There being no genuine issues of material fact regarding these claims, Plaintiff is entitled to partial summary judgment as to its Fourth and Fifth Causes of Action.

22

Dated: Katonah, New York
      July 26, 2018

Gordon Law LLP

By: _____
     Michael R. Gordon

Attorneys for Plaintiff LAK3, LLC

51 Bedford Road, Suite 2
Katonah, New York 10536
Telephone    914.232.9500
Fax           914.992.6634
Email        mgordon@gordonlawllp.com

23

**WORKING COPY**

**Gordon Aff. Exhibit 2**

ORIGINAL                          Page 1

1            SUPREME COURT OF THE STATE OF NEW YORK

2                    COUNTY OF WESTCHESTER

3    _____x

4    LAK3, LLC,

5                          Plaintiff,

6            -against-

7    SEAN DUNN, GERALD DUNN,

     and WELL DUNN MAINTENANCE

8    & CONTRACTING,

9                          Defendants.

     _____x

10

11

12                    April 26, 2018

                      9:07 a.m.

13

14

15

16        Deposition of SEAN DUNN, taken by Plaintiff,

17   pursuant to Notice, at the offices of Gordon Law

18   LLP, 51 Bedford Road, Katonah, New York,

19   before Nancy R. Sullivan, a Shorthand Reporter

20   and Notary Public within and for the State of

21   New York.

22

23

24

25

Page 13

                          SEAN DUNN

2       A.    From what time period?

3       Q.    Well, let's start with the present.

4       A.    Cash.

5       Q.    Do you withhold taxes of any kind?

6       A.    No, I do not.

7       Q.    Are there any withholdings?

8       A.    Not when they are paid cash, no.

9       Q.    Going back into last year, 2017, how

10  did you pay Jerry?

11      A.    Cash.

12      Q.    How about 2016?

13      A.    I don't recall when I stopped the

14  payroll, to be honest.  I'd have to look.  I

15  believe all cash that year.  I think the payroll

16  was like 2013 to maybe '15.

17      Q.    So would it be fair to say that when

18  you were using ADP, you were using it for all

19  your employees?

20      A.    Yes.

21      Q.    When you stopped using ADP, you

22  stopped it for all your employees?

23      A.    Yes.

24      Q.    Would it be fair to say that at that

25  point, you began to pay your employees in cash?

Page 14

1                    SEAN DUNN

2        A.    When I used them, yes, because they

3    weren't full-time anymore.

4        Q.    So after you stopped using ADP and

5    when these individuals were working for you, you

6    would pay them cash?

7        A.    Yes.

8        Q.    Now, what records would you look at to

9    determine when you stopped using ADP?

10       A.    I would look up my ADP files and see

11   when I stopped using their service.

12       Q.    When you say look up the ADP files,

13   what do you mean by that?

14       A.    There was a representative that I

15   dealt with there that I honestly, the easiest

16   way I would call her and have her send me the

17   information.  I don't think I have anything like

18   that on file.

19       Q.    Did you ever keep ADP files?

20       A.    I would keep copies of -- so ADP would

21   send me a weekly envelope with stubs so it would

22   be their checks and then stubs for myself.  I

23   did keep most of those but I'm, as you will

24   learn, terrible at the bookkeeping end of the

25   business.

Page 23

1                          SEAN DUNN

2          Q.    Have you ever testified either in

3    court or at a deposition such as this before

4    today?

5          A.    No.

6          Q.    Have you ever been involved in any

7    other legal process or proceedings before today?

8          A.    Divorce and child support but that's

9    it.

10         Q.    Do you have any professional licenses

11   other than your driver's license, any licenses

12   other than your driver's license?

13         A.    No.

14         Q.    Have you ever had any licenses other

15   than a driver's license?

16         A.    Yes.

17         Q.    What licenses have you had?

18         A.    Home improvement, I've had Westchester

19   County, Putnam County, Yonkers and all of

20   Connecticut.

21         Q.    During what period of time did you

22   have a Westchester County license?

23         A.    I don't know off the top of my head.

24         Q.    Do you remember when you first got the

25   license in Westchester roughly?

Page 30

```
 1              SEAN DUNN
 2       Q.   And that you submitted requests for
 3  permits using that license number?
 4       A.   Yes.
 5       Q.   What is that license number?
 6       A.   I don't know off the top of my head.
 7       Q.   PC6282?
 8       A.   I don't know.  It starts with PC, but
 9  I don't know the number.
10       Q.   How did you find out that you don't
11  have a current Putnam County home improvement
12  contractor's license?
13       A.   Well, Mike called me.
14       Q.   I assume that conversation was
15  sometime within the last six months?
16       A.   Yes.
17       Q.   Before that, you were unaware that
18  your Putnam County home improvement contractor's
19  license had expired?
20       A.   Yes, and I pulled permits.
21       Q.   When you say "pulled permits," explain
22  what you mean by that?
23       A.   So I built two homes under that
24  license from 2014 till the present from start to
25  finish.
```

Page 31

1                        SEAN DUNN

2        Q.    Do you now understand that when you

3    did that work, you were unlicensed?

4        A.    I understand that now, yes.

5        Q.    That was my question.

6             Have you submitted any kind of form to

7    renew your application, your license?

8        A.    Not recently because the last time --

9    so you get a letter in the mail saying it is up

10   for renewal, you cut a check, you mail it in,

11   and that's it.  So I just wait for it to come.

12   So I did that last time.  The check was made out

13   to consumer affairs, and unbeknownst to me, they

14   never renewed my license.

15       Q.    Was the check cashed?

16       A.    I don't know.  Mike just pulled my

17   Chase records, which is my old bank, so that's

18   the only way I would be able to tell is to go

19   and check that check number, but I operated my

20   business under the assumption that it was

21   renewed because again, multiple visits to the

22   Building Department, I was getting stamped

23   permits.

24       Q.    Did they ever ask you whether you had

25   an active license?

Page 36

```
 1                    SEAN DUNN
 2   Corp.
 3        Q.    How about, Inc.?  Have you ever used
 4   Well Dunn Maintenance & Contracting, Inc.?
 5        A.    I don't think so.
 6        Q.    What is the last tax return that you
 7   know you submitted for what year for sure?
 8        A.    I don't know, to be honest, because
 9   like I said, this woman that I hired started
10   putting everything together, she gave me piles.
11   I would sign it, send it in, and then I would
12   start getting phone calls from like the State
13   Department making payment schedules for back to
14   like state taxes and stuff like that.  I
15   actually had a meeting down in White Plains at
16   one point 2013 or 2014 possibly.
17        Q.    What was the name of this woman, the
18   bookkeeper that was helping you?
19        A.    Barbie.
20        Q.    Do you know her last name?
21        A.    I do not.
22        Q.    How did you get ahold of her?
23        A.    She worked for a friend of mine, and
24   she had offered to help when I told her how bad
25   my record-keeping was.
```

Page 38

1                           SEAN DUNN

2          Q.    How about a form 1099, did you ever

3    issue yourself a 1099?

4          A.    I don't think so.

5          Q.    Did you ever issue yourself a form

6    K-1?

7          A.    No, I don't even know what that is.

8          Q.    It is a form that indicates being a

9    partner in a partnership or a member in an LLC?

10         A.    Oh, no.

11         Q.    Do you have an accountant today?

12         A.    No, I do not.

13         Q.    Or a bookkeeper?

14         A.    No.

15         Q.    Do you know what QuickBooks is?

16         A.    More or less.

17         Q.    QuickBooks is a way of keeping

18   accounting records, right?

19         A.    I use it for estimating and invoices.

20   I know what it is capable of.  I never learned

21   how to use it for that.

22         Q.    So explain to me in your own words how

23   you keep records for Well Dunn?

24         A.    I am a terrible bookkeeper.  I do my

25   estimates and my invoices through QuickBooks,

Page 50

SEAN DUNN

1
2  clients told you from day one when I introduced
3  myself, I told them I am terrible at paperwork
4  but I am an excellent builder, so I build a
5  beautiful home for a fair price, the quality is
6  always top notch and I am absolutely atrocious
7  with bookkeeping, payroll, all that stuff,
8  paying my bills.  I've just always been bad at
9  that.
10     Q.    You said you always build a top notch
11  home?
12     A.    Yes.
13     Q.    How many complaints have you gotten
14  over the quality of the work that you have done
15  in the ten years or so that you have had a home
16  improvement license?
17     A.    Aside from the Kleinschmidt?
18     Q.    Yes.
19     A.    I had a problem with a customer in
20  Mamaroneck a few years back where it was a cash
21  job, and he started talking directly to the
22  electrician, and we had a huge blowout, fallout
23  because the electrician did $10,000 worth of
24  work that he was told to do but the owner didn't
25  know that it was 10,000, and it got very ugly

Page 54

1                    SEAN DUNN

2    at Averill.

3         Q.   So if I want to get the complete

4    picture, all of the expenditures, I would have

5    to go to bank records and other vendor and

6    supplier and subcontractor records?

7         A.   Yes.

8         Q.   Your records, the Well Dunn records, a

9    hundred percent are what's right here on this

10   P25, right?

11        A.   Well, I would consider the copies of

12   all the vendor records that I have as Well Dunn

13   records and I submitted those.

14        Q.   Okay, but those aren't recorded

15   anywhere on Well Dunn's QuickBooks?

16        A.   Not on QuickBooks, no.

17        Q.   And if I wanted to know how much cash

18   was paid to your employees on any given day, how

19   would I know that, is there any way to know

20   that?

21        A.   No.

22        Q.   How were you compensated for the work

23   that you did?

24        A.   I paid my bills out of the Well Dunn

25   account.  That's my only checking account.

Page 55

SEAN DUNN

1

2      Q.    So in other words, you use the bank

3 account into which you put client money to pay

4 your personal expenses, and that's how you

5 compensate yourself?

6      A.    Yeah.

7      Q.    How long have you been doing that?

8      A.    Since I've started my business.

9      Q.    You know that that's not right, I

10 assume?

11         MR. CARUSO:  I object to the form.

12      You can answer, go ahead.

13      Q.    I only ask because you are giving me

14 the face that looks like --

15      A.    I am learning now obviously sitting in

16 a lawyer's office that I should have

17 incorporated.  I should have had a bookkeeper.

18 I am learning this all now the hard way.  I have

19 no way of assuring you that there is no crime,

20 that I never stole money from the clients, that

21 everything that they paid me is in that house,

22 you know, you could ask anybody that knows me or

23 I have done business with, I'm not that guy.  It

24 is just -- it was a bad situation that

25 snowballed, and you know, I hope in the end, it

Page 64

SEAN DUNN

1

2      A.    It depends.   Sometimes me, it depends

3   who takes the delivery, the subcontractor.

4      Q.    What steps do you take to make sure

5   the delivery tickets that are received from

6   subcontractors are maintained by you?

7      A.    The only thing we do is check in the

8   order to make sure it is accurate.

9      Q.    And then what steps do you personally

10  take to make sure those records are not

11  destroyed?

12     A.    None.

13     Q.    So all those records are gone?

14     A.    No, I have them now.

15     Q.    Yes, you received copies from the

16  supplier?

17     A.    Yes.

18     Q.    But other than that, if those weren't

19  available from the supplier, you would have

20  nothing, correct?

21     A.    Correct.

22     Q.    Is there any particular reason that

23  you do that?

24     A.    Again, just I have no idea what I'm

25  doing when it comes to bookkeeping.   I never

Page 66

                          SEAN DUNN

 1

 2   house?

 3        A.    The Change house?

 4        Q.    Yes.

 5        A.    2,000, 2500.

 6        Q.    And the other Putnam County house that

 7   you built?

 8        A.    Twelve thousand.

 9        Q.    Where is that?

10        A.    It is on North Lake Boulevard.    Then

11   there is another one on Mahopac Point that we

12   built that is about 8,000 square feet.

13        Q.    Any way to estimate the number of

14   projects that you had in, say, the last five

15   years?

16        A.    No.   We do a lot of small work, you

17   know, just to pay the bills.

18        Q.    When you say "we," is that you and

19   your brother?

20        A.    No, I say "we" because I am referring

21   to Well Dunn as if it is a separate entity; it

22   is just a habit I have.

23        Q.    Is that how you market it, Well Dunn

24   as a separate entity?

25        A.    I don't market Well Dunn; I never

Page 78

1                    SEAN DUNN

2    They cut me a check for what was in there, and,

3    again, they wanted me to open a new account, but

4    because of how they did it, it put a bad taste

5    in my mouth, so I switched banks.

6         Q.   Was there ever a time where you had

7    subaccounts within either Chase or PCSB to

8    separate business from personal?

9         A.   No.

10        Q.   So the whole time, personal money and

11   business money and business expenses and

12   personal expenses were all commingled?

13        A.   Yes.

14        Q.   Throughout the whole time, right?

15        A.   Since I started my business, yes.

16        Q.   I'm sorry, you may have answered this.

17   I apologize if I asked it already.  Do you

18   maintain workers' compensation insurance now?

19        A.   Currently, no.

20        Q.   What was the last time you maintained

21   workers' compensation insurance?

22        A.   It was before my accident.  I don't

23   know the exact dates.

24        Q.   Do you believe that you maintained

25   workers' compensation insurance in 2016?

Page 79

1                    SEAN DUNN

2       A.    I don't recall.

3       Q.    How about 2015?

4       A.    Yes.

5       Q.    2014?

6       A.    I believe so, yes.

7       Q.    2017?

8       A.    I don't know, I'd have to check.

9       Q.    Did you ever charge sales tax to any

10  of your customers?

11      A.    No.

12      Q.    Any particular reason why not?

13      A.    All the work that we do is a -- I'm

14  not allowed to charge sales tax.  It is exempt.

15  There is a term for it.

16      Q.    Well, how about for the supply of

17  materials when you are not doing the

18  installation work?

19      A.    For the supply of materials?

20      Q.    Yes, for the supply of materials?

21      A.    If we are supplying materials, we are

22  always installing it, so I don't think that

23  scenario would come up.

24      Q.    So all of what you do would always

25  involve some amount of labor?

Page 87

1                    SEAN DUNN

2        A.    First name.

3        Q.    And the last name?

4        A.    Osychenko.

5        Q.    During what period of time did Ms. --

6   what is her first name?

7        A.    Vika.

8        Q.    Is it okay if I call her Vika?

9        A.    Yes.

10       Q.    No disrespect but --

11       A.    Of course the last name is difficult.

12       Q.    So during what period of time did Vika

13   have a debit card for this bank account roughly?

14       A.    I'd say from when I opened it till a

15   year ago.

16       Q.    So roughly September 2016 to September

17   of 2017?

18       A.    Till July of '17.

19       Q.    And during that time, did she

20   regularly use the card?

21       A.    Yes.

22       Q.    And during that time that she was

23   using this card, you were putting Well Dunn

24   client money into that account, right?

25       A.    Yes, that's the only account I had.

Page 120

SEAN DUNN

1

2    A.   No.

3    Q.   I want to go back to the topic of

4  licensure.  Do you remember when you first met

5  Ned and Leslie Kleinschmidt whether you said

6  that you were licensed as a contractor?

7    A.   Yes.

8    Q.   Did you tell them that you were

9  licensed as a contractor?

10    A.   Yes.  In Putnam County, yes.

11    Q.   Your Westchester County home

12 improvement contractor license was revoked, is

13 that right?

14    A.   To my knowledge, it expired.

15    Q.   Wasn't it revoked?

16    A.   Not to my knowledge.

17       MR. GORDON:  I am going to mark as

18    Plaintiff's 52 a one-page e-mail from

19    Westchester County pursuant to a FOIL

20    request that we made.  This is an e-mail

21    from someone named John McGlinchey, and the

22    e-mail is dated April 23, 2015.

23       (E-mail dated April 23, 2015 marked

24    Plaintiff's Exhibit 52 for identification,

25    as of this date.)

Page 125

1                           SEAN DUNN

2          A.    Yes.

3          Q.    And you see that on March 2015, you

4     were ordered to appear on April 22 to answer

5     charges, do you see that?

6          A.    I'm reading it, yes.

7          Q.    You see that your failure to appear

8     resulted in penalties of $10,000?

9          A.    I see that.

10         Q.    Have you done any home improvement

11    contracting work in Westchester County after

12    May 2015?

13         A.    Yes.  I have.

14         Q.    So that work would have been in

15    violation of the order prohibiting you from

16    doing work in Westchester County, right?

17              MR. CARUSO:  Note my objection to the

18         form.  You can answer.

19         Q.    Right?

20              MR. CARUSO:  Go ahead and answer.  I

21         put an objection down, go ahead.

22         A.    Yes.

23         Q.    I want you to turn two pages in.  You

24    are looking at the right page.  It has a

25    photograph of you in the upper right-hand

Page 133

1                    SEAN DUNN

2         Q.   Do you sign off on that in some way

3    when he does that, do you approve it in some

4    way.

5         A.   I mean just verbally.  If he tells

6    me -- because it is always, you know, when I'm

7    short so I'll put something on my credit card.

8    He doesn't have my credit card, so if he is

9    going to buy something and there is no money in

10   the business account, he puts it on the Amex and

11   once there is money in the business account, he

12   pays you what he lent.

13        Q.   Why would there be no money in the

14   business account?

15        A.   Sometimes that's just the way it is.

16        Q.   So in other words, you are spending

17   more money that you have client receipts?

18        A.   No, sometimes, you know, clients are

19   late with payments and the jobs can't stop until

20   they pay, so you know, we have to just keep

21   going.

22        Q.   And what records would show which

23   customers are late?

24        A.   None.

25        Q.   So do you end up using client funds

Page 134

```
1                    SEAN DUNN
2    from one customer to cover another project's
3    expense when that customer is late?
4         A.    It is all in one account.  It is all
5    one big pool.
6         Q.    So there could be times where let's
7    say you are working three jobs, Job A, the
8    client is on time, Job B, the client is on time,
9    Job C, the client is late.  You would end up
10   using the money from Client A and B to cover the
11   expenses on Project C, right?
12        A.    Inadvertently, yes.
13        Q.    And that would happen periodically?
14        A.    From time to time.
15        Q.    And do you keep any kind of record of
16   when that happens?
17        A.    No.
18        Q.    You also have a Barclay card; is that
19   a credit card?
20        A.    Yes.
21        Q.    And from time to time, you will pay
22   that out of your one account, the PCSB account?
23        A.    Yes.
24        Q.    I am looking in particular on page 6
25   of 12, November 25th?
```

Page 136

SEAN DUNN

2  there is a NYSEG bill payment.  Is that for 8

3  Veschi Lane?

4       A.    Yes.

5       Q.    Underneath it, "MBFS.comwebpay," is

6  that Mercedes Benz Finance?

