# EXHIBIT E

ROSEN & ASSOCIATES, P.C.
*Attorneys for LAK3, LLC*
747 Third Avenue
New York, NY 10017-2803
(212) 223-1100
Sanford P. Rosen

**UNITED STATES BANKRRPUTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**POUGHKEEPSIE DIVISION**

| | |
|---|---|
| In re: <br><br> SEAN M. DUNN, <br><br> Debtor. | Chapter 7 <br><br> Case No. 18-36566 (CGM) |
| LAK3, LLC, <br><br> Plaintiff, <br> v. <br><br> SEAN M. DUNN, <br><br> Defendant. | Adv. Proc. No. 18-09038 (CGM) |

**AMENDED COMPLAINT SEEKING DETERMINATION OF (I)**
**DISCHARGABILITY OF DEBT PURSUANT TO 11 U.S.C. §§ 523(a)(2), (4) and (6);**
**and (II) DENIAL OF DEBTOR'S DISCHARGE PURSUANT TO 11 U.S.C. §§**
**727(a)(2), (3) and (4)**

LAK3, LLC ("**Plaintiff**"), a creditor of Sean M. Dunn, the above-captioned debtor (the

"**Debtor**"), by its counsel, Rosen & Associates, P.C., hereby files this *Amended Complaint*

*Seeking Determination of Dischargeability of Debt Pursuant to 11 U.S.C. §§ 523(a)(2), (4) and*

*(6); and Denial of Debtor's Discharge Pursuant to 11 U.S.C. §§ 727(a)(2), (3) and (4)* (the

"**Complaint**"), and respectfully represents as follows:

## JURISDICTION, STATUTORY PREDICATE AND VENUE

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

2.      The statutory predicate for the relief requested herein are Rules 4004 and 4007 *et seq.* of the Federal Rules of Bankruptcy Procedure and 11 U.S.C. §§ 523(a)(2), (4) and (6) and 727(a)(2), (3) and (4).

3.      Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      This adversary proceeding is a "core" proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B), (H) and (O).

## PROCEDURAL HISTORY AND GENERAL ALLEGATIONS

5.      On September 17, 2018 (the "**Petition Date**"), the Debtor filed a voluntary petition (the "**Petition**") under chapter 7 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**").

6.      The Debtor listed Plaintiff as an unsecured creditor holding a non-contingent, disputed, unliquidated claim on *Schedule E/F: Creditors Who Have Unsecured Claims* of his Schedules of Liabilities filed with this Court.

7.      As set forth more fully herein, Plaintiff's claim arises (1) primarily from the Debtor's breach of his fiduciary duty as New York statutory Lien Law trustee; and (2) secondarily from the fraudulent representations the Debtor made in obtaining and purporting to carry out the role of general contractor, for the construction of a single-family residence for Plaintiff on its real property (the "**Property**") located at 41 Averill Drive, Mahopac, New York (the "**Construction Project**").

8.     At all relevant times, the Debtor conducted business as a general contractor along with his brother Gerald Dunn ("**Gerald**"), under the name Well Dunn Maintenance & Contracting ("**Well Dunn**").

9.     Plaintiff hired Well Dunn based on the representations the Debtor and Gerald made that they were properly licensed, insured, competent, highly skilled and experienced general contractors, all of which the Debtor and Gerald knew to be false at the times they were made.

10.     As set forth more fully herein, the Debtor knowingly and intentionally diverted for his personal use funds received from Plaintiff (the "**Project Payments**") that were to be and were, as a matter of New York law, required to be expended solely for the Construction Project in the manner set forth by Article 3-A of the New York Lien Law.

11.     On August 4, 2017, Plaintiff filed suit against the Debtor, his brother Gerald and Well Dunn (the "**State Court Defendants**") in the Supreme Court of the State of New York, County of Westchester, in an action styled, *LAK3, LLC v. Sean Dunn, Gerald Dunn, and Well Dunn Maintenance & Contracting* (the "**State Court Action**"), for fraud, breach of contract, breach of fiduciary duty, and lien law trust fund diversion.

