Carlos J. Cuevas, Esq.                                            Hearing Date: 4/19/22 @ 9:00 AM
Attorney for the Debtor-Defendant
Sean M. Dunn
1250 Central Park Avenue
Yonkers, New York 10704
Tel. No. 914.964.7060
Carlos J. Cuevas

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

In re                                                           Chapter 7

SEAN M. DUNN,                               Case No. 18-36566(CGM)

                            Debtor.

-------------------------------------------------------------X

LAK3, LLC,

                            Plaintiff,

-against-                                                Adv. Pro. No. 18-09038(CGM)

SEAN M. DUNN,

                            Defendant.

-------------------------------------------------------------X

**THE DEBTOR'S MOTION TO APPROVE A SETTLEMENT
AMONG SEAN M. DUNN, LAK3, LLC AND GERALD DUNN
<u>WITH POINTS AND AUTHORITIES</u>**

**TO THE HON. CECELIA G. MORRIS,
UNITED STATES BANKRUPTCY JUDGE**:

       Sean M. Dunn by his attorney, Carlos J. Cuevas, Esq. for his Motion to Approve a

Settlement among Sean M. Dunn, LAK3, LLC and Gerald Dunn respectfully represents:

1

# INTRODUCTION

1. On August 4, 2017, LAK3, LLC ("LAK3") filed a civil action entitled *LAK3, LLC v. Dunn et al*, Index No. 61510/2017, Supreme Court of the State of New York, County of Westchester (the "State Court Action").

2. On September 17, 2018, the Debtor filed a voluntary Chapter 7 petition.

3. Fred Stevens, Esq. is the permanent Chapter 7 Trustee in Mr. Sean Dunn's bankruptcy case.

4. On November 21, 2018, LAK3 filed an adversary proceeding entitled *LAK3, LLC v. Dunn*, Adv. Pro. No. 18-9038(CGM), United States Bankruptcy Court for the Southern District of New York (the "Adversary Proceeding").

5. The Debtor seeks approval of a Stipulation that embodies a settlement among Sean Dunn, LAK3 and Gerald Dunn (the "Settlement"). (Exhibit A).

6. It is respectfully submitted that the Settlement should be approved for the following reasons:

    a) The Settlement is beneficial for Sean Dunn because it resolves years of litigation and prevents years of future litigation;

    b) The Settlement is beneficial because absent a default it caps Sean Dunn's potential liability at $260,000.00;

    c) The costly, protracted litigation with LAK3 will be terminated;

    d) The Settlement facilitates the closure of this bankruptcy case and the Adversary Proceeding; and

    e) The Settlement will enable Sean Dunn to obtain a fresh start and focus on his young children.

## THE LAK3 PROJECT LUXURY RESIDENCE PROJECT

7. On or about May 2016, LAK3 engaged Sean M. Dunn to construct a luxury residence in Lake Mahopac, New York.

8. Disputes arose between LAK3 and Sean Dunn concerning the construction of the LAK3 luxury house, the pace of the construction, and Sean Dunn's accounting and use of payments by LAK for the construction of the house.

9. LAK3 terminated Sean M. Dunn from the construction of the LAK3 luxury residence, before it was completed.

## THE STATE COURT ACTION

10. On August 4, 2017, LAK3 commenced the State Court Action.

11. The LAK3 Complaint alleges the following causes of action against Mr. Sean Dunn and Mr. Gerald Dunn: breach of contract; *quantum meruit* and unjust enrichment; fraud; breach of fiduciary duty; and Lien Law violations.

12. Mr. Sean Dunn interposed an Answer with affirmative defenses contesting the allegations in the LAK3 Complaint.

13. The Plaintiff LAK3 pursued the litigation in a very aggressive manner. The State Court Action has been highly controverted with summary judgment motions; an appeal, and over 400 docket entries.

## THE LAK3 ADVERSARY PROCEEDING

14. On November 21, 2018, LAK3 commenced the Adversary Proceeding. LAK3 has sought to have its debt declared non-dischargeable pursuant to Bankruptcy Code Sections

523(a)(2)(A), 523(a)(4) and 523(a)(6). LAK3 has also sought to deny Mr. Sean Dunn his discharge pursuant to Bankruptcy Code Sections 727(a)(3), 727(a)(4), and 727(a)(5).