7       A.    Yes.

8       Q.    Is that for the lease of a Mercedes

9  Benz car in your name?

10      A.    No.

11      Q.    Who is that for?

12      A.    My ex-fiancee.

13      Q.    Who is the lessee on that vehicle?

14      A.    She is.

15      Q.    There are a number -- I will represent

16  to you that there are a number of months in

17  which the business was paying for, I guess her

18  Mercedes Benz, is that right?

19      A.    Yes, she had lost her job, so I was

20  paying her lease for her.

21      Q.    And this money to cover her Mercedes

22  Benz lease was coming out of your PCSB account?

23      A.    Correct.

24      Q.    Most, if not all of the money that

25  went into the PCSB account, came from your

Page 146

SEAN DUNN

2   your name to the Kleinschmidts?

3       A.   Yes.

4       Q.   And LAK ultimately hired you to be the

5   general contractor?

6       A.   Yes.

7       Q.   When you were first hired, did you

8   explain that there was no company LAK3,

9   that's -- I mean Well Dunn, that's just you?

10      A.   I don't think it ever came up.

11      Q.   Who else from Mr. Piccarillo's office

12  did you meet in connection with this project?

13      A.   Vlad, V-l-a-d.

14      Q.   Anybody else?

15      A.   No, I think it was just the two of

16  them.

17      Q.   When you first bid the job, did you

18  get a copy of the drawings?

19      A.   Yes.

20      Q.   And did you bid on those drawings?

21      A.   Yes.

22      Q.   That was in May of 2016, something

23  like that?

24      A.   Possibly, yeah.

25      Q.   And then the drawings were revised?

Page 149

SEAN DUNN

1
2  $820,000 by LAK3, right?
3      A.   I don't remember, but it sounds about
4  right.
5      Q.   $840,828.22, that's what you were
6  paid, right?
7      A.   That sounds about right, I don't
8  recall.  I will tell you by recollection that
9  almost 50 percent of that was change orders.
10     Q.   I am going to show you what we
11  previously marked as Plaintiff's Exhibits 26, 27
12  and 28.  So Exhibit 26 is a document called a
13  Notice to Admit, and Exhibit 27 is an exhibit to
14  that document.
15     A.   Okay.
16     Q.   And Exhibit 28 is Defendants'
17  responses to those requests.  I am going to
18  direct you to the last page of Exhibit 28.  Is
19  that your signature?
20     A.   That?
21     Q.   Yes.
22     A.   No.
23     Q.   Can I see that for a moment?
24         MR. CARUSO:  We have to get -- that's
25         something I just realized we have to get --

Page 165

1              SEAN DUNN

2      Q.   How about exterior finish?

3      A.   No.

4      Q.   Was that installed?

5      A.   No.

6      Q.   Was that bid?

7      A.   Yes.

8      Q.   How about roofing, was the roofing

9 substantially complete?

10     A.   It was ready for shingles.

11     Q.   Was it substantially complete?

12     A.   No.

13     Q.   Was the mechanical work substantially

14 complete?

15     A.   No.

16     Q.   Was the electrical work substantially

17 complete?

18     A.   No.

19     Q.   Had you done any electrical roughing?

20     A.   Just the service.

21     Q.   You mean bringing the electricity to

22 the house?

23     A.   From the meter to the basement, the

24 underground pipework, temporary power, all of

25 that was done.

1              SEAN DUNN

2        Q.    Did you bid on that?

3        A.    Did I bid on what?

4        Q.    Electrical?

5        A.    Yes.

6        Q.    Did you bid on mechanical?

7        A.    Yes.

8        Q.    Did you bid on the roof?

9        A.    Yes.

10        Q.    And were the prices for all of that

11  work included in the price that you charged to

12  LAK3?

13        A.    Partially because there was a lot of

14  unknowns.  So they got electric to code, but

15  there were no details so, for instance, Leslie

16  wanted to add a bunch of items that, you know,

17  would not have been part of the bid.

18        Q.    Well, aside from the finished

19  electrical, I'm talking about the electrical

20  roughing, the main conduits, the main electrical

21  wiring, the main, the home run, plus all else.

22  Had you been paid for that work at the time that

23  you left?

24        A.    We took a small electrical deposit

25  because there was quite a bit of removal because

Page 167

SEAN DUNN

2   there was a complex pump system for the septic

3   so all those components had to be delicately

4   removed and stored to be reinstalled so that

5   they had completed.  So we had taken a small

6   deposit for electrical work, yes.

7        Q.    So your testimony is that when you

8   left the project in June 2017, your work was

9   substantially complete?

10       A.    More than 50 percent, yes.

11       Q.    So your definition would be more than

12  50 percent?

13       A.    Well, I would consider substantial

14  more than 50 percent.  So I'm just trying to be

15  crystal clear.

16       Q.    Okay, got it.  When you left the

17  project in June of 2017, was the house suitable

18  for human occupancy?

19       A.    No.

20       Q.    For any number of reasons, right, a

21  lot of reasons?

22       A.    Several.  But again, keep in mind that

23  the total amount that they had paid out so far,

24  a large majority of that was change orders, so

25  that doesn't even apply to the bid dollar

Page 170

1                    SEAN DUNN

2        Q.    Did you ever obtain from the

3    Kleinschmidts their signature on a written

4    agreement?

5        A.    No.

6        Q.    So that's why you have admitted in

7    your responses that there is no written

8    agreement between you and the Kleinschmidts,

9    right, or you and LAK3?

10       A.    Right.  We were arguing about the

11   drawings.  I said that I would sign a contract

12   once there was a set of drawings and they were

13   never produced.  Because again, I can't bid

14   made-up stuff.

15       Q.    So I want to make sure I have this

16   right.  You did discuss a written contract with

17   the Kleinschmidts, right?

18       A.    Yes.

19       Q.    You prepared a written contract for

20   them, right?

21       A.    They prepared it.

22       Q.    They prepared it?

23       A.    And they gave it to me, I signed it,

24   gave it back, and then they never signed it to

25   give it back to me.

Page 195

1

2  SUPREME COURT OF THE STATE OF NEW YORK

   COUNTY OF WESTCHESTER

3  _____x

4  LAK3, LLC,

5                         Plaintiff,

6           -against-

7  SEAN DUNN, GERALD DUNN,

   and WELL DUNN MAINTENANCE

8  & CONTRACTING,

9                         Defendants.

   _____x

10

11

12                    May 7, 2018

                      9:11 a.m.

13

14

15

16        Continued deposition of SEAN DUNN,

17  taken by Plaintiff, pursuant to Adjournment,

18  at the offices of Gordon Law, LLP, 51 Bedford

19  Road, Katonah, New York, before Nancy R. Sullivan,

20  a Shorthand Reporter and Notary Public within

21  and for the State of New York.

22

23

24

25

Page 201

1                    SEAN DUNN

2        A.    No.

3        Q.    Thank you.  Did you do anything

4   between April 26, 2018 when you were last here

5   and today to prepare for today's deposition?

6        A.    I don't really understand the

7   question.

8        Q.    Well, remember on April 26, 2018, you

9   began your deposition?

10       A.    Yes.

11       Q.    And did you prepare for that

12   deposition in any way?

13       A.    Just speaking with my attorney.

14       Q.    Okay.  And you knew you were going to

15   come back today May 7, 2018 to continue, right?

16       A.    Yes.

17       Q.    So between April 26, 2018 and today,

18   did you do anything to prepare for today's

19   deposition?

20       A.    No.

21       Q.    When was the last time you spoke to

22   Mr. Caruso -- just don't tell me what you

23   discussed -- if anything?

24       A.    When was the last time?

25       Q.    Yes.

Page 209

                    SEAN DUNN

 1  you paid to your brother, Jerry?

 2       A.   I don't recall.

 3       Q.   Do you --

 4       A.   I believe so because he was on the

 5  books and we were using a company -- a payroll

 6  company, so I would imagine, yes, but they -- I

 7  think part of my package was they filed it

 8  because they sent me 1099's, W-2's, so I would

 9  say yes.

10       Q.   Do you remember whether you filed a

11  1099 or a W-2?

12       A.   For myself?

13       Q.   No, no, for your brother.

14       A.   Jerry at the time would have been -- I

15  mean he was an employee, so that's a W-2, no?

16       Q.   Is that what you recall?

17       A.   Yeah, I recall that when we were using

18  the payroll company, he was an employee, so it

19  would have been a W-2.

20       Q.   And that was in the 2013 time period?

21       A.   I don't remember when it was.

22       Q.   But during the time that you and your

23  brother were working on the LAK3 house, 41

24  Averill, you were off the books, right?

Page 210

1              SEAN DUNN

2       A.    I believe so, yes.

3       Q.    During that time period, you did not

4   report any wages to the IRS or the State of New

5   York, right?

6       A.    I don't think so.

7             MR. GORDON:  So let's mark as

8        Plaintiff's 55 a one-page document bearing

9        production number 1420.  It appears to be a

10       letter dated April 14, 2013 by Mr. Sean

11       Dunn to whom it may concern.

12            (Letter dated April 14, 2013, Bates

13       stamped 1420 marked Plaintiff's Exhibit 55

14       for identification, as of this date.)

15       Q.    You recognize what we marked as

16   Plaintiff's Exhibit 55, right?

17       A.    Yes.

18       Q.    That is a letter that you wrote in or

19   about April of 2013, right?

20       A.    Yes.

21       Q.    And at the time did you believe that

22   the contents of what you wrote were truthful?

23       A.    Yes.

24       Q.    And do you know why you wrote this

25   letter?

Page 211

1                    SEAN DUNN

2        A.    I believe he was trying to get a

3    mortgage on his home because he was off the

4    books, he was having a hard time getting

5    approved because he couldn't prove income, so

6    his mortgage broker, I believe, was the one that

7    asked me to write this.

8        Q.    And I'm sorry, but I think you've

9    answered this last time but, again, what does it

10   mean to you to be off the books?

11       A.    Jerry was paid cash.

12       Q.    And that cash was not reported in any

13   way, right, that's what off the books means to

14   you?

15       A.    No, off the books to me means Jerry

16   was paid cash.  He didn't get a paycheck.

17       Q.    Were any taxes withheld?

18       A.    No.

19       Q.    Was he an employee when you paid him

20   off the books?

21            MR. CARUSO:  Just note my objection.

22       You can answer.

23       A.    Yes, he got paid for working.

24       Q.    So was there a period of time that you

25   were paying your brother for work that he did

Page 284

1                      SEAN DUNN

2          Q.    Do you recognize that number?

3          A.    That's my Social Security number.

4          Q.    This account was opened at PCSB on or

5     about September 28, 2016, right?

6          A.    Yes.

7          Q.    And you were an authorized signer,

8     right?

9          A.    Yes.

10         Q.    That's your signature on this page?

11         A.    Yes.

12         Q.    And your brother, Gerald, was also an

13    authorized signer?

14         A.    Yes.

15         Q.    And at some point, Victoria Osychenko

16    was also a signer?

17         A.    Yes.

18         Q.    So if you go to the next page, you

19    will see in handwriting, it says "Removed

20    Victoria Osychenko as signer"?

21         A.    Yes.

22         Q.    Do you know or do you remember when

23    she was removed as a signer approximately?

24         A.    It probably would have been July,

25    August, September, somewhere around there.

Page 285

1                    SEAN DUNN

2          Q.    Of what year?

3          A.    Of '17.

4          Q.    So would it be fair to say that she

5    was an authorized signer between the time the

6    account was opened on or about September 28,

7    2016 until June, July or August of 2017?

8          A.    Yes.

9          Q.    Did you ever meet with anyone from

10   Sierra Pacific Windows Company?

11         A.    Yes.

12         Q.    Regarding this project?

13         A.    Yes.

14         Q.    Was it a manufacturer's rep you met

15   with?

16         A.    It was a sales rep.

17         Q.    Do you remember how many times you met

18   with the sales rep?

19         A.    Quite a few.

20         Q.    And you met concerning the

21   installation of windows at 41 Averill?

22         A.    Concerning the installation?

23         Q.    Of windows?

24         A.    Yes.

25         Q.    Did you ever take any notes of any

INDEX NO. 61510/2017
RECEIVED NYSCEF: 07/26/2018

**WORKING COPY**

# Gordon Aff. Exhibit 3

FILED: WESTCHESTER COUNTY CLERK 01/17/2018 01:21 PM INDEX NO. 61510/2017

NYSCEF DOC. NO. 38 RECEIVED NYSCEF: 01/17/2018

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

LAK3, LLC,

               Plaintiff,

            -against-

SEAN DUNN, GERALD DUNN, AND WELL
DUNN MAINTENANCE & CONTRACTING

              Defendants.

INDEX NO.

IAS PART

JUSTICE

PLAINTIFF'S FIRST NOTICE TO
ADMIT TO DEFENDANTS

      **PLEASE TAKE NOTICE** that, pursuant to CPLR 3123(a), Plaintiff LAK3, LLC

("Plaintiff"), by its undersigned attorneys, hereby demands that Defendant Sean Dunn ("Sean")

admit the truth of the following matters:

      1.    That there is no written agreement between Plaintiff and Sean, signed by Plaintiff

and Sean, concerning the construction of a single-family residential dwelling place at 41 Averill

Drive, Mahopac, New York (the "Project").

      2.    That there is no written agreement between Plaintiff and Defendant Gerald Dunn

("Gerald"), signed by Plaintiff and Gerald, concerning the construction of a single-family

residence at 41 Averill Drive, Mahopac, New York (the "Project").

      3.    That there is no written agreement between Plaintiff and Defendant Well Dunn

Maintenance & Contracting ("WD"), signed by someone on behalf of WD, concerning the

FILED: WESTCHESTER COUNTY CLERK 01/17/2018 01:21 PM INDEX NO. 61510/2017

NYSCEF DOC. NO. 59                                          RECEIVED NYSCEF: 01/17/2018

construction of a single-family residence at 41 Averill Drive, Mahopac, New York (the "Project").

4. That no written agreement has ever existed between Plaintiff and Sean, signed by Plaintiff and Sean, concerning the Project.

5. That no written agreement has ever existed between Plaintiff and Gerald, signed by Plaintiff and Gerald, concerning the Project.

6. That no written agreement has ever existed between Plaintiff and WD, signed by Plaintiff and someone on behalf of WD, concerning the Project.

7. That WD is a pseudonym or trade name under which Sean has done business.

8. That WD is a pseudonym or trade name under which Gerald has done business.

9. That Sean furnished work, labor, services, and/or materials to Plaintiff for the benefit of the Project.

10. That Gerald furnished work, labor, services, and/or materials to Plaintiff for the benefit of the Project.

11. That Sean furnished work, labor, services, and/or materials to Plaintiff for the benefit of the Project using the name "Well Dunn Maintenance & Contracting".

12. That Gerald furnished work, labor, services, and/or materials for the Project using the name "Well Dunn Maintenance & Contracting".

13. That WD is not a corporation, limited liability company or limited liability partnership.

14. That WD was not a corporation, limited liability company, or limited liability partnership at any time during which Sean, Gerald and/or WD furnished work, labor, services, and/or materials to or Plaintiff for the benefit of the Project.

2

15. That Sean knew that WD was not a corporation, limited liability company, or limited liability partnership at any time during which Sean, Gerald and/or WD furnished work, labor, services, and/or materials to Plaintiff for the benefit of the Project.

16. That Gerald knew that That WD was not a corporation, limited liability company, or limited liability partnership at any time during which Sean, Gerald and/or WD furnished work, labor, services, and/or materials to Plaintiff or for the benefit of the Project.

17. That Sean did not have a valid Putnam County contractor's license during the time that he furnished work, labor, services, and/or materials to Plaintiff or for the benefit of the Project.

18. That Gerald did not have a valid Putnam County contractor's license during the time that he furnished work, labor, services, and/or materials to Plaintiff or for the benefit of the Project.

19. That WD did not have a valid Putnam County contractor's license during the time that Sean, Gerald, and/or WD furnished work, labor, services, and/or materials to Plaintiff for the benefit of the Project.

20. That Sean was not registered as a home improvement contractor with the County of Putnam, State of New York, at the time he furnished work, labor, services, and/or materials to Plaintiff for the benefit of the Project.

21. That Gerald was not registered as a home improvement contractor with the County of Putnam, State of New York, at the time he furnished work, labor, services, and/or materials to Plaintiff for the benefit of the Project.

FILED: WESTCHESTER COUNTY CLERK 01/17/2018 01:21 PM          RECEIVED NYSCEF: 01/17/2018
NYSCEF DOC. NO. 38

22. That WD was not registered as a home improvement contractor with the County of Putnam, State of New York, at the time it, Sean, and Gerald furnished work, labor, services, and/or materials to Plaintiff for the benefit of the Project.

23. That Sean engaged in a home improvement business within the County of Putnam at a time when he was not licensed to do so and was not registered with the County of Putnam, State of New York as a home improvement contractor.

24. That Gerald engaged in a home improvement business within the County of Putnam at a time when he was not licensed to do so and was not registered with the County of Putnam, State of New York as a home improvement contractor.

25. That WD engaged in a home improvement business within the County of Putnam at a time when he was not licensed to do so and was not registered with the County of Putnam, State of New York as a home improvement contractor.

26. That Sean held himself out to Plaintiff as a licensed home improvement contractor throughout the time he furnished work, labor, services, and/or materials to Plaintiff for the benefit of the Project.

27. That Gerald held himself to Plaintiff out as a licensed home improvement contractor throughout the time he furnished work, labor, services, and/or materials to Plaintiff for the benefit of the Project.

28. That WD, by Sean and/or Gerald, held itself out as a licensed home improvement contractor throughout the time he furnished work, labor, services, and/or materials to Plaintiff for the benefit of the Project.

29. That Sean held himself out to Plaintiff as a being registered as a home Improvement contractor with the County of Putnam, State of New York throughout the time he furnished work, labor, services, and/or materials to Plaintiff for the benefit of the Project.

30. That Gerald held himself out to Plaintiff out as being registered as a home improvement contractor with the County of Putnam, State of New York throughout the time he furnished work, labor, services, and/or materials to Plaintiff for the benefit of the Project.

31. That WD, by Sean and/or Gerald, held itself out as being registered as a home improvement contractor with the County of Putnam, State of New York throughout the time it furnished work, labor, services, and/or materials to Plaintiff for the benefit of the Project.