12.     A copy of the complaint in the State Court Action is annexed hereto as Exhibit "A."

13.     On September 29, 2017, the State Court Defendants filed an Answer with Counterclaims, and on November 20, 2017, Plaintiff moved to dismiss the counterclaims for lack of standing, as the State Court Defendants were unlicensed home improvement contractors that and who could not bring such claims against Plaintiff.

14.     On December 8, 2017, the State Court Defendants agreed to withdraw the counterclaims with prejudice.

15.     On July 26, 2018, Plaintiff moved for partial summary judgment against the State Court Defendants on its claims for breach of fiduciary duty and diversion of lien law trust funds, based on admissions by the State Court Defendants, including the Debtor, in discovery in the State Court Action.

16.     A copy of the papers submitted in support for the Plaintiff's motion for partial summary judgment is annexed hereto as Exhibit "B."

17.     The motion was fully submitted but undecided when the State Court Action was stayed in part, with respect to the Debtor, as a result of the Debtor's bankruptcy filing.

## THE PARTIES

18.     Plaintiff is a limited liability company organized under the laws of New York, with a principal place of business in Yorktown Heights, New York.

19.     At all relevant times, Ned Kleinschmidt ("**Kleinschmidt**") has been the managing member of Plaintiff.

20.     Upon information and belief, the Debtor is an individual residing in the state of New York.

## COUNT I – OBJECTION TO DISCHARGE UNDER 11 U.S.C. § 523(a)(2) FOR FALSE PRETENSES, REPRESENTATIONS OR ACTUAL FRAUD

21.     Plaintiff repeats, re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 20 of this Complaint as if fully re-alleged herein.

22.     On or about January 13, 2016, Kleinschmidt and his wife, Lesley, both acting on Plaintiff's behalf, met with the Debtor at the offices of Plaintiff's architect, Michael A.

Picicirillo ("**Picicirillo**"), in Yorktown Heights, New York, to discuss the details of the Construction Project.

23.     The Kleinschmidts read the contents of Well Dunn's website before meeting with the Debtor.

24.     On its website, Well Dunn touted itself as an experienced home improvement contractor for all types of home improvement projects, licensed in Westchester County, Putnam County, the City of Yonkers and "all of Connecticut." *See* Ex. B, at Ex. 12.

25.     At the January 13, 2016 meeting, the Debtor, like Well Dunn's website, stated that Well Dunn is an experienced home improvement contractor, licensed in Putnam County and that he knew how to build the house for the Construction Project.

26.     On or about March 16, 2016, the Debtor submitted a bid to Plaintiff for the Construction Project in the amount of $1,150,000 plus approved change orders, based on construction plans and specifications that had been prepared by Picicirillo.

27.     On or about March 18, 2016, based on the statements that the Debtor made at the January 13, 2016 meeting and the representations on the Well Dunn website, Plaintiff agreed to accept the Debtor's bid and engage the Debtor and Gerald as general contractors, doing business as Well Dunn, for the Construction Project.

28.     The Debtor knew his statements and representations to Plaintiff were false at the time he made them, and he made them with the intent to fraudulently induce Plaintiff to engage him and pay him for services to be rendered.

29.     Plaintiff reasonably relied on such statements and representations.

30.     But for such statements and representations, Plaintiff would not have engaged the Debtor.

31.     After construction commenced, Plaintiff learned that many aspects of the Debtor's work, labor, services and materials that the Debtor represented to Plaintiff as having furnished was either not furnished, furnished improperly, or was not in compliance with Picirillo's approved plans and specifications.

32.     Most of the work performed by the Debtor was of poor quality, defective and failed to meet basic construction standards and the applicable building code.

33.     Plaintiff repeatedly demanded that the Debtor cure defective construction conditions; however, the Debtor failed and refused to do so.

34.     On or about June 19, 2017, Plaintiff terminated the Debtor as general contractor, for cause.

35.     Upon information and belief, the Debtor failed to pay at least two subcontractors, M.S. Iron Works, Inc. d/b/a M&S Iron Works ("M&S") and Hauptman Enterprises, despite having told Plaintiff on or about May 4, 2017, that all subcontractors and suppliers for the Construction Project had been paid in full.