15. On March 22, 2019, this Court lifted the automatic stay to permit the State Court Action to proceed to the entry of a judgment.

16. On December 10, 2019, this Court dismissed the Adversary Proceeding because of the failure to prosecute.

17. On August 20, 2020, District Judge McMahon vacated the Order dismissing the Adversary Proceeding and remanded the matter back to this Court.

18. Andrew O'Toole, Esq. was appointed the mediator in the Adversary Proceeding. On February 15, 2021 the parties unsuccessfully engaged in mediation.

19. Thereafter, Pre-Trial Conferences were scheduled that concerned the progress of the State Court Action.

## **THE RESOLUTION OF THE LAK3/DUNN DISPUTE**

20. On November 16, 2021, the parties appeared before the Trial Readiness Part and Justice Lubell in the State Action.

21. On January 3, 2022, the parties appeared for mediation before Justice Lubell. This mediation session was also unsuccessful.

22. On March 2, 2022, the parties appeared for jury selection before Justice Zuckerman.

23. Justice Zuckerman conducted settlement negotiations that resulted in a settlement among the parties to the State Court Action. (Exhibit A).

24. On March 2, 2022, the parties executed a Stipulation that embodies the Settlement. (Exhibit A).

25. On March 2, 2022, the parties placed the terms of the Settlement on the record in the State Court Action. (Exhibit B).

26. On March 2, 2022, Mr. Sean Dunn was represented by David Azrin, Esq. and Carlos Cuevas, Esq.

27. On March 2, 2022, LAK3 was represented by Michael Gordon, Esq. and Avery Samet, Esq.

## THE TERMS OF THE SETTLEMENT

28. Absent a default, the total payment under the Settlement is $260,000.00, paid over a five year period.

29. Sean Dunn's payment of the settlement amount will be non-dischargeable in bankruptcy.

30. The Settlement requires that Messrs. Sean Dunn and Gerald Dunn (the "Dunns") make an initial $70,000.00 payment within 90 days of the after the execution of the Settlement or fourteen days after the entry by this Court of an order approving the Settlement, whichever is later.

31. Thereafter, the Dunns are required to pay LAK3 a $190,000.00 in sixty equal installments.

32. The Settlement is secured by confessions of judgment. (Exhibit C)

33. If the Dunns default under the Settlement, then the amount due is $470,000.00 minus any prior payments.

34. Subject to this Court's approval of the State Action Settlement, the State Action will be dismissed with prejudice and the parties will exchange mutual general releases. (Exhibit D).

35. In addition, subject to this Court's approval of the State Action Settlement, LAK3 will discontinue the Adversary Proceeding, including its objections to discharge, with prejudice.

## **THE BENEFITS OF THE SETTLEMENT**

36. The Settlement enables Mr. Sean Dunn to emerge from Chapter 7, and obtain a fresh start.

37. The Settlement terminates protracted and costly litigation that has lasted for several years.

38. Absent the Settlement Mr. Sean Dunn and LAK3 could be engulfed in litigation in the federal and state court systems for the next three to five years.

39. Mr. Sean Dunn was involved in a motorcycle accident, and he still has major health issues. The Settlement will enable Mr. Sean Dunn to focus on his health.

40. There is also the emotional component of resolving these litigations that have become horrific for both parties, and peace of mind is priceless.

41. The Settlement quantifies and reduces significant financial exposure for Mr. Sean Dunn and shields Mr. Sean Dunn from having a million-dollar judgment rendered non-dischargeable.

### **MR. SEAN DUNN'S PROFESSIONALS THINK THAT THE SETTLEMENT IS BENEFICIAL FOR MR. SEAN DUNN AND THAT IT SHOULD BE APPROVED**

42. Mr. Sean Dunn's professionals, David T. Azrin, Esq.; Ronald Quintero, C.P.A.; and Carlos J. Cuevas, Esq. are of the opinion that the Settlement is beneficial for Mr. Sean Dunn.