32. That between June 27, 2016 and March 11, 2017, Plaintiff paid WD the sum of $840,828.22 for work, labor, services, and/or materials to Plaintiff for the benefit of the Project.

33. That the document annexed as Exhibit 1 hereto ("Exh. 1") is a true and accurate copy of the original of this document.

34. That Sean, Gerald, and/or or someone under the direction and control of one or both of them prepared Exh. 1.

35. That Sean knew that Exh. 1 was being delivered to one or more of Plaintiff's representatives.

36. That Gerald knew that Exh. 1 was being delivered to one or more of Plaintiff's representatives.

37. That Sean intended for Plaintiff to rely on the contents of Exh. 1 at the time it was delivered to one or more of Plaintiff's representatives.

38. That Gerald intended for Plaintiff to rely on the contents of Exh. 1 at the time it was delivered to one or more of Plaintiff's representatives.

FILED: WESTCHESTER COUNTY CLERK 01/17/2018 01:21 PM

INDEX NO. 61510/2017

RECEIVED NYSCEF: 01/17/2018

39. That Sean did not maintain workers compensation insurance during the time that he rendered work, labor, services, and/or materials to Plaintiff for the benefit of the Project.

40. That Gerald did not maintain workers compensation insurance during the time that he rendered work, labor, services, and/or materials to Plaintiff for the benefit of the Project.

41. That WD did not maintain workers compensation insurance during the time that it rendered work, labor, services, and/or materials to Plaintiff for the benefit of the Project.

42. That Sean represented to one or more employees of the County of Putnam, State of New York, in connection with the Project, that WD maintained workers compensation insurance.

43. That Gerald represented to one or more employees of the County of Putnam, State of New York, in connection with the Project, that WD maintained workers compensation insurance.

44. That Sean knew at the time that he and/or Gerald represented to one or more employees of the County of Putnam, State of New York, in connection with the Project, that WD maintained workers compensation insurance, that this representation was false.

45. That Gerald knew at the time that he and/or Sean represented to one or more employees of the County of Putnam, State of New York, in connection with the Project, that WD maintained workers compensation insurance, that this representation was false.

46. That, in connection with obtaining one or more building permits for the Project, Sean represented to the Building Department of Putnam County, State of New York (the "Building Department"), that WD had a valid home improvement contractor's license and/or was registered with Putnam County, State of New York, as a home improvement contractor.

6

FILED: WESTCHESTER COUNTY CLERK 01/17/2018 01:21 PM
NYSCEF DOC. NO. 38
RECEIVED NYSCEF: 01/17/2018

47. That, in connection with obtaining one or more building permits for the Project, Gerald represented to the Building Department of Putnam County, State of New York (the "Building Department"), that WD had a valid home improvement contractor's license and/or was registered with Putnam County, State of New York, as a home improvement contractor.

48. That WD obtained one or more building permits from the Building Department in connection with the Project based upon the representation by Sean and/or Gerald to the Building Department of Putnam County, State of New York, that WD had a valid home improvement contractor's license or was registered with Putnam County, State of New York, as a home improvement contractor.

49. That Sean knew the building permit that he and/or Gerald obtained from the Building Department for the Project was based on the false representation that WD had a valid home improvement contractor's license and/or was registered with Putnam County, State of New York, as a home improvement contractor.

50. That Gerald knew the building permit that he and/or Sean obtained from the Building Department for the Project was based on the false representation that WD had a valid home improvement contractor's license and/or was registered with Putnam County, State of New York, as a home improvement contractor.

FILED: WESTCHESTER COUNTY CLERK 01/17/2018 01:21 PM       INDEX NO. 61510/2017
NYSCEF DOC. NO. 38                                        RECEIVED NYSCEF: 01/17/2018

Dated: Katonah, New York
October 25, 2017


GordonLaw LLP

By: _____
        Michael R. Gordon

Attorneys for Plaintiff LAK3, LLC
51 Bedford Road, Suite 10
Katonah, New York 10536
Telephone     914.232.9500
Fax           914.992.6634
Email         mgordon@gordonlawllp.com


8

# EXHIBIT 1

KLEINSCHMIDT APPLICATION AND CERTIFICATE FOR PAYMENT
Owner: Ned & Lesley Kleinschmidt
Project: 41 Averill Drive, Mahopac NY 10541

Application No. 1
Application Date:
Period To: 5/4/17
Project No. 5/4/17

| A | B | C | D | E | F | G | H | I | J | K |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | WORK COMPLETED | | MATERIALS PRESENTLY STORED (NOT IN G OR E) | TOTAL COMPLETED AND STORED TO DATE (D+E+F) | | | | |
| ITEM NO. | DESCRIPTION | SCHEDULED VALUE | FROM PREVIOUS APPLICATIONS (D+E) | THIS PERIOD | | | % (G/C) | BALANCE TO FINISH (C-G) | RETAINAGE | COMMENTS THIS PERIOD |
| 1 | General Conditions (with supervision) GL & WC Insurance | 50,000 | 30,000 | | | 30,000 0 | 60% | 20,000 0 | | |
| 2 | Sitework | 40,000 | 40,000 | | | 40,000 | 100% | 0 | | |
| 3 | Demolition | 60,000 | 60,000 | | | 60,000 | 100% | 0 | | |
| 4 | Concrete/Masonry | 150,000 | 130,000 | | | 130,000 | 87% | 20,000 | | |
| 5 | Steel | 10,000 | 62,000 | | | 62,000 | 620% | -52,000 | | |
| 6 | Wood Framing Material | 90,000 | 90,000 | | | 90,000 | 100% | 0 | | |
| 7 | Wood Framing Labor | 40,000 | 40,000 | | | 40,000 | 100% | 0 | | |
| 8 | Roofing | 80,000 | 30,000 | | | 30,000 | 38% | 50,000 | | |
| | Stucco and Trim | 50,000 | 22,712 | | | 22,712 | 45% | 27,288 | | |
| 9 | Gutters & Leaders | 16,000 | 4,000 | | | 4,000 | 25% | 12,000 | | |
| 10 | Insulation | 25,000 | | | | 0 | 0% | 25,000 | | |
| 11 | Drywall | 35,000 | | | | 0 | 0% | 35,000 | | |
| 12 | Windows & Exterior Doors | 150,000 | 140,738 | | | 140,738 | 94% | 9,263 | | |
| 13 | Interior Doors and hardware | 30,000 | | | | 0 | 0% | 30,000 | | |
| 14 | Finish Carpentry Materials (w/Stairs & Railings) | 60,000 | 20,000 | | | 20,000 | 33% | 40,000 | | |
| 15 | Finish Carpentry Labor (w/stairs & railings) | 35,000 | 10,000 | | | 10,000 | 29% | 25,000 | | |
| 16 | Paint | 32,000 | | | | 0 | 0% | 32,000 | | |
| 17 | Wood Floors (Labor & Materials) | 30,000 | | | | 0 | 0% | 30,000 | | |
| 18 | Ceramic Tile Installation | 30,000 | | | | 0 | 0% | 30,000 | | |
| 19 | Specialties | 11,378 | 11,378 | | | 11,378 | 100% | -1 | | |
| 20 | HVAC | 105,000 | 80,000 | | | 80,000 | 76% | 25,000 | | |
| 21 | Plumbing | 60,000 | 50,000 | | | 50,000 | 83% | 10,000 | | |
| 22 | Electric | 75,000 | 20,000 | | | 20,000 | 27% | 55,000 | | |
| 23 | Change Order for basement slab | 13,750 | 13,750 | | | | | | | |
| | TOTAL PAGE 1 | 1,278,128 | 840,828 | 0 | 0.00 | 840,828 | 66% | 423,550 | #REF! | #REF! |

INDEX NO. 61510/2017
RECEIVED NYSCEF: 07/26/2018

WORKING COPY

# Gordon Aff. Exhibit 4

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

LAK3, LLC,

                         Plaintiff,

    -against-

SEAN DUNN, GERALD DUNN, and WELL DUNN
MAINTENANCE & CONTRACTING,

                        Defendants.

Index No. 61510/2017

**DEFENDANTS' RESPONSES
TO PLAINTIFF'S REQUEST FOR
<u>ADDRESSES OF DEFENDANTS</u>**

Defendants respond to plaintiff's Request for the Addresses of Defendants, dated October 25, 2017 (the "Request"), as follows:

1.     Defendant Sean Dunn: (a) P.O. Box 1161, Yorktown Heights, New York 10598 (post office address); and (b) 8 Veschi Lane, Mahopac, New York 10541 (residence address)

2.     Defendant Well Dunn Maintenance & Contracting, P.O. Box 1161, Yorktown Heights, New York 10598 (post office address).

3.     Defendant Gerald Dunn: 2719 Strang Boulevard, Yorktown Heights, New York 10598 (residence and post office address).

Defendants specifically reserve the right to supplement, amend, and/or modify all of the foregoing responses.

Dated: Carmel, New York
       February 9, 2018

                       **WILLIAM A. SHILLING, JR., P.C.**

                       By: _____
                           Michael V. Caruso
                       122 Old Route 6
                       Carmel, New York 10512
                       (845) 225-7500

                       *Attorneys for defendants*



## VERIFICATION

STATE OF NEW YORK    )
                              ) ss.:

COUNTY OF PUTNAM    )

SEAN DUNN, being duly sworn deposes and says:

I am a defendant in this action. I have read Defendants' Response to Plaintiff's Request for Addresses of Defendants and my response to the request. I am familiar with the contents of both. Based on my personal knowledge, Defendants' Response to Plaintiff's Request for Addresses of Defendants are true and correct insofar as I have provided partial, or complete, responses thereto.

_____
SEAN DUNN

Sworn to before me on this
9th day of February, 2018

_____
Notary Public
Michael V. Caruso
Reg. No. 02CA6365120
Qualified in Putnam Co.
Commission Expires 9/25/21

2

<u>VERIFICATION</u>

STATE OF NEW YORK    )
                      ) ss.:

COUNTY OF PUTNAM    )

    *GERALD DUNN*, being duly sworn deposes and says:

    I am a defendant in this action. I have read Defendants' Response to Plaintiff's Request for Addresses of Defendants and my response to the request. I am familiar with the contents of both. Based on my personal knowledge, Defendants' Response to Plaintiff's Request for Addresses of Defendants are true and correct insofar as I have provided partial, or complete, responses thereto.

                                          GERALD DUNN

Sworn to before me on this
9th day of February, 2018

Notary Public
Michael V. Caruso
Reg. No. 02CA6365120
Qualified in Putnam C.
Commission Expires 9/25/21

3

**WORKING COPY**

# Gordon Aff. Exhibit 4

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

LAK3, LLC,

                                      Plaintiff,

        -against-

SEAN DUNN, GERALD DUNN, and WELL DUNN
MAINTENANCE & CONTRACTING,

                                    Defendants.

Index No. 61510/2017

**DEFENDANTS' RESPONSES
TO PLAINTIFF'S REQUEST FOR
ADDRESSES OF DEFENDANTS**

Defendants respond to plaintiff's Request for the Addresses of Defendants, dated October 25, 2017 (the "Request"), as follows:

1.    Defendant Sean Dunn: (a) P.O. Box 1161, Yorktown Heights, New York 10598 (post office address); and (b) 8 Veschi Lane, Mahopac, New York 10541 (residence address)

2.    Defendant Well Dunn Maintenance & Contracting, P.O. Box 1161, Yorktown Heights, New York 10598 (post office address).

3.    Defendant Gerald Dunn: 2719 Strang Boulevard, Yorktown Heights, New York 10598 (residence and post office address).

Defendants specifically reserve the right to supplement, amend, and/or modify all of the foregoing responses.

Dated: Carmel, New York
       February 9, 2018

                          **WILLIAM A. SHILLING, JR., P.C.**

                          By: _____
                              Michael V. Caruso
                          122 Old Route 6
                          Carmel, New York 10512
                          (845) 225-7500

                          *Attorneys for defendants*



<u>VERIFICATION</u>

STATE OF NEW YORK          )
                          ) ss.:
COUNTY OF PUTNAM          )

SEAN DUNN, being duly sworn deposes and says:

I am a defendant in this action. I have read Defendants' Response to Plaintiff's Request for Addresses of Defendants and my response to the request. I am familiar with the contents of both. Based on my personal knowledge, Defendants' Response to Plaintiff's Request for Addresses of Defendants are true and correct insofar as I have provided partial, or complete, responses thereto.

_____
SEAN DUNN

Sworn to before me on this
9th day of February, 2018

_____
Notary Public
Michael V. Caruso
Reg. No. 02CA6365120
Qualified in Putnam Co.
Commission Expires 9/25/21

2

## VERIFICATION

STATE OF NEW YORK )
                   ) ss.:

COUNTY OF PUTNAM )

      GERALD DUNN, being duly sworn deposes and says:

      I am a defendant in this action. I have read Defendants' Response to Plaintiff's Request

for Addresses of Defendants and my response to the request. I am familiar with the contents of

both. Based on my personal knowledge, Defendants' Response to Plaintiff's Request for

Addresses of Defendants are true and correct insofar as I have provided partial, or complete,

responses thereto.

                                  GERALD DUNN

Sworn to before me on this
9th day of February, 2018

Notary Public
Michael V. Caruso
Reg. No. 02CA6365720
Qualified in Putnam C.
Commission Expires 9/25/21

3

**WORKING COPY**

**Gordon Aff. Exhibit 5**

From: Ned Kleinschmidt <nkleinschmidt@rpaadvisors.com>
To: Sean Dunn <welldunnone@aol.com>
Cc: michael gordon <mgordon@gordonlawllp.com>
Subject: Averill
Date: Mon, Jun 19, 2017 2:36 pm
Attachments: Well Dunn Termination 061917.pdf (3224K), ATT00001.htm (182)

Please see attached.


Ned Kleinschmidt



LAK3, LLC
41 Averill Drive
Mahopac, New York 10541

June 19, 2017

**BY EMAIL AND CERTIFIED MAIL,
RETURN RECEIPT REQUESTED**

Mr. Sean Dunn
Well-Dunn Maintenance
P.O Box 1161
Yorktown Heights, New York 10598

Re: NOTICE OF TERMINATION

Dear Sean:

This is to inform you that we have elected to terminate the role of Well-Dunn Maintenance and Contracting ("you" or "Well-Dunn") on the construction of our single-family residence at 41 Averill Drive, Mahopac, New York (the "Project") in respect of which you have been acting as General Contractor. This termination is effective immediately.

As more fully explained below in Section A, this termination is for cause.

As more fully explained below in Section B, because you have taken monies from us that you represented to us were intended for subcontractors and suppliers who or that furnished work, labor, services, and materials to and for the benefit of the Project, you are subject to the provisions of the New York Lien Law, including without limitation Article 3-A thereof, which concerns Lien Law Trust Funds. Section B below contains certain demands based upon the New York Lien Law.

Finally, Section C contains a demand that, if you have not already done so, you immediately take all steps to preserve and not destroy or delete all documents and things, whether paper, electronic, or otherwise, having any relevance or possible relevance to the Project.

A. Notice of Termination

You are being terminated because, despite repeated warnings, notices, and opportunities by us for you to cure

- You repeatedly failed to furnish the services, work, labor, supervision, and materials for which we have paid you over $800,000, resulting in substantial delays in Project completion and additional and unnecessary Project costs;

000647

- You abandoned the Project without notice;

- The work, labor, supervision and materials you furnished to and for the benefit of the Project have been (a) materially deficient, (b) not in compliance with the Project design that you bid on and agreed to comply with, (c) not in compliance with good construction standards and practices, (d) violative of manufacturer specifications, and in some cases (e) hazardous;

- Based upon the government records we have reviewed, you appear to be in material violation of State and Putnam County registration requirements (it also appears that Well Dunn is not recognized by the State of New York as an existing entity with the capacity to enter into a contract);

- You have diverted Lien Law Trust funds; and

- You materially deceived us as to your qualifications, ability, and capacity to serve as General Contractor for the Project and your compliance with State and Putnam County registration requirements.

As a consequence of this termination:

1. You are forbidden to return to the Project site without our written consent for any reason. If you desire to return to the project site as it relates to the subject of Point A.3 below, concerning off-site stored materials and the retrieval by you and/or your subcontractors of tools and materials not purchased with Project monies, you must provide at least 48 hours' notice to us of the date and time you wish to return and it must be an acceptable time to us or our representatives who will meet you on site. If you do return to the Project site for any reason without our written consent, you will be trespassing;

2. On or before June 21, 2017, you must identify to us, by name, address, telephone number, and emails address, all subcontractors and suppliers of all tiers that have furnished or have been contracted to furnish any work, labor, services, and/or materials to or for the benefit of the Project;

3. On or before June 21, 2017, you must (a) identify to us all off-site stored materials that you have purchased or contracted to purchase using Project monies you have received from us, including the location of such off-site stored materials, (b) arrange for the inspection of such materials (by us or our representatives) off site to determine if they are to be accepted, delivery of such materials to the Project site no later than June 26, 2017, between the hours of 8am and 3pm, and (c) arrange for the retrieval of all tools and other materials not purchased with Project monies by you and/or your subcontractors. You must provide at least 48 hours' notice to us of the date and an approximate time of such delivery of off-site stored materials and retrieval of tools and materials not

2

purchased with Project monies so that our representatives can consent, meet you on site and can re-inspect and keep safe any returned items we accept; and

4. After we have received the information demanded by this letter and after we have concluded the investigation we have begun into the circumstances of how you have handled the Project, we will (a) furnish you with a statement of account stating the overpayment you have received from us and demanding the return of such overpayment, and (b) advise you of any other actions you must take and payments you must make to undo, to the extent possible, the damage you have caused to us.

**B.    Lien Law Requirements**

As discussed above, you are bound by the requirements of the New York Lien Law and, pursuant to Article 3-A thereof, are a trustee of monies that we have paid to you for the benefit of subcontractors and suppliers who and that furnished work, labor, services and/or materials to and for the benefit of the Project. Pursuant to Lien Law §§ 75-77, we hereby demand that, on or before July 5, 2017, you provide us with (a) an opportunity to inspect, at a location within Putnam County, New York State, the books and records you have maintained, if any, relating to the New York Lien Law trust that exists as a matter of law with respect to the Project (the "Trust") and (b) copies of all Trust-related books and records.