36.     Consequently, M&S filed a mechanic's lien on the Property on or about July 17, 2017, and, as set forth more fully below, M&S has filed an action against the Debtor, Gerald and Well Dunn for, among other things, Lien Law Trust Fund diversion and breach of fiduciary duty.

37.     On or about June 28, 2018, Plaintiff retained Thorton Tomasetti ("**Tomasetti**"), an engineering consulting firm, to perform a visual observation of the Construction

Project and to report an approximation of the value of construction that was then in-place on the Property. A copy of Tomasetti's report (the "**Field Report**") is annexed hereto as Exhibit "C".

38.     According to the Field Report, Tomasetti calculated the total amount of work completed to be approximately $369,799.95. However, Tomasetti noted that, despite the limited purpose of its observation to determine the value of the construction in place, "*it must be stated* that much of the construction observed was inadequate, meaning, that in order to properly complete this house, some of the in-place construction would require significant repairs in order to meet codes and standard [sic] and to pass municipal inspection." Tomassetti further cautioned that, "[t]he Owner should anticipate significant costs to remedy these … [which] should be deducted from the estimate provided." *See* Ex. C at 3 (emphasis added).

39.     The Field Report cites specific examples of such inadequacies, including, "steel girders improperly supported on conventional wood plates seriously exceeding the bearing capacity of those plates; steel columns insufficiently supported on undersized concrete footings with improper anchor bolt edge distances; steel columns with improper nailed connection to wood beams; improper installation of windows; steel girders left exposed at exterior wall; [and] dissimilar metals in contact that will ultimately deteriorate due to galvanic action, just to name a few." *See* Ex. C at 3.

40.     Due to the poor quality of the Debtor's work and the Debtor's failure to correct it, Plaintiff was required to remediate the construction conditions by removing much of the Debtor's work product and re-constructing it properly.

41.     To date, Plaintiff has expended over $500,000 (the "**Remediation Expenses**") to correct the Debtor's construction errors, including, without limitation, costs related

to (a) removing and replacing one-hundred (100) windows that were installed incorrectly; (b) replacing subflooring wherever possible that had been installed with incorrect specification; (c) replacing joists that were incorrectly cut and installed; (d) replacing unsafe and uninspected concrete footing supporting the house; (e) replacing dozens of wooden beams and columns supporting the structure that were unsafe and incorrectly installed; (f) adding structural steel that was omitted; (g) retaining multiple structural engineers to consult, retrofit and correct errors; and (h) repairing and replacing damaged and incorrectly sized exterior sheathing.

42.	Plaintiff was unable to fully rectify certain construction errors made by the Debtor with respect to walls, floors, framing and roof slope because certain conditions rendered it cost prohibitive to do so.

43.	Upon information and belief, the laws of the State of New York and Putnam County require a home improvement contractor to be registered and licensed to do business as a home improvement contractor.

44.	According to New York Law, a "home improvement contractor" is one who operates a home improvement business or who undertakes, offers to undertake or agrees to perform any home improvement for a fee. *See* N.Y. Gen. Bus. Law § 770 (McKinney 2018).

45.	Upon information and belief, at all relevant times, the Debtor was a home improvement contractor under New York Law.

46.	During discovery in the State Court Action, the Debtor admitted under oath, that when he first met the Kleinschmidts, he told them that he was a licensed home improvement contractor in Putnam County. *See* Ex. B at Ex.2 120: 8-10.

47.     The Debtor admitted in discovery in the State Court Action that he did not have a valid Putnam County contractor's license during his employment by Plaintiff. *See* Ex. B at Ex. 3 ¶ 17.

48.     Upon information and belief, the Department of Consumer Protection of Westchester County revoked the Debtor's home improvement contractor license in May 2015. *See* Ex. B at Ex. 13.

49.     Upon information and belief at all relevant times through the time the State Court Action was commenced, based upon public records of the State of New York and the Counties of Putnam and Westchester, Well Dunn was not a corporation, limited liability company, partnership, or any other business association, and was not registered as any such entity with the Secretary of State of the State of New York.