43. A $260,000.00 settlement caps Mr. Sean Dunn's exposure to LAK3, and terminates years of litigation.

44. In a worse case scenario Mr. Sean Dunn's exposure could be in excess of $1,000,000.00, and the debt could be non-dischargeable.

45. Under these circumstances, the Settlement fosters certainty and enables Mr. Sean Dunn to successfully emerge from Chapter 7.

## THE RISKS AND DETRIMENTS OF REJECTING THE SETTLEMENT

46. There are substantial risks and detriments in the rejection of the Settlement.

47. The entire LAK3 debt could be declared non-dischargeable, and become an insurmountable hurdle for Mr. Sean Dunn having a stable economic life.

48. Mr. Sean Dunn could be immersed in litigation for the next five years, which would be financially devastating.

49. Absent the Settlement Mr. Sean Dunn's fresh start could be substantially delayed.

50. The stress of the continued litigation could exacerbate Mr. Sean Dunn's poor health.

51. Under these circumstances, there are considerable risks in rejecting the Settlement.

## THE BUSINESS JUDGMENT RULE SUPPORTS THE APPROVAL OF THE SETTLEMENT

52. The business judgment rule has been defined as follows:

> As generally formulated and applied in corporate litigation the rule is that courts should defer to-should not interfere with-decisions of corporate directors upon matters entrusted to their business judgment except upon a finding of bad faith or gross abuse of their "business discretion."

*Lubrizol Enterprises, Inc. v. Richmond Metal Finishers, Inc. (In re Richmond Metal Finishers, Inc.)*, 756 F.2d 1043, 1047 (4th Cir. 1985).

53. Mr. Sean Dunn thinks that it is in his best interest that the Settlement be approved.

54. Mr. Sean Dunn's financial consultant thinks that effectuating the Settlement will be beneficial for him. Mr. Sean Dunn was represented by two law firms in his negotiations with

7

LAK3. Both law firms representing Mr. Sean Dunn support the approval of the Settlement. The Settlement was the product of arm's length negotiations.

55. If Mr. Sean Dunn prevailed in all phases of future litigation in the State Court Action and Adversary Proceeding it would be pyrrhic victory because of the costs that would be incurred and the emotional energy that would be expended.

56. Under these circumstances, the business judgment supports the approval of the Settlement.

**THE SETTLEMENT SATISFIES THE REQUIREMENTS FOR THE APPROVAL OF A SETTLEMENT UNDER FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019**

57. Federal Rule of Bankruptcy Procedure 9019(a) states:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a).

58. The decision whether to approve a particular compromise lies within the discretion of the Bankruptcy Judge. *In re Texaco, Inc.*, 84 B.R. 893, 901 (Bankr. S.D.N.Y. 1988).

59. In approving a compromise a Bankruptcy Court is required to make an informed and independent judgment as to whether a settlement is "fair and equitable" and "in the best interests of the estate." *In re WorldCom, Inc*., 347 B.R. 123, 137 (Bankr. .S.D.N.Y. 2006); *In re Drexel Burnham Lambert Group, Inc.,* 134 B.R. 493, 496 ( Bankr. S.D.N.Y. 1991).

60. A court is not required to conduct an independent investigation in formulating its opinion as to the reasonableness of the settlement. *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 493, 496 (Bankr. S.D.N.Y. 1991). Instead, a court must canvass the issues and determine whether the settlement falls below the lowest point in the range of

reasonableness. *Plaza Equities, LLC v. Pauker (In re Copperfield Investments, LLC)*, 401 B.R. 87, 91 (Bankr. E.D.N.Y. 2009); *In re Adelphia Communications Corp.*, 327 B.R. 143, 159 (Bankr. S.D.N.Y. 2005).