**C.    Document preservation**

Given that this Notice of Termination stems from events that have given rise to claims by us against you, and given the likelihood that this Notice of Termination will lead to litigation, we hereby demand that you immediately preserve all documents, tangible things and electronically stored information relevant and potentially relevant to the Project. This demand pertains to Well-Dunn and Sean Dunn individually and any other individual who owns or operates or is employed, contracts or subcontracts by or for Well Dunn Maintenance and Contracting. This obligation to preserve covers all information related to the Project whether in paper, electronic or any other tangible form and includes, by way of example, computerized and electronically stored accounting records, plans, drawings, specifications, purchase orders, invoices, emails, text messages, correspondence, Project notes and logs, photographs, and videos. To the extent anyone who is bound by this preservation demand has or uses an automatic deletion device or function, that device or function should be disabled immediately.

\*                    \*                    \*

We expect your complete and timely compliance with the foregoing. Should you wish to discuss any aspect of the foregoing, you or, if you have retained counsel, your counsel, should contact our attorney, Michael R. Gordon, at GordonLaw LLP, at 914.232.9500. Mr. Gordon's email address is mgordon@gordonlawllp.com.

000649

This Notice of Termination is without prejudice to any other rights we have as a matter of law.

Very truly yours,

LAK3, LLC

By: _____
Ned Kleinschmidt,
As Member

4

009650

**WORKING COPY**

**Gordon Aff. Exhibit 6**

# NYS Department of State

## Division of Corporations

### Entity Information

The information contained in this database is current through February 16, 2018.

Selected Entity Name: WELL DUNN MAINTENANCE & CONTRACTING CORP.
Selected Entity Status Information

| | |
|---|---|
| **Current Entity Name:** | WELL DUNN MAINTENANCE & CONTRACTING CORP. |
| **DOS ID #:** | 3998427 |
| **Initial DOS Filing Date:** | SEPTEMBER 22, 2010 |
| **County:** | WESTCHESTER |
| **Jurisdiction:** | NEW YORK |
| **Entity Type:** | DOMESTIC BUSINESS CORPORATION |
| **Current Entity Status:** | INACTIVE - Dissolution by Proclamation / Annulment of Authority (Aug 31, 2016) |

Information to reinstate a corporation that has been dissolved by proclamation or annulment of authority by proclamation is available on the New York State Department of Taxation and Finance website at www.tax.ny.gov keyword TR-194.1 or by telephone at (518) 485-6027

Selected Entity Address Information

**DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)**
SEAN DUNN
P.O. BOX 1161
YORKTOWN HEIGHTS, NEW YORK, 10598

**Registered Agent**

NONE



This office does not record information regarding the names and addresses of officers, shareholders or directors of nonprofessional corporations except the chief executive officer, if provided, which would be listed above. Professional corporations must include the name(s) and address(es) of the initial officers, directors,

Entity Information

and shareholders in the initial certificate of
incorporation, however this information is not recorded
and only available by viewing the certificate.

### *Stock Information

| # of Shares | Type of Stock | $ Value per Share |
|---|---|---|
| 200 | No Par Value | |

*Stock information is applicable to domestic business corporations.

### Name History

| Filing Date | Name Type | Entity Name |
|---|---|---|
| SEP 22, 2010 | Actual | WELL DUNN MAINTENANCE & CONTRACTING CORP. |

A **Fictitious** name must be used when the **Actual** name of a foreign entity is unavailable for use in New York
State. The entity must use the fictitious name when conducting its activities or business in New York State.

NOTE: New York State does not issue organizational identification numbers.

Search Results   New Search

Services/Programs   |   Privacy Policy   |   Accessibility Policy   |   Disclaimer   |   Return to DOS
Homepage   |   Contact Us

**WORKING COPY**

# Gordon Aff. Exhibit 9

## PARTIAL RELEASE AND WAIVER OF LIEN RIGHTS

THE STATE OF New York}    KNOW ALL MEN BY THESE PRESENTS:

COUNTY OF Putnam}

OWNER:   Lesley & Ned Kleinschmidt & Well Dunn Maintenance & Contracting
PROJECT: Kleinschmidt Residence, 41 Averill Drive, Mahopac NY 10541

The undersigned acknowledges receipt of the sum of **$820,828.22** representing full payment due and payable for all labor performed and/or materials provided, less any retainage, through the period **5/4/2017** on the above Project. Description of services and/or materials provided including but not limited to the following: **masonry, framing, plumbing, excavation, windows and HVAC.**

In consideration of such payment, the undersigned hereby forever waives, relinquishes and releases all claims of every kind against the Property or the Owner, its agents, successors, assigns, construction lender and sureties, including but not limited to all liens and claims of liens, which the undersigned has or may have, as a result of or in connection with the performance or furnishing of labor or materials through the date hereof.

The undersigned does hereby represent and warrant that all persons or entities who have furnished labor or materials to the undersigned in connection with the Work performed through the date hereof have been paid all amounts to which they have become entitled, excepting agreed retainage not yet payable and due.

The undersigned hereby agrees to unconditionally indemnify and hold harmless the Owner, the Owner's construction lender, and their successors, assigns and sureties, against all loss, cost, damage, or expense by reason of any and all manner of liens, claims, or demands which anyone may have for labor performed, or for material or equipment furnished to the Project by, through or under the undersigned through the date hereof.

The person signing this document represents that he or she is duly authorized to do so on behalf of the undersigned.

EXECUTED this ___4th___ day of ___May_____, 201 7.

   COMPANY NAME: ___Well Dunn Maintenance & Contracting___

   By: _____
   Name: ___Sean Dunn_____
   Title: ___Owner / Operator_____

  SUBSCRIBED AND SWORN TO BEFORE ME on this _____ day of _____, 201___ to certify which witness my hand and official seal of office.

     _____
     Notary Public, State of _____

     _____
     Printed Name of Notary
     My Commission Expires: _____



**WORKING COPY**

**Gordon Aff. Exhibit 10**

**Front** 🔍 **Enlarge/Reduce Check Image**



Need help printing or saving this check?

**Back** 🔍 **Enlarge/Reduce Check Image**



Need help printing or saving this check?



PLAINTIFF'S
EXHIBIT
56
5/7/18 NS



**Need help printing or saving this check?**



Back  Enlarge/Reduce Check Image

2

LAK 3 LLC
1943 BEEKMAN CT
YORKTOWN HEIGH"S, NY 10598-5287

1016

DATE 10/6/2016

PAY TO THE ORDER OF *Well Dunn Construction*          $ 90,000

*ninety thousand dollars* _____ DOLLARS

CHASE ❍
JPMorgan Chase Bank, N.A.
www.Chase.com

FOR _____

*SA Kleinschmidt*

⑈0010⑆5⑈ ⑆021000021⑆ 738108096⑈

**Need help printing or saving this check?**

Back 🔍  **Enlarge/Reduce Check Image**

HALIFPAC
1267    -97T-10/06/16

01:29 PM
90,000.00

#126 OCT 08 2016

DO NOT WRITE, STAMP OR SIGN BELOW THIS LINE
RESERVED FOR FINANCIAL INSTITUTION USE

801 814 1730

FEDERAL RESERVE BOARD OF GOVERNORS Reg. CC

3



LAK 3 LLC
1843 BEEKMAN CT
YORKTOWN HEIGHTS, NY 10598-6267

1018

DATE 11/4/2016

PAY TO THE ORDER OF  Well Done Construction                    $ 130,000.00

One Hundred Thirty Thousand                                    DOLLARS

CHASE
JPMorgan Chase Bank, N.A.
www.Chase.com

**Need help printing or saving this check?**

Back  **Enlarge/Reduce Check Image**



130,000.00
11:11 AM

**Need help printing or saving this check?**

4



**LAK 3 LLC**
1943 BEEKMAN CT
YORKTOWN HEIGHTS, NY 10598-6267

1019

DATE 11/17/2016

PAY TO THE ORDER OF _Well Done Construction_   $ 90,000.00

_Ninty thousand dollars_ ————————   DOLLARS

**CHASE**
JPMorgan Chase Bank, N.A.
www.Chase.com

FOR _____

Need help printing or saving this check?

Back  Enlarge/Reduce Check Image

90,000.00
90 C00$:$$ PM
MAHOPAC
T2I  E3 11/17/16
DO NOT WRITE, STAMP OR SIGN BELOW THIS LINE
RESERVED FOR FINANCIAL INSTITUTION USE



**Need help printing or saving this check?**

Back   **Enlarge/Reduce Check Image**





**Need help printing or saving this check?**

Back   **Enlarge/Reduce Check Image**



1025

LAK 3 LLC
1940 BEEKMAN CT
YORKTOWN HEIGHTS, NY 10598-6267

DATE 1/17/2017

PAY TO THE ORDER OF Well Dunn Maintenance & Contracting $ 80,000 00/xx

eighty thousand dollars DOLLARS

CHASE
JPMorgan Chase Bank, N.A.
www.Chase.com

FOR

⑈001025⑈ ⑆021000021⑆ 738108096⑈

**Need help printing or saving this check?**

Back **Enlarge/Reduce Check Image**

-Inst=PCSB BANK-RtNum=>221970980<-TrID=126Br=1
-TranDt=01/24/17-ItemNum=544016411614

ENDORSE HERE

801641730

DO NOT WRITE, STAMP OR SIGN BELOW THIS LINE
RESERVED FOR FINANCIAL INSTITUTION USAGE

-Inst=PCSB BANK-RtNum=>221970980<-TranDt=01/24/17-TrID=126
-TrID=126-StartTm=3:25:59 PM
-ItemNum=544016411614

#126 JAN 24 2017

**Need help printing or saving this check?**



**LAK 3 LLC**
1943 BEEKMAN CT
YORKTOWN HEIGHTS, NY 10598-0267

1026

DATE 1/17/2017

PAY TO THE ORDER OF _Well Dunn Contracting_ $ 30,700 00/xx

_Thirty thousand seven hundred_ — DOLLARS

CHASE
JPMorgan Chase Bank, N.A.
www.Chase.com

FOR _____

⑈0010260⑈ ⑆021000021⑆ 738108098⑈

**Need help printing or saving this check?**

Back 🔍 **Enlarge/Reduce Check Image**



Inst=PCSB BANK-RtNum=>221970980<-TrlID=126Br=1
TranDt=01/24/17-ItemNum=544016411615

#12R JAN 24 2017

Need help printing or saving this check?



Need help printing or saving this check?

Back  Enlarge/Reduce Check Image





**LAK 3 LLC**
1945 BEEKMAN CT
YORKTOWN HEIGHTS, NY 10598-6267

1028

DATE 2/25/2017

PAY TO THE ORDER OF _Well Dunn Contracting_          $ 20,000

_twenty thousand dollars_          DOLLARS

CHASE ◻
JPMorgan Chase Bank, N.A.
www.Chase.com

FOR 581

⑈00⑆028⑈ ⑆02⑆0000⑆2⑆ 738108096

Need help printing or saving this check?



Back    Enlarge/Reduce Check Image



LAK 3 LLC
1843 BEEKMAN CT
YORKTOWN HEIGHTS, NY 10598-6267

1030

DATE 3/11/2017

PAY TO THE ORDER OF _Well Own Contracting_ $ 53,690.72

_fifty three thousand six hundred & ninty dollars_ DOLLARS

CHASE
JPMorgan Chase Bank, N.A.
www.Chase.com

FOR _____

"001030" "021000021" 738108096"

**Need help printing or saving this check?**

Back  **Enlarge/Reduce Check Image**



INDEX NO. 61510/2017
RECEIVED NYSCEF: 07/26/2018

**WORKING COPY**

# Gordon Aff. Exhibit 11

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

LAK3, LLC,

Plaintiff,

-against-

SEAN DUNN, GERALD DUNN, and WELL DUNN
MAINTENANCE & CONTRACTING,

Defendants.

Index No. 61510/2017

**DEFENDANTS' ANSWERS
TO PLAINTIFF'S FIRST
SET OF INTERROGATORIES**

Defendants answer and object to plaintiff's First Set of Interrogatories to Defendants, dated

October 25, 2017, as follows:

## GENERAL OBJECTIONS

1. Defendants objects to Plaintiff's interrogatories to the extent said interrogatory

responses can be are derived or ascertained from public records, as the burden of deriving or

ascertaining the response is substantially the same for Plaintiffs and Plaintiffs have a reasonable

opportunity to examine and inspect such public records and make copies of the same.

2. Defendants object to each and every interrogatory to the extent that said interrogatory

calls for consultation with and disclosure of documents from persons or entities other than

Defendants.

3. Defendants object to each and every interrogatory to the extent that said interrogatory

seeks disclosure of information and documentation that is not material to the allegations of Plaintiff's

complaint and any and all other pleadings had herein.

4. Defendants object to each and every interrogatory to the extent that said interrogatory

seeks information and documentation [illegible] to Plaintiff and in its possession custody and

control.

5.     Defendants object to the interrogatories as unreasonably cumulative and duplicative and to the extent that said interrogatories seek information that is obtainable from other sources more convenient and less burdensome than requiring Defendants to provide a response herein.

6.     Defendants object to the interrogatories to the extent that they seek any information or documentation that is the subject of attorney-client privilege.

7.     Defendants object to the interrogatories to the extent that they seek any information or documentation comprising attorney work product.

8.     These General Objections will be deemed to be continuing throughout the responses that follow whether or not referred to therein.  The stating of additional or other specific objections below shall not constitute a waiver of these General Objections.

9.     Defendants reserve the right to alter, amend, or supplement these responses as may be appropriate or necessary.

## SPECIFIC OBJECTIONS AND ANSWERS

Without waiving any of the foregoing objections, Plaintiff answers as follows:

1.     Identify the person(s) who provided information use in the preparation of the Defendants' answers to these interrogatories, indicating for which interrogatories each such person supplied information. .

Answer to Interrogatory No. 1:     Sean Dunn.

2.     Identify all natural persons who have knowledge of the facts alleged in the verified answer with counterclaims filed in this action.

Answer to Interrogatory No. 2:     Ned Kleinschmidt, Lesley Kleinschmidt, Michael Piccirillo, and Vladimir Levin.  Town of Carmel Building Department staff including, but not limited to Michael G. Carnazza.  Phil Spagnoli.  Mark A. Day, P.E.

2

3. Identify all representatives of WD that had any communications with plaintiff or Ned Kleinschmidt or Lesley Kleinschmidt regarding the construction of the single-family residential dwelling at 41 Averell Drive, Mahopac, New York 10541 (the "Project").

Answer to Interrogatory No. 3:    Sean Dunn.

4. Identify all witnesses from whom you intend to or will adduce testimony in this action.

Answer to Interrogatory No. 4:    Sean Dunn, Gerald Dunn, Phil Spagnoli, Rado Goga, Mark A. Day, P.E., Slim Zouaoui, and Mary Zouaoui.

5. Identify all natural persons and businesses who or that furnished work, labor, services, and/or materials to or for the benefit of the Project.

Answer to Interrogatory No. 5:    Well Dunn Maintenance & Construction, Sean Dunn, Gerald Dunn, Michael Piccirillo, Vladimir Levin, Phil Spagnoli, M&S Iron Works, Gady Contracting, First Class Plumbing & Heating, Vival Construction Co. Inc., Weed & Duryea, Architectural Building Components, Brothers Construction Services 1 Corp., Rado Goga, C.A. Cosentino, Hauptman Enterprises, Ed Kuck Enterprises, Ed Kuck, Mass Construction NY Corp., MPCA, L.L.C., and Weigold Electric.

6. Identify all natural persons and businesses who or that submitted request for payment to any of Defendants for work, labor, services, and/or materials furnished to or for the benefit of the Project.

Answer to Interrogatory No. 6:    M&S Iron Works, Gady Contracting, First Class Plumbing & Heating, Vival Construction Co. Inc., Weed & Duryea, Architectural Building Components, Brothers Construction Services, 1 Corp., C.A. Cosentino, Hauptman Enterprises, Ed Kuck Enterprises, Mass Construction NY Corp., MPCA, L.L.C., and Weigold Electric.

7. State the amount of payments that each natural person or business identified in answer to interrogatory No. 6 requested payment.

Answer to Interrogatory No. 7: M&S Iron Works, Gady Contracting ($10,900), First Class Plumbing & Heating ($12,500), Vival Construction Co. Inc. ($5,000), Weed & Duryea ($ 26,192.75), Architectural Building Components ($119,115.75), Brothers Construction Services 1 Corp. ($ 4,000), C.A. Cosentino ($45,000), Hauptman Enterprises ($28,500), Ed Kuck Enterprises ($69,585), Mass Construction NY Corp. ($55,000), MPCA, L.L.C. ($46,000), and Weigold Electric ($8,000).

8. Identify all natural persons and businesses to whom or that any of Defendants made payments for work, labor, services, and/or materials that such natural persons or businesses furnished to or for the benefit of the Project.

Answer to Interrogatory No. 8: M&S Iron Works, Gady Contracting, First Class Plumbing & Heating, Vival Construction Co. Inc., Weed & Duryea, Architectural Building Components, Brothers Construction Services 1 Corp., C.A. Cosentino, Hauptman Enterprises, Ed Kuck Enterprises, Mass Construction NY Corp., MPCA, L.L.C., and Weigold Electric.

9. State the amounts of the payments identified in answer to Interrogatory No. 8.

Answer to Interrogatory No. 9: Please refer to Answers to Interrogatory No. 7, above.

10. Identify and describe by category and location all documents that Defendants intend to rely upon to support its claims and defenses in this case.

Answer to Interrogatory No. 10: Communications reflected in emails and attachments including, but not limited to invoices, statements, plans, and specifications relating to the Project are located and stored in Sean Dunn's AOL account identified as "WellDunnOne."

4

Communications including, but not limited to text messages, SMS data, and mobile phone correspondence relating to the Projcet stored on Sean Dunn's Apple iPhone 6 plus. Plans, drawings, and specifications generated by Michael Piccirillo Architecture, PLLC, which has an office located at 345 Kear St, Yorktown Heights, New York 10598. Invoices, statements, billing records, and delivery receipts maintained by Well Dunn Maintenance & Contracting located its office in 8 Veschi Lane, Mahopac, New York 10541. Accounting and payroll records contained in Quickbooks files and data stored on a desktop computer maintained by Well Dunn Maintenance & Contracting located its office in 8 Veschi Lane, Mahopac, New York 10541.

11. State all steps that Defendants took to locate documents responsive to Plaintiff's First Request for Production of Documents.

<u>Answer to Interrogatory No. 11</u>: Defendants searched all Well Dunn Maintenance & Contracting offices, files, file storage systems (physical and electronic), and electronic devices including, but not limited to computers and mobile phones. Defendants also searched internet-based email platforms used and maintained by Well Dunn Maintenance & Contracting and Sean Dunn including, but not limited to AOL.