50.     Upon information and belief at all relevant times through the time the State Court Action was commenced, based upon public records of the State of New York and the Counties of Putnam and Westchester, Well Dunn was not licensed or registered to do business in the state of New York or the Counties of Putnam or Westchester, and did not maintain workers' compensation insurance.

51.     Pursuant to section 523(a)(2)(A) of the Bankruptcy Code, a debtor is not discharged of a debt for money, property or services, to the extent obtained by false pretenses, a false representation, or actual fraud.

52.     The Debtor obtained his engagement and procured the Project Payments through false pretenses, false representations, or actual fraud.

53.     Plaintiff has sustained damages in the amount in excess of $1,400,000.00, consisting of Remediation Expenses and Project Payments.

54.     Plaintiff has a total claim in the amount of approximately $2,000,000.00, consisting of Remediation Expenses, Project Payments, and other remediation costs to be incurred.

55.     Accordingly, Plaintiff has filed a proof of claim in the amount of approximately $2,000,000.00.

56.     Plaintiff's claim is non-dischargeable under 11 U.S.C. § 523(a)(2)(A).

**COUNT II – OBJECTION TO DISCHARGE UNDER
11 U.S.C. § 523(a)(4) FOR DEFALCATION BY A FIDUCIARY**

57.     Plaintiff repeats, re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 56 of this Complaint as if fully re-alleged herein.

58.     Pursuant to section 523(a)(4) of the Bankruptcy Code, a debtor is not discharged of a debt for fraud or defalcation while acting in a fiduciary capacity.

59.     Article 3-A of the New York Lien Law imposes on a contractor a fiduciary duty over funds received for the improvement of real property. *See* N.Y. Lien Law, §§ 70, 71 and 71-a.

60.     Funds received for the improvement of real property create an express statutory trust within the meaning section 523(a)(4) of the Bankruptcy Code.

61.     For purposes of Article 3-A, owners are considered beneficiaries of the trust and the Project Payments were trust funds within the statutory definition.

62.     Upon information and belief, the Debtor knew at all relevant times that the Project Payments were trust funds within the meaning of the Lien Law of the State of New York.

63. Under sections 71 and 72 of the New York Lien Law, the statutory trustee may not divert funds received for construction or improvement of real property for nontrust uses, which include any use of trust assets other than for payment of claims of the trust. *See* N.Y. Lien Law §§ 70 and 72.

64. The Debtor admitted in discovery in the State Court Action that he co-mingled the Project Payments with other monies, and used certain of the Project Payments to pay personal expenses and expenses related to other projects. *See* Ex. B at Ex.2, 78:6-15.

65. Moreover, the Debtor admitted that besides himself and Gerald, his former fiancé (who had no role with Well Dunn and was not involved in the Construction Project) had access to the Project Payments. *See* Ex. B at Ex.2 136:5-23.

66. Discovery in the State Court Action disclosed that the account in which the Debtor had deposited the Project Payments was accessed to pay for, among other things, lease payments on a Mercedes Benz, a trip to the Maritime Aquarium in Norwalk, Connecticut, purchases from Abercrombie & Fitch and Gucci, airline tickets, Six Flags amusement park tickets, dinner at Tao Restaurant in Manhattan, and a trip to Capt'N Jacks Island Grill in Wildwood, New Jersey. *See* Ex. B at Ex.2 136:5-23, Ex. 17.

67. Section 75(4) of the Lien Law imposes a duty to maintain a proper accounting of trust assets; and any failure to do so creates a presumption of diversion of assets to non-trust purposes. *See* N.Y. Lien Law § 75.4.5.

68. The Debtor admitted in discovery in the State Court Action that he did not maintain full, complete and accurate records for the Construction Project, paid all subcontractors and suppliers on the Construction Project in cash, did not report any paid wages to

the IRS or the State of New York, and filed no tax returns for the relevant time period. *See* Ex. B, Ex. 2 13:5-23, 14:4-7, 36:8-16, 54:3-21, 201:2-6, 209:23-25, 210:3-6, 211:8-18.