61. The settlement need not be the best that the debtor could have obtained. *In re Adelphia Communications Corp.*, 327 B.R. 143, 159 (Bankr. S.D.N.Y. 2005). The settlement must fall within the reasonable range of litigation possibilities. *In re Adelphia Communications Corp.*, 327 B.R. 143, 159 (Bankr. S.D.N.Y. 2005). The court is entitled to give weight to the opinion of the parties and their attorneys that the settlement is fair and equitable. *In re Ashford Hotels, Inc.*, 226 B.R. 797, 803 (Bankr. S.D.N.Y. 1998).

*The Iridium Factors*

62. The United States Court of Appeals for the Second Circuit has held that the following factors should be utilized in order to determine whether a settlement should be approved:

> Those interrelated factors are: (1) the balance between the litigation's possibility of success and the settlement's future benefits; (2) the likelihood of complex and protracted litigation, "with its attendant expense, inconvenience, and delay," including the difficulty in collecting on the judgment; (3) "the paramount interests of the creditors," including each affected class's relative benefits "and the degree to which creditors either do not object to or affirmatively support the proposed settlement"; (4) whether other parties in interest support the settlement; (5) the "competency and experience of counsel" supporting, and "[t]he experience and knowledge of the bankruptcy court judge" reviewing, the settlement; (6) "the nature and breadth of releases to be obtained by officers and directors"; and (7) "the extent to which the settlement is the product of arm's length bargaining."

*Iridium Operating LLC v. Official Committee of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 462 (2nd Cir. 2007).

*The Balance Between the Litigation's Possibility of Success and the Settlement's Future Benefits*

63. Mr. Sean Dunn faces substantial risks in proceeding with the State Court Action. A jury could find in favor of LAK3 and render a $2,000,000.00 verdict for the damages which this Court could hold the judgment is non-dischargeable.

64. Mr. Sean Dunn could prevail in the State Court Action and still be engulfed in appeals for the next three to five years.

65. Mr. Sean Dunn lacks the financial resources that LAK3 has at its disposable. Mr. Sean Dunn has conducted cost-benefit analysis. The benefits from the Settlement outweigh the risks of proceeding with two litigations: the State Court Action and the Adversary Proceeding.

66. The Settlement, if there is no default, caps Mr. Sean Dunn's liability at $260,000.00, which is a fraction of his potential liability. Therefore, prudence dictates that Mr. Sean Dunn proceed with the Settlement.

*The Likelihood of Complex and Protracted Litigation, "with its Attendant Expense, Inconvenience, and Delay," Including the Difficulty in Collecting on the Judgment*

67. As sure as the sun will rise tomorrow, absent a settlement, there will be complex and protracted litigation with the attendant expense, inconvenience and delay with LAK3.

68. Mr. Sean Dunn and LAK3 have been embroiled in litigation in the federal and state court systems since August 4, 2017.

69. The Settlement brings to a cessation contentious and protracted litigation. Therefore, Mr. Sean Dunn derives a significant benefit from the Settlement.

*The Paramount Interests of the Creditors," Including Each Affected Class's Relative Benefits "and the Degree to Which Creditors Either Do Not Object to or Affirmatively Support the Proposed Settlement*

70. The Settlement resolves LAK3's Bankruptcy Code Section 523(a) non-dischargeability action against Mr. Sean Dunn. Absent a default under the Settlement Agreement, LAK3 has a $260,00.00 non-dischargeable claim.

71. The Settlement also requires that LAK3 discontinue with prejudice its Objection to Discharge.

72. Pursuant to Local Bankruptcy Rule 4007-2(a), attached to this Motion are the Declarations of Sean M. Dunn and Carlos J. Cuevas, Esq. stating that no consideration has been promised or given directly or indirectly for the withdrawal of LAK3's Objection to Discharge. (Exhibits E & F).

73. Notice of the proposed discontinuance with prejudice of LAK3's Objection to Discharge is being provided to the entire creditor body, Trustee Fred Stevens, and the Office of the United States Trustee.

74. It is respectfully represented that LAK3's Objection to Discharge was tenuous. Mr. Sean Dunn's financial consultant, Ronald Quintero, C.P.A., has prepared a report providing a detailed explanation concerning Mr. Sean Dunn's finances. It is respectfully represented that the causes of action pursuant to Bankruptcy Code Sections 727(a)(3) and (a)(5) would be unsuccessful.