12. State the last day any of Defendants, or any of their representatives, were inside the house being constructed at 41 Averell Drive, Mahopac, New York 10541.

<u>Answer to Interrogatory No. 12</u>: Approximately early to mid-March, 2017.

13. State whether any of Defendants removed any building materials, tools, and/or equipment from the side of the Project after June 1, 2017 and, if so, list the items removed and the date such items were removed.

<u>Answer to Interrogatory No. 13</u>:     Septic system controls were removed from the Project site, but Well Dunn Maintenance & Contracting restored said property to the Project site shortly after Plaintiff's request for the same.

14.    State whether any natural person or business who or that furnished work, labor, services, and/or materials to or for the benefit of the Project removed any building materials, tools, and/or equipment from the side of the Project after June 1, 2017 and, if so, (a) list the items removed the date such items were removed, and (b) state whether any of Defendants directed or instructed such natural person(s) or business(es) to remove such materials, tools, and/or equipment.

<u>Answer to Interrogatory No. 14</u>:     None.

15.    Describe in detail all efforts undertaken by you to preserve, collect, search, and produce all electronically stored information response to defendant's request for the production of documents in this action (the "Requests"). Specifically provide: (a) the name of each and every person who is or was a custodian of electronically stored information responsive to the requests; (b) name of each and every person who is a was responsible for the preservation of electronically stored information; (c) a detailed description of all email and text messaging software presently and previously used by each such custodian and the dates of use, including but not limited to the name of the software, or pieces of hardware which such software was used (for example, cell phones, laptops, desktops), in the version number in use during the relevant time period of this litigation; (d) a detailed description of all efforts undertaken by you to ensure the preservation of relevant electronically stored information, including the issuance of any litigation hold notice; (e) a detailed description of any parameters or limitations applied to the collection of electronically stored information for review and production this litigation, including without limitation the application of search terms, the limitation of searches to certain mailbox file folders, and imposition of time limitations on electronic collection.

<u>Answer to Interrogatory No. 15</u>:     (a) and (b):  Sean Dunn and Gerald Dunn; (c) Short Message Service (SMS), Multimedia Messaging Service (MMS), and Apple iOS; (d) defendants have retained in their custody all electronic devices containing such electronically stored information referred to herein; and (e) Defendants are unaware of such parameters or limitations that would apply to this litigation.

16.     Identify all purported experts whose testimony Defendants seek to present to the trier of fact in this matter and for each, provide: (a) all education, experience, credentials, and any other background of my qualify such individual to proffer opinion testimony; (b) eight list of all cases in which such individual has testified under oath, whether by written submission, deposition, trial testimony, or otherwise; (c) detailed description of the opinion they will present their testimony; and (d) the basis for said opinion, including a list of all documents, methods, articles and other materials in which they relied.

<u>Answer to Interrogatory No. 16</u>:     (a) Mark A. Day, P.E. of M.A. Day Engineering, P.C., 3 Van Wyck Lane, Suite 2, Wappingers Falls, New York 12590; and (b)-(d) Defendants have preliminarily consulted with Mark A. Day, P.E. and will supplement and amend this Answer and its accompanying document production upon receipt of responsive information and documents.

17.     Identify any non-testifying or consulting expert retained by any of Defendants in this action.

<u>Answer to Interrogatory No. 17</u>:     Defendants have not yet consulted with or retained a non-testifying expert in this action, but specifically reserve the right to do so and supplement this Answer accordingly.

18.     Identify the damages sought by the Counterclaim this action.

<u>Answer to Interrogatory No. 18</u>:    Defendants object to this interrogatory as irrelevant and moot because Defendants withdrew the Counterclaim with prejudice.

Defendants specifically reserve the right to supplement, amend, and/or modify all of the foregoing answers.

Dated: Carmel, New York
      February 9, 2018

**WILLIAM A. SHILLING, JR., P.C.**

By:_____
        Michael V. Caruso
122 Old Route 6
Carmel, New York 10512
(845) 225-7500

*Attorneys for Defendants*

To:   Michael R. Gordon, Esq.
     GordonLaw LLP
     51 Bedford Road, Suite 10
     Katonah, New York 10536

*Attorneys for plaintiff*

8

<u>VERIFICATION</u>

STATE OF NEW YORK )
                  ) ss.:
COUNTY OF PUTNAM )

      SEAN DUNN, being duly sworn deposes and says:

      I am a defendant in this action. I have read the annexed answers to plaintiff's first set of interrogatories propounded to Defendants, know the contents thereof, and the same are true to my knowledge, except those matters that are stated to be alleged upon information and belief, and as to those matters, I believe them to be true upon my own investigation and knowledge

                                   SEAN DUNN

Sworn to before me on this
9th day of February, 2018

Notary Public
Michael V. Curuso
Reg. No. 02CA6365120
Qualified in Putnam Co.
Commission Expires 9/25/21

9

**WORKING COPY**

# Gordon Aff. Exhibit 12



## "For a job well dunn..."

PO Box 1161
Yorktown Heights, NY 10598
ph: (631) 903-0329
welldunnone@aol.com

- Home
- Photo Gallery
- Testimonials
- Contact Us
- FAQ



*Q- Is Well Dunn licensed in my area?*
A- We are licensed contractors in all of Westchester County, Yonkers, Putnam, and all of Connecticut.

*Q- Do you give free estimates?*
A- Yes we do.
Whether you have a big project or small job, we always give free estimates.

*Q- I want to renovate my kitchen and bath, but I have no idea what I want or where to start! Can you help?*
A- We have no problem guiding you through the entire process, offering advice, and giving you ideas.
However, we have several clients that need more than a helping hand. If this is you, we strongly recommend you use a designer. We are affiliated with an excellent designer whom for a small fee will do all the work for you.
Regardless of your involvement or input, we are there with you every step of the way.

*Q- Where are you located?*
A- We are based out of Yorktown Heights, in Westchester County New York.

*Q- Do you have references?*
A- We have plenty of clients and customers that would love the opportunity to share their experiences with you.
Hopefully you and your family will become one of our references!

*Q- Why should I use Well Dunn?*
*What separates you from the rest?*
A- We are a family owned and operated business.
Now I know what your thinking....so are several other companies.
What makes us unique is every one of our customers deals with either Jerry Dunn or Sean Dunn. No salesman,
no third party representatives, just us.
It's the only way to give you and your family a job *Well Dunn!!*

Copyright 2011 Well Dunn. All rights reserved.

Web Hosting by Yahoo!

PO Box 1161
Yorktown Heights, NY 10598
ph: (631) 903-0329
welldunnone@aol.com

close

- 
- 
-

**WORKING COPY**

**Gordon Aff. Exhibit 13**

**McGlinchey, John**        26148291

| | |
|---|---|
| **From:** | McGlinchey, John |
| **Sent:** | Thursday, April 23, 2015 9:51 AM |
| **To:** | ██████████████ |
| **Subject:** | RE: Westchester County Consumer Protection |

██████████

Sean Dunn did not show for his scheduled hearing on 4/22/2015. As a result, a $10,000 penalty has been assessed and his Home Improvement license will be revoked. As we are not a court, this agency does not have the authority to make findings of fact or order a vendor to resolve a complaint. Instead, our role is limited to mediation. Although we are successful in settling many cases through mediation, not all disputes can be resolved in this manner. Please let me know if I can be of further assistance.

Respectfully,

John D. McGlinchey
Inspector
Westchester County Consumer Protection
148 Martine Avenue, Room 407
White Plains, NY 10601
914-995-2163 (office)
914-995-5259 (fax)
jmmd@westchestergov.com

**From:** ██████████████████
**Sent:** Tuesday, April 21, 2015 9:55 AM
**To:** McGlinchey, John
**Subject:** Re: Westchester County Consumer Protection

Hi John -

Just writing to check in and see if there is anything else you need from me in advance of Sean Dunn's scheduled hearing, or whether you have most of what you need for now. Thanks very much - I am of course very interested to hear how it goes!

████████

On Tue, Mar 31, 2015 at 3:21 PM, ████████████████████████████ wrote:
Hi John -

Thank you. What does that mean for us?

1

PLAINTIFF'S
EXHIBIT
5 2
4/26/18  NS

# APPEARANCE TICKET

**B** 018409

DEPARTMENT OF WEIGHTS- MEASURES
CONSUMER PROTECTION
148 MARTINE AVENUE - ROOM 407
WHITE PLAINS, NEW YORK 10601

COUNTY OF WESTCHESTER

TO: **WELL DUNN MAINTENANCE & CONTRACTING**
**PO BOX 1161**
**YORKTOWN HEIGHTS, NY 10598**
**C/O SEAM M. DUNN**

**NOTICE: Upon your failure to appear as directed herein a finding may be entered against you on the stated charge on default and further appropriate legal action may be commenced against you.**

YOU ARE HEREBY NOTIFIED TO APPEAR PERSONALLY IN THE OFFICE OF THE DIRECTOR OF WEIGHTS-MEASURES,
CONSUMER PROTECTION, 148 MARTINE AVENUE - ROOM 407, WHITE PLAINS, NEW YORK 10601
ON **AUGUST 22nd, 2013** at **01:00PM**
TO ANSWER A CHARGE OF **OPERATING A HOME IMPROVEMENT BUSINESS WITHOUT A LICENSE**

COMMITTED IN THE **VILLAGE** OF **LARCHMONT** COUNTY OF WESTCHESTER,
STATE OF NEW YORK, ON THE **22nd** DAY OF **MAY, 2013** at **12:00PM**
IN VIOLATION OF ARTICLE **XVI** SECTION **863.313** SUBDIVISION
OF THE LAWS OF WESTCHESTER COUNTY.
ISSUED THIS **5th** DAY OF **AUGUST, 2013** AT WHITE PLAINS, NEW YORK.

_____
Officer's Signature

PLAINTIFF'S
EXHIBIT
5 3
4/26/18  NS



Robert P. Astorino
County Executive

**Department of Consumer Protection**

John P. Gaccione
Acting Director
and County Sealer

May 11, 2015

Dear Municipal Building Official:

Please be advised that the following contractors have had their application for a Westchester
County Home Improvement License denied, revoked or suspended:

A.N.C. Contracting Co. Inc., St. Albans, NY- Marcus Lester, Applicant
C&M Paving, West Nyack, NY- Mark (Markeen) Cousar, Applicant
Croton Point Construction LLC, Croton on Hudson, NY- Edward Walther, Applicant
Dream Team Construction LLC, Passaic, NJ- Kenneth Chalmers, Applicant
Essence of Life, Yonkers, NY- Glenn Smith, Applicant
JAG Contracting Services Corp., Bronx, NY- Michael Palumbo, Applicant
JDR Windows and Doors Inc., Bronx, NY-Brunilda Memaj, Applicant
Jim's Lawn Service, North Salem, NY- James Buccelato, Applicant
Landmark Construction of Yonkers, Inc., Yonkers, NY- John Saraiva, Applicant
Leidlynch LLC, Scarsdale, NY- James Lynch, Applicant
Lowden, Charles, Mahopac, NY- Charles Lowden, Applicant
Molina Landscaping, Port Chester, NY- Jose Bonilla, Applicant
MSR Construction Corp., Dumont, NJ- Mohammad Sarwar, Applicant
N & O Lawn Care, Dobbs Ferry, NY- Noe Orellana, Applicant
Rolling Hills Once Landscaping LLC, Port Chester, NY- Genaro Partida, Applicant
Well Dunn Maintenance & Contracting, Yorktown, NY- Sean Dunn, Applicant

As a result of these actions, these contractors are no longer allowed to operate a home
improvement business in Westchester County.

The following contractor(s) have had their Westchester County Home Improvement License issued
or reinstated:

Sheetmetal Services LLC, Norwalk, CT- Jonathan Teed, Applicant

(OVER)





118 Martine Avenue, Room 107
White Plains, New York 10601 Telephone: (914) 995-2155   Fax: (914) 995-3115   Website: www.westchestergov.com /consumer

In addition, you may check on-line to see if a particular contractor holds a current Westchester County Home Improvement License. This information can be obtained by going to the Westchester County web site at **www.westchestergov.com/consumer.**

Should you have any questions in this matter, I can be reached Monday through Friday, 9:00 a.m. to 4:00 p.m., at (914) 995-2215.

Very truly yours,

Thomas G, Kramer
Deputy County Sealer

TGK/gg



Robert P. Astorino
County Executive

Department of Consumer Protection

John P. Gaccione
Acting Director
and County Sealer

May 6, 2015

Sean Dunn
Well Dunn Maintenance & Contracting
PO Box.1161
Yorktown, NY 10598

Dear Mr. Dunn;

This is in reference to your license (License # WC-26450-H13) to engage in the home improvement business in Westchester County, New York, pursuant to Article XVI of the Westchester County Consumer Protection Code, a copy of which is enclosed.

Based upon your failure to appear to answer charges of violations of the Westchester County Consumer Protection Code and your failure to pay the outstanding $10,000.00 in penalties assessed on March 27, 2015, the Sealer has determined it is not in the best interests of the citizens of Westchester County to allow Well Dunn Maintenance & Contracting to operate as a home improvement contractor in Westchester. Therefore, based on Article XVI, Sections 863.317 and Section 863.316(1b & a), your license has been revoked.

     Section 863.316 (1a); "is not financially responsible;"
     Section 863.316 (1b); "is unqualified to engage in the home improvement business;"

In addition, as per Article XVI, you are here-by ordered to supply to the Sealer, in writing, a list of home improvement contracts in existence and/or jobs currently being performed as of this date. Attached is a form to be completed and returned to the Sealer within 5 business days.

Respectfully,

John P. Gaccione
Acting Director and
County Sealer

JPG/tgk
Enclosures

Cc:



148 Martine Avenue, Room 407
White Plains, New York 10601-3311   Telephone: (914) 995-2155   Fax: (914) 995-3115   Website: westchestergov.com

**CURRENT CONTRACTS/ JOBS**

Contractor:     Sean Dunn
                Well Dunn Maintenance & Contracting
                PO Box 1161
                Yorktown, NY 10598

| Consumer | Address | Contract date | Contract amount | Balance owed |
|----------|---------|---------------|-----------------|--------------|
|          |         |               |                 |              |
|          |         |               |                 |              |
|          |         |               |                 |              |
|          |         |               |                 |              |
|          |         |               |                 |              |
|          |         |               |                 |              |
|          |         |               |                 |              |
|          |         |               |                 |              |
|          |         |               |                 |              |
|          |         |               |                 |              |
|          |         |               |                 |              |

Signed_____     Date_____
        Sean Dunn, Applicant

**Westchester County**
**Department of Consumer Protection/Weights and Measures**

-----------------------------------------------------------------

In the Matter of a Proceeding to Revoke the Home Improvement
Contractor License of Sean Dunn d/b/a Well Dunn Maintenance &
Contracting

-----------------------------------------------------------------

# NOTICE OF COMMENCEMENT OF
# REVOCATION PROCEEDING
# AND
# CHARGES

To:     Sean Dunn
        d/b/a Well Dunn Maintenance & Contracting
        PO Box 1161
        Yorktown, NY 10598

PLEASE TAKE NOTICE that pursuant to Westchester County Administrative Code
§ 863.317 a proceeding is hereby commenced against you to revoke your
Westchester County Home Improvement License upon the following Charge:

## Charge One

That on March 27, 2015 you were ordered to appear on April 22, 2015 to answer
charges against your company. You failed to appear as ordered and the
previously assessed penalties in the amount of $10,000.00 upheld. Additionally,
failed to carry Workers' Compensation Insurance for the company. Based upon
the violations, your failure to appear and your failure to maintain insurance, the
Sealer has determined you are "unqualified to engage in a home improvement
business."

PLEASE TAKE FURTHER NOTICE that pursuant to Westchester County
Administrative Code § 863.317 you are required to answer the above Charge in
writing within ten (10) days.

PLEASE TAKE FURTHER NOTICE that pursuant to Westchester County
Administrative Code § 863.317 a hearing will be held on the above Charge at
9:15 A.M. on May 6, 2015 before John P. Gaccione, Deputy Director/ Sealer of
Weights & Measures, or his designee at the Offices of the Department of
Consumer Protection/Weights and Measures, Room 407, 148 Martine Avenue,
White Plains, New York 10601.

PLEASE TAKE FURTHER NOTICE that pursuant to Westchester County Administrative Code § 863.317 that at said hearing you may be represented by counsel and may offer evidence on your own behalf.

WITNESS, THOMAS G. KRAMER, Deputy County Sealer, at White Plains, New York on the 22nd day of April, 2015.