69.     The Debtor admitted in discovery in the State Court Action that the only records that he had relating to the Construction Project were purportedly contained in QuickBooks. *Id.* 54:3-21.

70.     The Debtor testified in discovery in the State Court Action that his failure to keep Project records was because, "[he had] no idea what [he was] doing when it [came] to bookkeeping," and that it was just something he had "always been bad at." *Id.* 50:6-9, 64:24-25.

71.     The Debtor breached his fiduciary duty by diverting Project Payments for nontrust uses.

72.     Plaintiff is not the only party to have been directly harmed by the Debtor's defalcations.  As noted above in paragraph 35, in April 2018, M&S commenced an action in the Supreme Court of the State of New York, Westchester County (Index No. 54816/2018), claiming, among other things, that even though Plaintiff paid the Debtor the $43,788.00 due and owing to M&S, the Debtor illegally diverted that payment for its own purposes in violation of the New York Lien Law.

73.     Accordingly, Plaintiff has a claim in excess of $460,000 plus interest and reasonable attorneys' fees.

74.     Plaintiff's claim is non-dischargeable under 11 U.S.C. § 523(a)(4).

## COUNT III – OBJECTION TO DISCHARGE UNDER 11 U.S.C. § 523(a)(4) FOR EMBEZZLEMENT

75.     Plaintiff repeats, re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 74 of this Complaint as if fully re-alleged herein.

76. Pursuant to section 523(a)(4) of the Bankruptcy Code, a debtor is not discharged of a debt obtained by embezzlement.

77. For purposes of section 523(a)(4), embezzlement requires a showing that (a) the debtor rightfully possessed another's property; (b) the debtor appropriated the property for use other than the use for which the property was entrusted; and (c) the circumstances implied a fraudulent intent.

78. Absent an intent to defraud, the use of trust funds for any other purpose creates a strong inference of deceit or fraudulent intent.

79. Between June 27, 2016 and March 11, 2017, Plaintiff made several Project Payments to the Debtor, aggregating $840,828.22.

80. Before making each Project Payment, the Debtor told Plaintiff that each payment would be applied to the cost of work, labor, services and materials for the Construction Project.

81. On or about May 4, 2017, the Debtor represented to Plaintiff that he had furnished $840,828.00 of work, labor, services and materials for the Construction Project.

82. However, the Debtor admitted in discovery in the State Court Action that out of the Project Payments of $840,828.22, only $379,793.50 was paid on account of work and materials furnished for the Construction Project. *See* Ex. B at Ex.11 pp. 3-4.

83. The Debtor was in rightful possession of the Project Payments and embezzled over $460,000 of the Project Payments.

84. Accordingly, Plaintiff has a claim in the amount in excess of $460,000, plus interest and reasonable attorneys' fees.

85.     Plaintiff's claim is non-dischargeable under 11 U.S.C. § 523(a)(4).

## COUNT IV – OBJECTION TO DISCHARGE UNDER
## 11 U.S.C. § 523(a)(6) FOR WILLFUL AND MALICIOUS INJURY

86.     Plaintiff repeats, re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 85 of this Complaint as if fully re-alleged herein.

87.     Pursuant to section 523(a)(6) of the Bankruptcy Code, a debtor is not discharged of any debt for willful and malicious injury by the debtor to another entity or to the property of another entity.

88.     At all relevant times, despite Plaintiff's repeated demands of the Debtor for a written agreement memorializing the terms of their contract, the Debtor knowingly, intentionally and wrongfully refused to prepare an agreement for the Construction Project.

89.     Upon information and belief, the Debtor violated section 771 of New York's General Business Law and section 135-5 of the Putnam County Administrative Code, which require that for work such as the Construction Project, the general contractor prepare a written contract between the general contractor and owner.

90.     The Debtor willfully and maliciously caused injury to Plaintiff by intentionally refusing to prepare a written agreement and misrepresenting, among other things, his qualifications and licensure to conduct business as a home improvement contractor, the amount of trust monies paid to subcontractors and suppliers and which subcontractors and suppliers had been paid.