75. There is also an objection based upon Bankruptcy Code Section 727(a)(4)(A) that is meritless. LAK3 has alleged, upon information and belief, that Mr. Sean Dunn failed to schedule certain property. Mr. Sean Dunn has produced to his bankruptcy counsel documents demonstrating that at the time of the filing of this bankruptcy case that he did not

own the property in question. The Bankruptcy Code Section 727(a)(4)(A) cause of action could violate Federal Rule of Bankruptcy Procedure 9011(b) because these factual allegations are unsustainable.

76. Under these circumstances, the Settlement will not have a negative impact on the general creditor body.

### *Whether Other Parties in Interest Support the Settlement*

77. Mr. Sean Dunn anticipates that the creditor body will be indifferent because this bankruptcy case has been a two-party dispute between LAK3 and Mr. Sean Dunn.

### *The "Competency and Experience of Counsel" Supporting, and "[t]he Experience and Knowledge of the Bankruptcy Court Judge" Reviewing, the Settlement*

78. Mr. Sean Dunn and LAK3 were represented by competent and experienced counsel.

79. David T. Azrin, Esq. represents Mr. Sean Dunn in the State Court Action. Mr. Azrin is a partner with the law firm of Gallet, Dreyer & Berkey, LLP, and he is a former Notes Editor with the University of Michigan Law Review. Carlos J. Cuevas, Esq. is Mr. Dunn's bankruptcy counsel. Mr. Cuevas is a Yale Law School graduate, and he has forty years of legal experience.

80. LAK3 is represented in the State Court Action by Michael Gordon, Esq. Mr. Gordon is experienced commercial litigator. Avery Samet, Esq. is LAK3's bankruptcy counsel. Mr. Samet is a Harvard Law School graduate, and he has extensive bankruptcy and commercial litigation experience.

81. Judge Cecelia Morris a leading Bankruptcy Judge in the United States with more than twenty years of judicial experience. Judge Morris has written many important decisions in the area of consumer bankruptcy law.

82. This Court and counsel are well versed in bankruptcy law.

### *The Nature and Breadth of Releases to Be Obtained by Officers and Directors*

83. This *Iridium* factor is inapplicable.

### *The Extent to Which the Settlement Is the Product of Arm's Length Bargaining*

84. The Settlement is the product of arduous arm's length negotiations.

85. Mediation sessions were conducted in the federal and state court systems.

86. Judge Zuckerman presided over the settlement discussions that produced the Settlement.

87. The terms of the Settlement were placed on the record in the State Court Action. (Exhibit C).

### *The Settlement Satisfies the Iridium Factors*

88. As the preceding discussion establishes, the Settlement satisfies the requirement of the *Iridium* factors. Therefore, it is respectfully represented that this Court should approve the Settlement.

### **CONCLUSION**

89. It is respectfully submitted that for all the reasons set forth herein this Court should approve the Settlement.

WHEREFORE, the Movant respectfully requests that this Court enter an order approving a settlement among the Sean Dunn, LAK3, LLC and Gerald Dunn in a civil action entitled *LAK3, LLC v. Dunn et al*, Index No. 61510/2017, Supreme Court of the State of New York, County of Westchester; approving a settlement of *LAK3, LLC v. Dunn*, Adv. Pro. No. 18-9038(CGM), United States Bankruptcy Court for the Southern District of New York, including the discontinuance with prejudice of LAK,3 LLC's Objections to Mr. Sean Dunn's discharge; and granting such other and further relief as the Court deems just and equitable.

Dated: Yonkers, New York
      March 15, 2022

                                          **CARLOS J. CUEVAS, ESQ.**
                                          Attorney for Debtor-Defendant
                                          **SEAN M. DUNN**

                                          By:*/s/ Carlos J. Cuevas*
                                               Carlos J. Cuevas
                                                1250 Central Park Avenue
                                                Yonkers, New York 10704
                                                Tel. No. 914.964.7060
                                                Fax No. 914.423.6117
                                                Email ccuevas576@aol.com