THOMAS G. KRAMER
DEPUTY COUNTY SEALER
(914) 995-2215





Robert P. Astorino, Westchester County Executive

## DEPARTMENT OF CONSUMER PROTECTION
148 Martine Avenue, Room 407
White Plains, N.Y. 10601
Tel. # (914) 995-2211
www.westchestergov.com/consumer

## APPLICATION FOR A HOME IMPROVEMENT LICENSE

**ALL INFORMATION MUST BE ACCURATE AND COMPLETE**
Please Type or Print All Requested Information
**Please use Black or Blue Ink**

Please read the enclosed instruction sheet before completing this application

) Type of Ownership:    (X) Individual    ( ) Partnership    ( ) LLC    ( ) Corporation

:) Name of Company:    _Well Dunn Maintenance & Contracting_

i) D/B/A, Trade, or Display Name: (If same as #2, enter N/A) - _N/A_

l) Business Address: _P.O Box 1161_    Phone #: (631) _903-0329_

City: _Yorktown_    State: _NY_    Zip Code: _10598_    Fax #: (    )

5) Name of Applicant: (President or Owner) - _Sean Dunn_

Date of Birth: ▓▓▓▓▓    Driver License Number: ▓▓▓▓▓    Title: _Owner_

Home Street Address: ▓▓▓▓▓    Home Phone #: ▓▓▓▓▓

City: ▓▓▓▓    State: ▓▓    Zip Code: ▓▓▓    Cell Phone #: ▓▓▓▓▓

Email Address: _WellDunnOne @ AOL. Com_

6) List **EACH ADDITIONAL** responsible individual involved with the company. Include Owners, Officers, Partners, Managers, and Salespersons: (**Any** individual authorized to estimate, negotiate, and/or finalize contracts).

| Name | Full Home Address | Title | Phone # | Date of Birth |
|------|-------------------|-------|---------|---------------|
|      |                   |       |         |               |
|      |                   |       |         |               |

(7) This company engages in the following work: (Check **ALL** that apply)

Carpentry (X)    Chimney Work ( )    Kitchen/Bath (X)    HVAC ( )    Landscaping ( )    Masonry ( )    Painting (X)

Tree Removal ( )    Paving ( )    Pools ( )    Roofing ( )    Siding ( )    Tile (X)    Windows ( )    ~~General Contractor~~ (X)

Alternative Energy ( )    Other ( ) Please Specify: _____

RECEIVED
WESTCHESTER COUNTY

DEC 11 2013

DEPARTMENT OF
CONSUMER PROTECTION

### FOR OFFICE USE ONLY

Date Received: _____    Amount Paid: $ _300.00_    Check #: _5529_    License Number _26450_

8) Is this company licensed in any other jurisdiction? .............................................. (X) Yes ( ) No
   If Yes, list jurisdiction(s) AND license number(s):

*Yonkers #5116, Putnam County PC6282*

9) Does the company or any affiliate arrange or facilitate the financing of home improvement contracts? ... ( ) Yes (X) No

0) Has the applicant or any principal in the company **ever** been convicted of a crime? ........................... ( ) Yes (X) No
   If Yes, list the individual(s), crime(s), jurisdiction(s), year(s) and disposition(s):

1) Has this company, any other current or previously owned company or any principals had a
   Trade License Denied, Revoked or Suspended? ................................................................. ( ) Yes (X) No
   If Yes, list the company name(s), individual(s), type of license(s), jurisdiction(s), and reason(s):

2) Is/Are there any outstanding unsatisfied business related Judgment(s) against the business
   listed on this application or its principals? .................................................................. ( ) Yes (X) No
   If Yes, list the business name, individual(s) and date and location of the filing(s):

3) Is/Are there any outstanding unsatisfied business related Judgment(s) against any other
   current or previously business(es) or corporation(s)? ....................................................... ( ) Yes (X) No
   If Yes, list the business/corporation name(s) and date and location of the filing(s):

4) Has there ever been a bankruptcy filing by this company, any other **current or previously**
   owned company or its principals? ............................................................................. ( ) Yes (X) No
   If Yes, list the company name(s), individual(s) and provide the date, index number and location of the filing(s):

5) Please supply copies of the Vehicle Registration(s). Must **indicate** the number of decals needed.... # ( *1* )

6) Does your business involve landscaping, gardening, tree care or other similar work? ....................... ( ) Yes (X) No
   If Yes: I hereby affirm that I am aware of the requirements of §863.327 (1) of the Westchester County
   Consumer Protection Code (Leaf Blower Law), and am in compliance with its provisions.

7) Does this company engage in the application of pesticides? ..................................................... ( ) Yes (X) No

   If Yes, list the NYS D.E.C. certification number(s) _____ **AND** provide a copy of certification.

**Affidavit/Verification by the underlined applicant for the company. This application must be signed in the presence of a Notary Public.**

I hereby acknowledge that false statements made in this document are punishable as a Class A Misdemeanor pursuant to §210.45 of the NYS Penal Law.

**Under the penalty of perjury, I hereby swear that all of the information on this form and any attachment(s) is/are true and accurate.**

18) _____     *Sean M Dunn*      *Owner*
    Authorized Signature      Print Name      Print Company Title

19) Subscribed and Sworn to before me, this *11* Day of *July* , 20*13* in the

County of *Westchester*

CHERILYN ARENA
Notary Public - State of New York
NO. 01AR6239109
Qualified in Putnam County
My Commission Expires 8/18/2015

_____
Signature of Notary Public

5/21/13



Gilda Strudwick,

I am writing this letter acknowledging the fact that I have an outstanding bill with New York State for old employee taxes. I am working to come up with the money as quickly as possible. Please understand that work is very slow, and the weather has made it even more difficult to accomplish work. I anticipate being able to pay the bill for roughly $1,600.00 within the next 6 weeks. Thank you for your patience and understanding.

Sincerely,

Sean Dunn

Owner/Operator



Well Dunn Maintenance & Contracting
(631)903-0329
WellDunnOne@aol.com
WellDunnContracting.com
PO Box 1161
Yorktown Heights, NY 10598



Robert P. Astorino
County Executive

Department of Consumer Protection

John P. Gaccione
Acting Director
and County Sealer

December 30, 2013

Sean Dunn
Well Dunn Maintenance & Contracting
PO Box 1161
Yorktown, NY 10598

Dear Contractor:

Enclosed is a copy of a letter that was previously mailed to you. To date, we have not had a response from you concerning this matter. **Please forward the requested documents to my attention within 10 days.** Failure to do so may result in the revocation or denial of your Westchester County Home Improvement License. Please attach a copy of this letter to the document (s).

Should you have any questions concerning this matter, I can be reached Monday through Friday, 9:00 a.m. to 3:00 p.m., at (914) 995-2176.

Very truly yours,

*Gilda Strudwick*

Senior Inspector
Encl.





Robert P. Astorino
County Executive

Department of Consumer Protection

John P. Gaccione
Acting Director
and County Sealer

December 17, 2013

Sean Dunn
Well Dunn Maintenance & Contracting
PO Box 1161
Yorktown, NY 10598

Dear Contractor:

A background investigation being conducted before the issuance of your home improvement
license reveals the following judgment(s) as unsatisfied:

See Attached

Please respond in writing as to the **current** status of the above judgment(s). If any of the judgment(s) are
satisfied, please provide proof of satisfaction. Please attach a copy of this letter to the document (s).

Respectfully,

*Gilda Strudwick*

Senior Inspector
(1)



## Judgment Details

| | |
|---|---|
| Index Number | 839-12 View Filings |
| | |
| Defendant | DUNN SEAN M DBA |
| Defendant Address | 1646 CENTRAL ST<br>YORKTOWN H NY 10598 |
| Defendant | WELL DUNN MAINTENANCE & CONTRACTING |
| Defendant Address | 1646 CENTRAL ST<br>YORKTOWN H NY 10598 |
| Plaintiff | NEW YORK STATE DEPARTMENT OF LABOR |
| Plaintiff Address | STATE OFFICE BLDG<br>ALBANY NY 12240 |
| | |
| Judgment Amount | $1662.91 |
| | PRO SE |
| Attorneys | XXX<br>XXX NY 0 |
| | |
| Docketed | 2012/12/04 04:56 PM |
| When perfected | 2012/12/04 04:56 PM |
| Where perfected | WESTCHESTER SUPREME |
| Transcript filed in | |
| | |
| Date/time filed | 2012/12/04 04:56 PM |

Department of Consumer Protection Complaint Form                   Page 1 of 3

| Westchester | **Appearance Ticket** |
|---|---|
| gov.com | Department of Consumer Protection |

**Change necessary information and click the "Submit" button at the bottom of this form.**

| File #: | 18409 |
|---|---|
| Violation Type: | B - WESTCHESTER COUNTY |
| Issuance Date: | 8/5/2013 |
| Issuance City: | LARCHMONT · Munic: V |
| Inspector Name: | JOHN MCGLINCHEY |

**Issued To:**

| Name: | WELL DUNN MAINTENANCE & CONTRACTING |
|---|---|
| Add'l Name: | |
| Street Address: | PO BOX 1161 |
| Add'l Address: | C/O SEAM M. DUNN |
| City: | YORKTOWN HEIGHTS |
| State: | NY    Zip Code: 10598 |

**Violation:**

| Violation Date: | 5/22/2013    Violation Time: 12:00PM |
|---|---|
| Violation: | OPERATING A HOME IMPROV. BUSINESS WITHOUT A LICENSE |
| Full Violation: | OPERATING A HOME IMPROVEMENT BUSINESS WITHOUT A LICENSE |
| | Update Full Violation, Article and Section using the Violation field?: No |
| Article: | XVI |
| Section: | 863.313 |
| Sub-Division: | |
| Comments: | |

**Appearance:**

| Appearance Num: | 1 |
|---|---|
| Appearance Date: | 8/22/2013    Appearance Time: 01:00PM |

**Company:**

| Company Rep #1: | ABSENTIA |
|---|---|
| Title: | |

http://cww/ConsumerTicket/TicketModifySubmit.asp?ID=18409                   12/16/2013

Department of Consumer Protection Complaint Form

| Company Rep #2: | |
|---|---|
| Title: | |
| Company Rep #3: | |
| Title: | |
| Company Rep #4: | |
| Title: | |
| Company Rep #5: | |
| Title: | |
| Company Rep #6: | |
| Title: | |
| Company Rep #7: | |
| Title: | |
| Company Rep #8: | |
| Title: | |
| Company Rep #9: | |
| Title: | |
| Company Rep #10: | |
| Title: | |

**Department:**

| Dept. Rep #1: | JOHN MCGLINCHEY-INSPECTOR |
|---|---|
| Dept. Rep #2: | |
| Dept. Rep #3: | |
| Dept. Rep #4: | |
| Dept. Rep #5: | |

**Hearing:**

| Hearing Open Date: | 8/22/2013 | Open Time: | 01:30PM | Closed Time: | 01:35PM |
|---|---|---|---|---|---|
| Hearing Officer Name: | THOMAS KRAMER | | | | |
| Title: | DEPUTY COUNTY SEALER | | | | |
| Hearing Location: | IN PERSON | | | | |
| Hearing Disposition: | $1000 | | | | |

http://cww/ConsumerTicket/TicketModifySubmit.asp?ID=18409

12/16/2013

Department of Consumer Protection Complaint Form
Page 3 of 3

**Penalty:**

| Penalty: | 1000.00 | Balance Owed: | 0 |
| --- | --- | --- | --- |

[ Submit Changes ]    [ Reset ]

Add an Appearance for this Violation

View/Modify Existing Appearance(s) for this Violation

Make a Payment on this Violation

View/Modify Existing Payment(s) on this Violation

Print a **Ticket**

Print a **Conference Report**

Print a **Subpoena**

Return to Home



Robert P. Astorino
County Executive

Department of Consumer Protection

John P. Gaccione
Acting Director
and County Sealer

July 19, 2013(July 12, 2013)
(July 2, 2013)(June 28, 2013)

Sean Dunn
Well Dunn Maintenance & Contracting
Po Box 1161
Yorktown Heights, NY  10598

| NOTE: |
|---|
| **You MUST print out and bring THIS LETTER, your Driver's license and a pencil to the exam. Applicants arriving after their scheduled exam** |

**PRINT YOUR APPLICATION PACKET AT:**
http://consumer.westchestergov.com/images/stories/pdfs/HI_app_052113.pdf

Dear Applicant;

| Applicant Name | Drivers License # | Exam Date | Time | Location |
|---|---|---|---|---|
| Sean Dunn | | 08/02/2013 | 9:30am | 148 Martine Ave  Rm 400A |
| | | | | White Plains, NY 10601 |

You must check in 15 minutes prior to the exam time. If you cannot keep this test date, you must contact this office at least 24 hours in advance of your test date at 914-995-2211 in order to reschedule.
*Your failure to do so may cause a delay in rescheduling!*
Please keep in mind that due to the high demand for this exam, rescheduling and/or failing to show on the above date may result in your **next exam date to be in excess of 30 days.**

**NOTE:    YOU MUST ATTEND THIS EXAM ALONE.   There will be no exceptions.**

**ANY company that engages in *Landscaping/Gardening and/or Lawn/Tree Services MUST* take and complete the *"Approved Turf Management Course".* The course will be given on the day of the exam.**

NOTE: Once you pass the exam, the results are valid for "180 days" from the date of the exam.
You may submit a completed license application at any time within that period.

**Please be advised that advertising, soliciting work for, or performing home improvement services in Westchester County *prior to* this office accepting your completed application for a Home Improvement license is a class A misdemeanor. You may be subject to financial penalties, arrest, and or seizure of your vehicle(s) and tools.**

Westchester County Department Of
Consumer Protection

Respectfully,

*Nick DePaoli*

Inspector/ Exam Coordinator
914-995-2155
Exam Grade 20\25
Exam Supervisor

CERTIFIED COPY

By_____  Date 8-2-13.

Pass ( ✓ )    Fail ( )    Exam# 1

148 Martine Avenue, Room 407
White Plains, New York 10601-3311   Telephone: (914) 995-2155   Fax: (914) 995-3115   Website: www.westchestergov.com/consumer

**Sean M. Dunn**
**Yorktown Heights, N.Y 10598**
**631-903-0329**
**WellDunnOne@aol.com**

---

## EMPLOYMENT HISTORY

**Owner, Operator**                                                                                            2008-current
*Well Dunn Maintenance & Contracting,* Long Island & Westchester, NY

- Owner operator of my own company- licensed and insured for all residential and commercial maintenance and construction
- General Contracting experience in all phases of commercial and residential construction; completed the erecting of two luxurious residential homes in the last 8 months from the ground up
- Ran all job sites personally; overseeing all trades and inspections; negotiated all contracts with all tradesman; completed both homes ahead of schedule to the customers complete satisfaction

**District Maintenance Supervisor**                                                                            2005-2008
*Abercrombie & Fitch,* Long Island & Manhattan, NY

- Responsible for all maintenance and construction of 13 stores, 5 different brands, within my region- completed scheduled daily walkthroughs to identify any issues, safety hazards, violations, or general needs
- Responded to anywhere from 75-100 email work order requests per day, 7 days a week; responsible for filtering these emails and prioritizing work order requests- delegating them to sub contractors or my in house crew consisting of 6 employees
- Responsible for distributing my budget properly within my region, prioritizing money going to stores, negotiating contracts and bids, and completing work as I saw fit
- Was in charge of the flawless construction and grand opening of new brand " Gilly Hicks" launched in Long Island; then flown to 4 other major cities to ensure the same

**Resident Manager/ Superintendent**                                                                           2000-2005
*Fairfield Properties Inc ,*Long Island, NY

- Personally in charge of 3 luxury properties consisting of over 300 townhouse style units including the company's flagship location "The Gables"
- Responsible for general maintenance and upkeep of all properties, getting vacated units ready for rentals, completing maintenance and repairs on occupied units all while maintaining a level of service and quality beyond the tenants expectations
- Responsible for taking all maintenance requests from tenants, prioritizing them, and distributing the work orders to my employees, myself, and sub contractors for completion
- Winner of the companies "Superintendent of the Year" award for 2001,2002,2003, and 2004 which is based on overall condition and upkeep of properties, customer (tenant) satisfaction, and budget control.

**Job Foreman/ Site Supervisor**                                                                               1996-2000
*P.A.M Construction Inc,* Long Island NY

- Started out as laborer, worked my way up to Job Foreman in 2 years running my own crew of 6 to 10 men twice my age.

- Company purchased homes and renovated them for purpose of rental or sale. Personally oversaw renovation and upkeep of over 40 homes ranging from Section 8 rentals to multimillion dollar homes in the Hamptons.

- Personally responsible for maintenance on all rental homes in the Hamptons. All high priority tenants had my cell phone number for direct contact and immediate response 24/7

7/12/13



000425731

Westchester County Clerk
*Timothy C Idoni*

253101



# BUSINESS CERTIFICATE REGISTRATION

I HEREBY CERTIFY that I am conducting or transacting business in Westchester County, pursuant to Section 130 of the New York State General Business Law, under the name or designation and at the address of                                                   (Please Print or Type)

Business Name    Well Dunn Maintenance & Contracting

Business Address    P O Box 1161
Yorktown, NY 10598

**FILED**

My full name and place of residence is

Name    Scan M Dunn
Address    ███████████████

JAN 27 2010

TIMOTHY C. IDONI
COUNTY CLERK
COUNTY OF WESTCHESTER

I FURTHER CERTIFY that I am successor in interest to _____
                                                   (Name of former owner of business, if applicable)

I FURTHER CERTIFY that I am 3/ years of age (if under 18)

Please designate the type of business

- [x] Consultant Services
- [ ] Educational Services
- [ ] Entertainment-Recreation
- [ ] Finance-Insurance Services
- [x] Home Improvement Services

- [ ] Medical – Home Care Services
- [ ] Professional – Technical Services
- [ ] Real Estate Services
- [ ] Retail Trade
- [ ] Wholesale Trade

- [ ] Other _____

IN WITNESS WHEREOF I hereby sign this certificate the 29th day of January 20 10

X _____

ACKNOWLEDGEMENT IN NEW YORK STATE (RPL 369-a)

State of New York            }
County of Westchester        } ss

On January 29th, 2010 before me, the undersigned, personally appeared

_____

JOSEPH SAM MAZZA
Notary Public, State of New York
No 01MA6045640
Qualified in Westchester County
Commission Expires July 31, 2010

1-29-10 _____

12-11-13  *Timothy C Idoni*

CLERK OF THE _____ COUNTY COURTS, WESTCHESTER COUNTY

FILED

JAN 2 ? 2010

TIMOTHY C. IDONI
COUNTY CLERK
COUNTY OF WESTCHESTER

ACORD® **CERTIFICATE OF LIABILITY INSURANCE**

DATE (MM/DD/YYYY)
05/20/2013

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Joy Arzaga | | |
|---|---|---|---|
| Albert Palancia Agency, Inc. PO Box 26 Mamaroneck, NY 10543 | PHONE (A/C, No, Ext): (914)698-1373 | FAX (A/C, No): (914)698-0126 | |
| | E-MAIL ADDRESS: joy@palanciainsurance.com | | |
| | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| | INSURER A : ARCH SPECIALTY INSURANCE COMPANY | | |
| INSURED WELL DUNN MAINTENANCE & CONTRACTING SEAN DUNN 1646 CENTRAL ST YORKTOWN HEIGHTS, NY 10598-4704 | INSURER B : UTICA NATIONAL INSURANCE GROUP | | |
| | INSURER C : | | |
| | INSURER D : | | |
| | INSURER E : | | |
| | INSURER F : | | |

COVERAGES          CERTIFICATE NUMBER: 00006244-0          REVISION NUMBER: 12

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | GENERAL LIABILITY  [X] COMMERCIAL GENERAL LIABILITY  [ ] CLAIMS-MADE [X] OCCUR | | | AGL000759-00 | 05/14/2013 | 05/14/2014 | EACH OCCURRENCE | $ 1,000,000 |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 100,000 |
| | | | | | | | MED EXP (Any one person) | $ 10,000 |
| | | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: [X] POLICY [ ] PRO-JECT [ ] LOC | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | | | | | | | PRODUCTS - COMP/OP AGG | $ 2,000,000 |
| B | AUTOMOBILE LIABILITY  [ ] ANY AUTO  [ ] ALL OWNED AUTOS [X] SCHEDULED AUTOS  [X] HIRED AUTOS [X] NON-OWNED AUTOS | | | 4533035 | 05/14/2013 | 05/14/2014 | COMBINED SINGLE LIMIT (Ea accident) | $ 1,000,000 |
| | | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | [ ] UMBRELLA LIAB [ ] OCCUR  [ ] EXCESS LIAB [ ] CLAIMS-MADE | | | | | | EACH OCCURRENCE | $ |
| | [ ] DED [ ] RETENTION $ | | | | | | AGGREGATE | $ |
| | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY  ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) If yes, describe under DESCRIPTION OF OPERATIONS below | Y/N N/A | | | | | [ ] WC STATU- TORY LIMITS [ ] OTH- ER | |
| | | | | | | | E.L. EACH ACCIDENT | $ |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (Attach ACORD 101, Additional Remarks Schedule, if more space is required)
RENOVATION CONTRACTOR
EXCLUDING ROOFING

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| WESTCHESTER COUNTY DEPARTMENT OF CONSUMER PROTECTION 148 MARTINE AVENUE, ROOM 407 WHITE PLAINS, NY 10601 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| | AUTHORIZED REPRESENTATIVE *Joseph J. Pelin* (MJA) |

© 1988-2010 ACORD CORPORATION. All rights reserved.