91.     The Debtor's willful and malicious actions caused damages to Plaintiff in the amount in excess of $2,000,000.00, plus interest and reasonable attorneys' fees.

92.     Such claim is non-dischargeable under 11 U.S.C. § 523(a)(6).

## COUNT V – DENIAL OF DISCHARGE UNDER 11 U.S.C. §727(a)(2)
## FOR FRAUDULENT PRE-PETITION TRANSFERS

93.     Plaintiff repeats, re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 92 of this Complaint as if fully re-alleged herein.

94.     Pursuant to section 727(a)(2) of the Bankruptcy Code, a debtor is not entitled to a discharge if he or she – with intent to hinder, delay or defraud a creditor – transferred, removed, destroyed, mutilated, or concealed property of the debtor within one year before the date of the filing of the petition, or transferred, removed, destroyed, mutilated, or concealed property of the estate after the date of the filing of the petition.

95.     Upon information and belief, the Debtor owned several vehicles and items of machinery and equipment within a year prior to the Petition Date that he did not list in his schedule of assets, including, without limitation, two (2) white commercial vans, a Kubota excavator, a commercial trailer, a 2010 Mercedes S55, two (2) Harley-Davidson motorcycles, a white Mustang Cobra and at least one boat (collectively, the "**Unscheduled Property**").

96.     An intent to hinder, delay, or defraud a creditor is implied if a debtor fails to make full disclosure of assets of substantial value in the bankruptcy schedules.

97.     Upon information and belief, within one year prior to the Petition Date, the Debtor transferred or concealed the Unscheduled Property with intent to hinder, delay or defraud his creditors including, without limitation, Plaintiff.

98.     Accordingly, the Debtor's discharge should be denied pursuant to 11 U.S.C. § 727(a)(2).

## COUNT VI – DENIAL OF DISCHARGE UNDER
## 11 U.S.C. §727(a)(3) FOR FAILURE TO KEEP RECORDS

99.     Plaintiff repeats, re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 98 of this Complaint as if fully re-alleged herein.

100.     Pursuant to section 727(a)(3) of the Bankruptcy Code, a debtor is not entitled to a discharge if he or she concealed, destroyed, mutilated, falsified or failed to keep or preserve recorded information, including books, documents, records, and papers from which his financial condition or business transactions might be ascertained, unless such act or failure to act was justified.

101.     For purposes of section 727(a)(3), the debtor must have failed to keep or preserve books or records under such circumstances that the debtor's financial condition or business transactions might have been ascertained from such books or records.

102.     If the nature and extent of the debtor's transactions are such that others in like circumstances would ordinarily keep financial records, the debtor has a duty to preserve books and records that would be material to a proper understanding of his business condition.

103.     As set forth above, the Debtor admitted that he did not maintain nearly any books and records related to the Construction Project, with the exception of certain QuickBooks entries.

104.     On August 27, 2018, court Attorney-Referee Jeannette M. Millner, of the Supreme Court of the State of New York, County of Westchester – Compliance Part, directed the Debtor to allow Plaintiff to inspect his QuickBooks files on or before September 5, 2018.

105.     A copy of the Compliance Conference Referee Report & Order is annexed hereto as Exhibit "D."

106. As of the Petition Date, the Debtor had failed to comply with the Compliance Conference Referee Report & Order.

107. As a business person and statutory trustee, the Debtor was under an affirmative duty to preserve books and records related to the Construction Project because such books and records are material to a proper understanding of the Debtor's financial condition.

108. As set forth above, the Debtor's failure to maintain fundamental records relating to the Construction Project precludes Plaintiff's from assessing his financial affairs with respect to the Construction Project.

109. As set forth above, the Debtor, without justification, has concealed, destroyed, or failed to keep or preserve recorded information from which his business transactions may be ascertained.

110. Accordingly, the Debtor's discharge should be denied pursuant to 11 U.S.C. § 727(a)(3).

## COUNT VII – DENIAL OF DISCHARGE UNDER 11 U.S.C. §727(a)(4) <u>FOR FALSE OATH IN CONNECTION WITH THE BANKRUPTCY CASE</u>

111. Plaintiff repeats, re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 110 of this Complaint as if fully re-alleged herein.