ACORD 25 (2010/05)          The ACORD name and logo are registered marks of ACORD

Printed by MJA on May 20, 2013 at 11:58AM



# Certificate of Attestation of Exemption
## From New York State Workers' Compensation and/or Disability Benefits Insurance Coverage

**\*\*This form cannot be used to waive the workers' compensation rights or obligations of any party.\*\***

The applicant may use this Certificate of Attestation of Exemption **ONLY** to show a government entity that New York State specific workers' compensation and/or disability benefits insurance is not required. The applicant may **NOT** use this form to show another business or that business's insurance carrier that such insurance is not required.

**Please provide this form to the government entity from which you are requesting a permit, license or contract. This Certificate will not be accepted by government officials one year after the date printed on the form.**

| In the Application of (Legal Entity Name and Address): | Business Applying For: Contractors License |
|---|---|
| SEAN M. DUNN<br>DBA: WELL DUNN MAINTENANCE & CONTRACTING<br>PO BOX 1161<br>YORKTOWN, NY 10598<br>PHONE: 631-903-0329   FEIN: XXXXX7074 | **From: WESTCHESTER COUNTY DEPARTMENT OF CONSUMER PROTECTION** |

**Workers' Compensation Exemption Statement:**

The above named business is certifying that it is **NOT REQUIRED TO OBTAIN NEW YORK STATE SPECIFIC WORKERS' COMPENSATION INSURANCE COVERAGE** for the following reason:
The business is owned by one individual and is not a corporation. Other than the owner, there are no employees, day labor, leased employees, borrowed employees, part-time employees, unpaid volunteers (including family members) or subcontractors.

**Disability Benefits Exemption Statement:**

The above named business is certifying that it is **NOT REQUIRED TO OBTAIN NEW YORK STATE STATUTORY DISABILITY BENEFITS INSURANCE COVERAGE** for the following reason:
The business MUST be either: 1) owned by one individual; OR 2) is a partnership (including LLC, LLP, PLLP, RLLP, or LP) under the laws of New York State and is not a corporation; OR 3) is a one or two person owned corporation, with those individuals owning all of the stock and holding all offices of the corporation (in a two person owned corporation each individual must be an officer and own at least one share of stock); OR 4) is a business with no NYS location. In addition, the business does not require disability benefits coverage at this time since it has not employed one or more individuals on at least 30 days in any calendar year in New York State. (Independent contractors are not considered to be employees under the Disability Benefits Law.)

I, SEAN M. DUNN, am the Sole Proprietor with the above-named legal entity. I affirm that due to my position with the above-named business I have the knowledge, information and authority to make this Certificate of Attestation of Exemption. I hereby affirm that the statements made herein are true, that I have not made any materially false statements and I make this Certificate of Attestation of Exemption under the penalties of perjury. I further affirm that I understand that any false statement, representation or concealment will subject me to felony criminal prosecution, including jail and civil liability in accordance with the Workers' Compensation Law and all other New York State laws. By submitting this Certificate of Attestation of Exemption to the government entity listed above I also hereby affirm that if circumstances change so that workers' compensation insurance and/or disability benefits coverage is required, the above-named legal entity will immediately acquire appropriate New York State specific workers' compensation insurance and/or disability benefits coverage and also immediately furnish proof of that coverage on forms approved by the Chair of the Workers' Compensation Board to the government entity listed above.

| SIGN HERE | Signature: | Date: 5/23/13 |
|---|---|---|

**Exemption Certificate Number**
**2013-031437**

**Received**
**May 23, 2013**
**NYS Workers' Compensation Board**

CE-200 12/2008

# Child Support Certification

Westchester County Office of Child Support Enforcement

The Licensing Agency: **Department of Consumer Protection**

---

### LICENSE BEING APPLIED FOR – **HOME IMPROVEMENT LICENSE**

#### THIS FORM MUST BE FULLY COMPLETED BY APPLICANT FOR APPLICATION TO BE VALID

LAST NAME: *Dunn*                          FIRST NAME: *Sean*

SOCIAL SECURITY NO: ███████████                DATE OF BIRTH: ███████████
                                               M M      D D      Y Y

HOME ADDRESS: ███████████

CITY/STATE/ZIP: ███████████

, *Sean Dunn* , being duly sworn, make the following statement:

(Choose 1 or 2, and put an "X" in the box in front of whichever is appropriate)

☐ **1.** I am not under a court or administrative order to pay child support. **OR**

☒ **2.** I am under an obligation to pay child support. My child support account number is (if applicable) ███████████

**(If you chose #2, put an "X" in front of the applicable statement)**

☒ **A.** I do not owe arrears equal to 4 months or more of child support payments.

☐ **B.** I have arrears equal to 4 months or more of child support payments, and one of the following statements applies to me
**(check the appropriate boxes):**

　☐ I am making payments by income execution or by court agreed payment/re-payment plan or by a plan agreed to by the parties.

　☐ My child support obligation is the subject of a pending court proceeding.

　☐ I am currently in receipt of Public Assistance or Supplemental Security Income. My case number is _____

☐ **C.** I have arrears equal to 4 months or more of child support payments and none of the above statements in "B" apply
to me.

I hereby do solemnly swear that the information provided by me in this certificate is true and accurate to the best of
my knowledge. I acknowledge that this statement is under oath.

Sworn before me this ___11 ᵗʰ___ day

of _December_ _2013_                           X _____

_____                        SIGNATURE

Notary Public,                                  _12_ - _11_ - _13_

State of _New York_                             DATE

                                                GILDA STRUDWICK
                                                Notary Public, State of New York
                                                No. 01ST6209310
                                                Qualified in Westchester County
                                                Commission Expires July 27, 2017

THE INTENTIONAL SUBMISSION OF FALSE WRITTEN STATEMENTS FOR THE PURPOSE OF FRUSTRATING OR DEFEATING PAYMENT OF
SUPPORT IS PUNISHABLE PURSUANT TO SECTION 175.35 OF THE PENAL LAW. PERSONS WHO ARE FOUR MONTHS OR MORE IN ARREARS IN
CHILD SUPPORT MAY BE SUBJECT TO SUSPENSION OF THEIR BUSINESS, PROFESSIONAL AND/OR DRIVERS LICENSE.

---

### DO NOT WRITE BELOW THIS LINE – FOR OFFICIAL USE ONLY

☐ Information verified, or status of case unknown to OCSE.        ☐ Information is at variance with OCSE records.

Verifying Section & Supervisor: _____        Date: _____ - _____ - _____



**Robert P. Astorino**
County Executive

Department of Consumer Protection

John P. Gaccione
Acting Director
and County Sealer



Date:

The Westchester County Consumer Protection Code Article XVI, §863.324 (3) provides that an Applicant for a Home Improvement License "may commence such business upon filing a license application in accordance with Section 863.314 of this Article".

On the above date the application of _Neil Dunn Maintenance 'E Contracting_ was accepted for filing by the Westchester County Department of Consumer Protection.

Section 863.316 of the Consumer Protection Code allows the Department 90 days to grant or deny the license. Until such time a determination is made, the license application is considered pending. A license number is not issued until a license is granted.

Acceptance of this application by the Department does not guarantee issuance of a license.

Upon review of the application, supporting documentation and background check **the Department specifically reserves the right to deny this application for any of the reasons set forth in Article XVI of the Westchester County Consumer Protection Code.**

_Carmela Fusco_
Department Representative



148 Martine Avenue, Room 407
White Plains, New York 10601    Telephone: (914) 995-2155    Fax: (914) 995-5259    Website: www.westchestergov.com/consumer



Office of the County Executive
Robert P. Astorino

Westchester
gov.com

# Department of Consumer Protection
# Home Improvement License

WELL DUNN MAINTENANCE & CONTRACTING

P.O. BOX 1161

YORKTOWN NY 10598

This license is issued in accordance with Article XVI of the Westchester County
Consumer Protection Code, and is valid only upon presence of the official department seal.

License Number

WC-26450-H13

Date of Expiration

12/11/2015

JAN 2 9 2018

Westchester
gov.com

Westchester County Department of Consumer Protection
148 Martine Avenue, Room 407
White Plains, NY 10601-3311

RECEIVED
WESTCHESTER COUNTY

JUN 25 2015

DEPARTMENT OF
CONSUMER PROTECTION

UNITED STATES POSTAGE

$ 06.90°
PITNEY BOWES

02 1M
0004247253     MAY 11  2015
MAILED FROM ZIP CODE 10601

CERTIFIED MAIL

7013 2250 0001 1178 0198

not
5·12·15

Sean Dunn
Well Dunn Maintenance & Contracting
PO Box 1161
Yorktown, NY 10598

FIRST NOTICE

SECOND NOTICE
6-6

RETURN
6-15

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

SCAN DUNN
Well DUNN MAINTENANCE +
CONTRACTING
PO BOX 1161
YORKTOWN, NY 10598

TK

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                    ☐ Agent
                                     ☐ Addressee

B. Received by (Printed Name)        C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☐ Certified Mail       ☐ Express Mail
   ☐ Registered           ☐ Return Receipt for Merchandise
   ☐ Insured Mail         ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)  ☐ Yes

2. Article Number
   (Transfer from service label)   7013 2250 0001 1178 0198

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

INDEX NO. 61510/2017
RECEIVED NYSCEF: 07/26/2018

**WORKING COPY**

# Gordon Aff. Exhibit 14

# Does Employer Have Coverage?

If you cannot find an employer or suspect an employer of operating without workers' compensation insurance, please select one of the following links to **electronically send Employer Whistleblower Form** or, mail a **paper copy Employer Whistleblower Form** (PDF).

## Coverage History

**IMPORTANT NOTE TO GOVERNMENT AGENCIES:** The coverage information contained on this web site is **NOT** a substitute for government agencies requiring certificates of workers' compensation and disability benefits insurance from applicants pursuant to Workers' Compensation Law Sections 57 and 220. Government entities should only use the coverage information contained on this web site to verify certificates of insurance that have already been received pursuant to WCL Sections 57 and 220.

New Search                                                  Back to Search Results

## Employer

| WCB Emp Num | Name | Address |
|---|---|---|
| 2911362 | WELL DUNN MAINTENANCE & CONTRACTING CORP | YORKTOWN HTS, NY |

No Workers' Compensation Coverage Exists for this Employer

No Disability Benefits / Paid Family Leave (PFL) Coverage Exists for this Employer





PLAINTIFF'S
EXHIBIT
62
5/7/18   NS

# Does Employer Have Coverage?

## Coverage Locations

**New Search**                                    **Back to Coverage History**

## Employer

| WCB Emp Num | Name | Address |
|---|---|---|
| 2678832 | WELL DUNN MAINTENANCE & CONTRACTING | MAHOPAC, NY |

## Workers' Compensation Coverage Locations

| Name | City | State | Eff Date | End Date | End Reason |
|---|---|---|---|---|---|
| DUNN SEAN | MAHOPAC | NY | 01/05/2015 | 01/05/2016 | Policy Non Renewal |
| DUNN SEAN | YORKTOWN HEIGHT | NY | 01/05/2015 | 01/05/2016 | Policy Non Renewal |
| WELL DUNN MAINTENANCE & CONTRACTING TA | YORKTOWN HEIGHT | NY | 01/05/2015 | 01/05/2016 | Policy Non Renewal |
| WELL DUNN MAINTENANCE & CONTRACTING TA | MAHOPAC | NY | 01/05/2015 | 01/05/2016 | Policy Non Renewal |



# Does Employer Have Coverage?

If you cannot find an employer or suspect an employer of operating without workers' compensation insurance, please select one of the following links to **electronically send Employer Whistleblower Form** or, mail a **paper copy Employer Whistleblower Form** (PDF).

## Coverage History

**IMPORTANT NOTE TO GOVERNMENT AGENCIES:** The coverage information contained on this web site is **NOT** a substitute for government agencies requiring certificates of workers' compensation and disability benefits insurance from applicants pursuant to Workers' Compensation Law Sections 57 and 220. Government entities should only use the coverage information contained on this web site to verify certificates of insurance that have already been received pursuant to WCL Sections 57 and 220.

**New Search**                                        **Back to Search Results**

## Employer

| WCB Emp Num | Name | Address |
|---|---|---|
| 2678832 | WELL DUNN MAINTENANCE & CONTRACTING | MAHOPAC, NY |

## Workers' Compensation Coverage

| Insurer | Policy Number | Effective Date | End Date | End Reason | Wrap Up |
|---|---|---|---|---|---|
| NORGUARD INSURANCE COMPANY | **SEWC598930** | 01/05/2015 | 01/05/2016 | Non-Renewal | N |

**No Disability Benefits / Paid Family Leave (PFL) Coverage Exists for this Employer**



**NEW YORK STATE WORKERS' COMPENSATION BOARD**

# Employer Coverage Search

If you cannot find an employer or suspect an employer of operating without workers' compensation insurance, please select one of the following links to electronically send Employer Whistleblower Form or, mail a paper copy Employer Whistleblower Form (PDF).

## Coverage History

**IMPORTANT NOTE TO GOVERNMENT AGENCIES:** The coverage information contained on this web site is NOT a substitute for government agencies requiring certificates of workers' compensation and disability benefits insurance from applicants pursuant to Workers' Compensation Law Sections 57 and 220. Government entities should only use the coverage information contained on this web site to verify certificates of insurance that have already been received pursuant to WCL Sections 57 and 220.

New Search                                                                 Back to Search Results

### Employer

| WCB Emp Num | Name | Address |
|---|---|---|
| | SEAN DUNN D/B/A WELL DUNN MAINTENANCE & C | YORKTOWN HEIGHT, NY |

### Workers' Compensation Coverage

| Insurer | Policy Number | Effective Date | End Date | End Reason | Wrap Up |
|---|---|---|---|---|---|
| STATE INSURANCE FUND | 21003520 | 05/06/2011 | 03/13/2012 | Policy Cancelation | N |
| STATE INSURANCE FUND | 21003520 | 05/06/2010 | 05/06/2011 | Renewal | N |

### Disability Benefits Coverage

| Insurer | Policy Number | Effective Date | End Date | End Reason |
|---|---|---|---|---|
| ZURICH AMERICAN INSURANCE | 6474267001 | 05/06/2010 | 03/21/2013 | Non-Payment of Premium |



Norton
SECURED
powered by Symantec

## NEW YORK STATE WORKERS' COMPENSATION BOARD

# Employer Coverage Search

If you cannot find an employer or suspect an employer of operating without workers' compensation insurance, please select one of the following links to electronically send Employer Whistleblower Form or, mail a paper copy Employer Whistleblower Form (PDF).

## Coverage History

IMPORTANT NOTE TO GOVERNMENT AGENCIES: The coverage information contained on this web site is NOT a substitute for government agencies requiring certificates of workers' compensation and disability benefits insurance from applicants. pursuant to Workers' Compensation Law Sections 57 and 220. Government entities should only use the coverage information contained on this web site to verify certificates of insurance that have already been received pursuant to WCL Sections 57 and 220.

New Search                                                                                    Back to Search Results

## Employer

| WCB Emp Num | Name | Address |
|---|---|---|
|  | SEAN DUNN |  |

No Workers' Compensation Coverage Exists for this Employer

## Disability Benefits Coverage

| Insurer | Policy Number | Effective Date | End Date | End Reason |
|---|---|---|---|---|
| ZURICH AMERICAN INSURANCE | 6474267001 | 05/06/2010 | 03/21/2013 | Non-Payment of Premium |



Norton SECURED
powered by Symantec

**NEW YORK STATE WORKERS' COMPENSATION BOARD**

# Employer Coverage Search

If you cannot find an employer or suspect an employer of operating without workers' compensation insurance, please select one of the following links to electronically send Employer Whistleblower Form or, mail a paper copy Employer Whistleblower Form (PDF).

## Coverage History

IMPORTANT NOTE TO GOVERNMENT AGENCIES: The coverage information contained on this web site is NOT a substitute for government agencies requiring certificates of workers' compensation and disability benefits insurance from applicants pursuant to Workers' Compensation Law Sections 57 and 220. Government entities should only use the coverage information contained on this web site to verify certificates of insurance that have already been received pursuant to WCL Sections 57 and 220.