112. Pursuant to section 727(a)(4) of the Bankruptcy Code, a debtor is not entitled to a discharge if he or she knowingly and fraudulently made a false oath or account in connection with the bankruptcy case.

113. For purposes of section 727(a)(4), fraud may be established by showing that the debtor acted with reckless and cavalier disregard for the truth. The cumulative effect of a

number of serious allegations of nondisclosure adequately establishes a pattern of reckless disregard for the truth.

114.     During discovery in the State Court Action, the Debtor testified that he failed to file certain tax returns. *See* Ex. B, Ex. 2 13:5-23, 14:4-7, 36:8-16, 211:8-18.

115.     Upon information and belief, the Internal Revenue Service and the New York State Department of Taxation and Finance are creditors of the Debtor on account of taxes with respect to which the Debtor failed to file returns.

116.     Upon information and belief, the Debtor, knowingly and fraudulently, made a false oath with respect to his schedules, as amended, by failing to list the Internal Revenue Service and the New York State Department of Finance and Taxation as creditors.

117.     Upon information and belief, the Debtor, knowingly and fraudulently, made a false oath with respect to his schedules, as amended, by failing to list as property of his bankruptcy estate his interests in the Unscheduled Property.

118.     Upon information and belief, the Debtor, knowingly and fraudulently, made a false oath with respect to his schedules and statement of financial affairs, as amended, by failing to account for his transfers of the Unscheduled Property.

119.     Upon information and belief, the Debtor, knowingly and fraudulently, made a false oath with respect to his schedules and statement of financial affairs, as amended, by grossly understating his income by failing to include commissions from a number of construction and real estate investment projects he was directly or indirectly engaged in.

120.     The sheer volume of omissions and misstatements in the Debtor's schedules and statement of financial affairs conclusively establishes that the Debtor filed his schedules and statement of financial affairs with reckless and cavalier disregard for the truth.

121.     Accordingly, the Debtor's discharge should be denied pursuant to 11 U.S.C. § 727(a)(4).

*          *          *

*[REMAINDER OF PAGE INTENTIONALLY BLANK]*

**WHEREFORE**, Plaintiff requests that this Court determine:

a. With respect to count I, that the debt owed by the Debtor to Plaintiff in the amount of $2,000,000.00 constitutes a nondischargeable debt pursuant to 11 U.S.C. § 523(a)(2)(A);

b. With respect to count II, that the debt owed by the Debtor to Plaintiff in the amount of $460,000.00 constitutes a nondischargeable debt pursuant to 11 U.S.C. § 523(a)(4);

c. With respect to count III, that the debt owed by the Debtor to Plaintiff in the amount of $460,000.00 constitutes a nondischargeable debt pursuant to 11 U.S.C. § 523(a)(4);

d. With respect to count IV, that the debt owed by the Debtor to Plaintiff in the amount of $2,000,000.00 constitutes a nondischargeable debt pursuant to 11 U.S.C. § 523(a)(4);

e. With respect to count V, that the Debtor is not entitled to a discharge under 11 U.S.C. § 727(a)(2);

f. With respect to count VI, that the Debtor is not entitled to a discharge under 11 U.S.C. § 727(a)(3);

g. With respect to count VII, that the Debtor is not entitled to a discharge under 11 U.S.C. § 727(a)(4);

h. With respect to all counts, that Plaintiff is entitled to reasonable attorneys fees and expenses incurred in bringing this adversary proceeding;

i. With respect to all counts, that Plaintiff shall recover all costs incurred in prosecuting this adversary proceeding; and

j. Awarding Plaintiff such other and further relief to which it may be entitled.

Dated: New York, New York
December 14, 2018

ROSEN & ASSOCIATES, P.C.
*Counsel to LAK3, LLC*

By: /s/ Sanford P. Rosen
    Sanford P. Rosen

747 Third Avenue
New York, NY 10017-2803
(212) 223-1100