New Search

Back to Search Results

**Employer**

| WCB Emp Num | Name | Address |
|---|---|---|
| | SEAN DUNN | |

No Workers' Compensation Coverage Exists for this Employer

**Disability Benefits Coverage**

| Insurer | Policy Number | Effective Date | End Date | End Reason |
|---|---|---|---|---|
| HARTFORD LIFE AND ACCIDENT | LNY434660001 | 01/05/2015 | | |



**WORKING COPY**

# Gordon Aff. Exhibit 17

## PLAINTIFF'S EXHIBIT 17

## EXAMPLES OF PERSONAL EXPENSES PAID FROM LIEN LAW TRUST FUNDS[1]

**Summary of Selected Examples:**

| Expense description | Total Amount |
|---|---|
| Mercedes Benz car payments | $4,189.32 |
| Harley Davidson motorcycle payments | $6,115.58 |
| Bars and Restaurants (various) | $7,227.77 |
| Hotels & Airfare (various) | $11,575.22 |
| Retail stores (not construction related) | $12,882.71 |
| Wine and liquor stores | $1,261.13 |
| **Total** | **$43,251.73** |

**Sources of examples**

**February 2016 (Exh. 29)**

| | | |
|---|---|---|
| 2/4/16 | Harley Davidson | $406.85 |
| 2/5/16 | BJs | $207.23 |
| 2/5/16 | Stop & Shop | $59.01 |
| 2/5/16 | Netflix | $16.57 (recurring) |
| 2/8/16 | DeCicco Market | $45.21 |
| 2/8/16 | Stop & Shop | $53.75 |
| 2/8/16 | ACME | $18.37 |
| 2/11/16 | KeyFood | $49.89 |
| 2/16/16 | CVS | $35.89 |
| 2/16/16 | NY Sports Club Mem. | $84.99 (recurring) |
| 2/16/16 | NY Sports Club Mem. | $84.99 (recurring) |
| 2/22/16 | Top Hibachi | $97.60 |
| 2/22/16 | AT&T | $479.45 (recurring) |
| 2/24/16 | Haiku Asian Bistro | $126.10 |
| 2/26/16 | Bucci Brother's Deli | $60.00 |

**June 2016 (Exh. 30)**

---

[1] This summary is not and is not intended to be exhaustive; rather, it provides a sampling of personal expenses that Defendants paid with the Lien Law Trust Funds that Plaintiff paid to Defendants and that Defendants deposited into their personal bank accounts. The full extent of Defendants' misappropriation and diversion of Lien Law Trust Funds deposited into the personal bank accounts that Defendants maintained is apparent from Exhibits 29-42, 46, 49-51, true and accurate copies of the relevant bank accounts.

| 6/3/16 | Putnam Wine & Liquor | $67.17 |
| 6/6/16 | BJs | $60.30 |
| 6/6/16 | BJs | $216.15 |
| 6/6/16 | Party City | $41.81 |
| 6/6/16 | Theory Clothing | $536.46 |
| 6/7/16 | Stop & Shop | $138.76 |
| 6/7/16 | Netflix | $16.57(recurring) |
| 6/8/16 | Hotel Palomar | $753.67 |
| 6/8/16 | Bucci Brother's Deli | $66.92 |
| 6/8/16 | Spotted Horse Tavern | $101.14 |
| 6/13/16 | Putnam Wine & Liquor | $114.86 |
| 6/13/16 | Theory Clothing | $68.65 |
| 6/13/16 | Mall Parking | $3.00 |
| 6/13/16 | Paloma Grill | $199.53 |
| 6/13/16 | Remo's Restaurant | $102.74 |
| 6/14/16 | K-Mart | $32.50 |
| 6/14/16 | AT&T | $460.83(recurring) |
| 6/15/16 | Sirius Radio | $344.98(recurring) |
| 6/20/16 | NH Liquor | $110.94 |

### July 2016 (Exh. 31)

| 7/5/16 | Sunset Grille | $48.00 |
| 7/5/16 | Sunset Grille | $78.00 |
| 7/5/16 | Laz Parking | $10.50 |
| 7/5/16 | Maritime Aquarium | $86.75 |
| 7/5/16 | Maritime Aquarium | $80.73 |
| 7/5/16 | Laz Parking | $4.00 |
| 7/5/16 | Harley Davidson | $406.85(recurring) |
| 7/5/16 | Bliss Dairy Bar | $66.87 |
| 7/5/16 | Abercrombie & Fitch | $115.84 |
| 7/5/16 | Harley Davidson | $574.83 |
| 7/5/16 | American Eagle | $65.14 |
| 7/5/16 | GUCCI | $1,029.56 |
| 7/5/16 | Under Armour | $66.50 |
| 7/5/16 | Timberland | $184.24 |
| 7/5/16 | Apple Store | $215.67 |
| 7/5/16 | Expedia | $30.00 |
| 7/5/16 | American Airlines (x3) | $944.01 |
| 7/5/16 | Jet Blue (x3) | $779.52 |
| 7/5/16 | AT&T | $461.98(recurring) |
| 7/6/16 | Town Sports | $50.58 |
| 7/6/16 | Blue Ribbon Sushi | $146.44 |
| 7/6/16 | Hotel Tonight SoHo | $204.00(recurring) |
| 7/7/16 | Aire Ancient Baths | $395.45 |

| Date | Merchant | Amount |
|---|---|---|
| 7/7/16 | Nomo SoHo | $76.94 |
| 7/7/16 | JcPenney | $132.83 |
| 7/7/16 | Netflix | $16.57(recurring) |
| 7/8/16 | Gemma Ristorante | $52.47 |
| 7/8/16 | Putnam Wine & Liquor | $56.33 |
| 7/8/16 | CVS | $46.88 |
| 7/11/16 | Mahopac Flowers | $83.45 |
| 7/11/16 | Stop & Shop | $123.16 |
| 7/12/16 | Marine Boat Ins. | $353.00(recurring) |
| 7/12/16 | Apple iTunes | $44.99 |
| 7/12/16 | The Mooring Bar | $197.14 |
| 7/12/16 | Hotel Tonight | $902.00 |
| 7/13/16 | Six Flags | $209.99 |
| 7/13/16 | Sayers Wharf | $20.00 |
| 7/13/16 | Famous Footwear | $97.98 |
| 7/13/16 | TJ Maxx | $88.92 |
| 7/13/16 | Tibet | $10.70 |
| 7/13/16 | Castle Hill | $119.36 |
| 7/13/16 | Space & Tea Exchange | $19.07 |
| 7/13/16 | The New Store | $78.47 |
| 7/14/16 | Forty 1 North | $246.24 |
| 7/14/16 | Arianna Cosmetics | $96.29 |
| 7/14/16 | Starbucks | $7.88 |
| 7/14/16 | Stop & Shop | $165.03 |
| 7/15/16 | Forty 1 North | $130.00 |
| 7/15/16 | Newport Jerky Comp. | $54.96 |
| 7/18/16 | American Airlines | $413.47 |
| 7/18/16 | Jet Blue | $208.84 |
| 7/18/16 | Grand Prix | $92.48 |
| 7/18/16 | Journeys Store | $124.03 |
| 7/18/16 | Apple Store | $217.70 |
| 7/18/16 | Standard Highline | $49.00 |
| 7/19/16 | Whole Foods | $266.30 |
| 7/20/16 | K-Mart | $39.15 |
| 7/20/16 | Putnam Wine & Liquor | $68.23 |
| 7/20/16 | Turcos | $99.27 |
| 7/21/16 | Best Buy | $150.31 |
| 7/21/16 | 230 Fifth Ave | $44.00 |
| 7/21/16 | CGM GH LLC (Rest.) | $498.08 |
| 7/21/16 | Bucci Brother's Deli | $36.59 |
| 7/25/16 | TOA Downtown | $49.20 |
| 7/25/16 | TOA Downtown | $308.78 |
| 7/25/16 | 111 8th Ave Parking | $62.00 |
| 7/25/16 | Hollister | $50.59 |

| 7/25/16 | Journeys | $124.03 |
| 7/25/16 | AT&T | $53.69 |
| 7/25/16 | Stop & Shop | $26.09 |
| 7/25/16 | Stop & Shop | $79.71 |
| 7/25/16 | HomeGoods | $53.37 |
| 7/25/16 | Il Laghetto | $146.11 |
| 7/27/16 | ACME | $125.64 |
| 7/27/16 | Mulligan's Liquor | $171.08 |
| 7/27/16 | ACME | $93.80 |
| 7/29/16 | Cap't Jacks | $50.88 |
| 7/29/16 | ULTA | $37.83 |

## August 2016 (Exh. 32)

| 8/1/16 | Morey's Piers | $90.00 |
| 8/1/16 | LA Cavas Pizza | $45.50 |
| 8/1/16 | Stop & Shop | $21.55 |
| 8/1/16 | Elby's Variety Store | $23.77 |
| 8/1/16 | Abercrombie | $85.84 |
| 8/1/16 | Fortina | $158.68 |
| 8/1/16 | CHOPT | $40.08 |
| 8/1/16 | Stop & Shop | $70.41 |
| 8/1/16 | AT&T | $462.13(recurring) |
| 8/1/16 | BJ Membership | $53.69(recurring) |
| 8/3/16 | Club Fit | $152.16(recurring) |
| 8/4/16 | The Borgata | $112.86 |
| 8/8/16 | TOA Downtown | $237.06 |
| 8/8/16 | Starbucks | $18.99 |
| 8/8/16 | Hot Topic | $265.34 |
| 8/8/16 | Netflix | $18.57(recurring) |
| 8/12/16 | Vandal NY | $362.21 |
| 8/12/16 | Mahopac Flower Shop | $65.03 |
| 8/15/16 | Blu Pointe | $166.24 |
| 8/15/16 | Putnam Wine & Liquor | $75.85 |
| 8/15/16 | The Box NY | $106.00 |
| 8/15/16 | BEBE | $219.88 |
| 8/15/16 | Exit 4 Food Hall | $86.95 |
| 8/15/16 | The Borgata | $2,185.02 |
| 8/16/16 | Market Place Eatery AC | $210.25 |
| 8/17/16 | Steve Madden | $174.49 |
| 8/17/16 | The Borgata | $60.00 |
| 8/17/16 | Starbucks | $20.98 |
| 8/18/16 | Target | $160.73 |
| 8/18/16 | Teavana | $30.26 |
| 8/18/16 | Zagg | $74.43 |

| 8/19/16 | Immerson Spa | $200.00 |
| 8/19/16 | Hot Topic | $23.92 |
| 8/19/16 | Harley Davidson | $439.40 |
| 8/22/16 | Rossy's Nail Bar | $45.00 |
| 8/22/16 | Rick's Seafood | $85.60 |
| 8/22/16 | Stop & Shop | $49.04 |
| 8/22/16 | KeyFood | $36.84 |
| 8/22/16 | Concept Nails | $62.00 |
| 8/22/16 | ALDO Shoes | $12.74 |
| 8/22/16 | Sephora | $68.06 |
| 8/22/16 | Macy's | $105.80 |
| 8/22/16 | Dick's Sporting Goods | $100.39 |
| 8/23/16 | Jet Blue | $78.00 |
| 8/30/16 | American Airlines | $78.00 |
| 8/31/16 | Turcos | $172.38 |

### October 2016 (Exh. 33)

| 10/6/16 | Mercedes Benz | $465.48 |
| 10/17/17 | Harley Davidson | $270.59 |
| 10/17/17 | Harley Davidson | $1,285.65 |
| 10/18/17 | The Hartford Club | $1,981.00 |
| 10/26/17 | Hot Topic | $22.80 |
| 10/31/17 | Uncorked Wine | $32.19 |
| 10/31/16 | Dicks Sporting Goods | $32.20 |

### November 2016 (Exh. 34)

| 11/1/16 | Brotherhood Winery | $103.08 |
| 11/4/16 | Mercedes Benz | $465.48 |
| 11/7/16 | NYU Admissions | $27.22 |
| 11/7/16 | Laguna Grocery | $37.40 |
| 11/7/16 | Stop & Shop | $42.05 |
| 11/7/16 | Amore Ristorant | $80.49 |
| 11/7/16 | ULTA | $100.00 |
| 11/7/16 | NYU Admissions | $102.34 |
| 11/7/16 | GameStop | $148.15 |
| 11/25/16 | Harley Davidson | $406.85 |
| 11/25/16 | Harley Davidson | $562.83 |

### December 2016 (Exh. 35)

| 12/5/16 | Mercedes Benz | $465.48 |
| 12/22/16 | Forever 21 | $2.85 |
| 12/22/16 | Charlotte Russe | $46.52 |
| 12/22/16 | Forever 21 | $47.72 |
| 12/22/16 | Marshall's | $113.71 |

### January 2017 (Exh. 36)

| | | |
|---|---|---|
| 1/3/17 | Best Buy | $533.17 |
| 1/5/17 | Mercedes Benz | $465.48 |
| 1/6/17 | Toys R Us | $121.28 |
| 1/9/17 | Putnam Wine & Liquor | $82.31 |
| 1/9/17 | Harley Davidson | $270.59 |
| 1/26/17 | Whole Foods | $165.98 |
| 1/26/17 | Trader Joe's | $173.01 |
| 1/27/17 | Harley Davidson | $270.59 |
| 1/27/17 | Harley Davidson | $406.85 |

### February 2017 (Exh. 37)

| | | |
|---|---|---|
| 2/6/17 | Mercedes Benz | $465.48 |
| 2/27/17 | Laguna Grocery | $21.17 |
| 2/27/17 | Stop & Shop | $112.59 |
| 2/27/17 | Putnam Wine & Liquor | $124.54 |
| 2/28/17 | 8th Ave Parking | $62.00 |
| 2/28/17 | Splash Car Wash | $67.72 |

### March 2017 (Exh. 38)

| | | |
|---|---|---|
| 3/1/17 | TOA Downtown | $291.16 |
| 3/2/17 | Bodega Negra | $40.00 |
| 3/3/17 | BEBE | $417.77 |
| 3/6/17 | ULTA | $4.28 |
| 3/6/17 | Steve Madden | $104.32 |
| 3/6/17 | Mercedes Benz | $465.48 |
| 3/9/17 | Rick's Seafood | $11.24 |
| 3/13/17 | Marty's Formal Wear | $40.27 |
| 3/13/17 | Express | $43.35 |
| 3/13/17 | DSW | $72.05 |
| 3/13/17 | Kobu Asian Bistro | $97.77 |
| 3/13/17 | Stop & Shop | $203.08 |
| 3/13/17 | Joshua Tree Bar | $262.00 |
| 3/14/17 | Walmart | $92.67 |
| 3/16/17 | One Price Cleaners | $8.50 |
| 3/16/17 | Wayback Burgers | $11.99 |
| 3/20/17 | Stop & Shop | $175.73 |
| 3/22/17 | Stop & Shop | $19.18 |
| 3/24/17 | Mrs. Greens | $103.15 |
| 3/24/17 | BJs | $184.85 |

| 3/29/17 | Placita Market | $6.13 |
| 3/30/17 | Placita Market | $29.25 |

### April 2017 (Exh. 39)

| 4/4/17 | Mercedes Benz | $465.48 |
| 4/14/17 | Brodie's Pub | $205.87 |
| 4/17/17 | Metro-North | $38.25 |
| 4/17/17 | Ameritania Hotel | $46.81 |
| 4/17/17 | Ameritania Hotel | $266.27 |
| 4/17/17 | TOA Downtown | $523.33 |
| 4/18/17 | Stop & Shop | $79.60 |
| 4/25/17 | KeyFood | $53.77 |
| 4/26/17 | K-Mart | $19.90 |
| 4/27/17 | Aroma Osteria | $242.84 |
| 4/28/17 | Darcy's Acad. of Dance | $125.00 |

### May 2017 (Exh. 40)

| 5/1/17 | Rooftop Red's | $50.20 |
| 5/1/17 | Splash Car Wash | $61.50 |
| 5/1/17 | Taco Dumbo | $69.44 |
| 5/2/17 | Water Club Hotel | $11.65 |
| 5/2/17 | Water Club Hotel | $326.32 |
| 5/2/17 | Borgata Restaurant | $536.23 |
| 5/3/17 | Turco's | $69.81 |
| 5/4/17 | Turco's | $86.99 |
| 5/4/17 | Mercedes Benz | $465.48 |
| 5/10/17 | Harley Davidson | $406.85 |
| 5/11/17 | Asia Barong | $387.81 |
| 5/17/17 | Dunkin Donuts | $19.90 |
| 5/18/17 | Dunkin Donuts | $10.05 |
| 5/18/17 | American Cancer Soc. | $500.00 |
| 5/19/17 | Bucci's Brothers Deli | $59.20 |
| 5/22/17 | Auntie Anne's | $3.32 |
| 5/22/17 | Rick's Seafood | $8.69 |
| 5/22/17 | Great American Cookie | $26.99 |
| 5/22/17 | Stop & Shop | $28.05 |
| 5/22/17 | Placita Market | $36.93 |
| 5/22/17 | Amy's Hallmark | $42.69 |
| 5/22/17 | GameStop | $200.00 |
| 5/23/17 | Placita Market | $7.10 |
| 5/24/17 | Stop & Shop | $117.65 |
| 5/24/17 | Il Laghetto | $141.91 |
| 5/30/17 | Amy's Hallmark | $7.49 |
| 5/30/17 | Bamboo Village | $39.12 |

| 5/30/17 | Shoe Depot | $41.34 |
| 5/30/17 | H&M | $75.38 |
| 5/30/17 | Hollister | $95.00 |
| 5/30/17 | Haiku Asian Bistro | $146.38 |
| 5/30/17 | NYC Parking Ticket | $125.00 |
| 5/30/17 | Harley Davidson | $406.85 |

### June 2017 (Exh. 41)

| 6/2/17 | Bucci Brother's Deli | $67.09 |
| 6/5/17 | Mercedes Benz | $465.48 |
| 6/5/17 | Bamboo Village | $52.45 |
| 6/5/17 | Gem Saloon | $54.00 |
| 6/6/17 | Bungalow Beach Bar | $79.85 |
| 6/7/17 | Bamboo Village | $25.20 |
| 6/8/17 | McDonald's | $43.24 |
| 6/9/17 | Bamboo Village | $57.49 |
| 6/12/17 | Sterling Cellars Wine | $357.63 |
| 6/19/17 | NY Sky Room | $38.00 |
| 6/19/17 | NY 39th Parking | $58.00 |
| 6/19/17 | NY Refinery Rooftop | $145.41 |
| 6/22/17 | CVS | $110.55 |
| 6/22/17 | SeatGeek Ticketing | $449.00 |
| 6/23/17 | Exit 4 Food Hall | $36.51 |
| 6/23/17 | TLF Flowers | $150.00 |
| 6/23/17 | Hotels.com | $313.32 |
| 6/26/17 | Zach's Pizzeria | $30.00 |

### February 2018 (Exh. 42)

| 2/12/18 | Traditions Restaurant | $138.50 |
| 2/13/18 | Nespresso Boutique | $93.00 |
| 2/14/18 | Gaetano's Pizzeria | $21.40 |
| 2/16/18 | Bamboo Village | $23.25 |
| 2/20/18 | iTunes | $13.95 |
| 2/26/18 | PetSmart | $37.86 |
| 2/26/18 | Bar Russo | $86.42 |
| 2/26/18 | The ChopHouse Grill | $158.23 |
| 2/27/18 | Nespresso Boutique | $58.79 |
| 2/27/18 | Nespresso Boutique | $75.00 |