KIRBY AISNER & CURLEY LLP
*Co-counsel for LAK3 LLC*
700 Post Road, Suite 237
Scarsdale, New York 10583
Tel: (914) 401-9500
Julie Cvek Curley, Esq.
jcurley@kacllp.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

| | |
|---|---|
| In re: | |
| | Chapter 7 |
| SEAN DUNN, | Case No. 18-36566 (CGM) |
| Debtor. | |

-----------------------------------------------------------X

### EX-PARTE
### APPLICATION FOR AN ORDER DIRECTING THE PRODUCTION
### OF DOCUMENTS PURSUANT TO BANKRUPTCY RULE 2004

**TO:** **CECELIA G. MORRIS,**
**U.S. BANKRUPTCY JUDGE:**

LAK3 LLC ("**LAK**"), creditor of Sean Dunn (the "**Debtor**") and party in interest in the above-captioned Chapter 7 Proceeding, by and through its undersigned counsel, submits this application (the "**Application**") pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") for entry of an order the ("**Order**") permitting LAK to issue a subpoena to the Internal Revenue Service (the "**IRS**") for the production of by related to a 1099 income of the Debtor from LAK purported reported for the 2019 tax year. In support of the Application, LAK respectfully represents as follows:

### JURISDICTION AND VENUE

1. The Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of the Application is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

2. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief requested include section 105(a) of Title 11 of the United States Bankruptcy Code (the "**Bankruptcy Code**") and Bankruptcy Rule 2004.

## BACKGROUND

4. On or about March 18, 2016, LAK hired the Debtor, Gerald Dunn ("**Jerry**"), and Well Dunn Maintenance & Contracting ("**Well Dunn**", together with the Debtor and Jerry, the "**State Court Defendants**") as general contractor to demolish an existing single-family residence and build a new single-family residence at a property owned by LAK.

5. Between June 27, 2016 through March 11, 2017, LAK paid to the State Court Defendants, in total, the sum of $840,828.22. In connection with these payments, LAK issued IRS Form 1099 for tax years 2016 and 2017 to the Debtor, which corresponded with the date and amount of payments made by LAK to the Debtor.

6. On or about June 19, 2017, LAK terminated the State Court Defendants, for cause.

7. Following LAK's termination of the State Court Defendants, no further relationship existed between LAK and State Court Defendants. No payments were made by LAK to the Debtor after 2017, and specifically, no payments were made by LAK to the Debtor in 2019.

8. In 2017, LAK filed suit against the Debtor, Gerald, and Well Dunn in the Supreme Court of the State of New York, Westchster County, in an action styled, LAK3, LLC v. Sean Dunn, Gerald Dunn, and Well Dunn Maintenance & Contracting (the "**State Court Action**") for fraud, breach of contract, breach of fiduciary duty, and lien law trust fund diversion.

9. On September 17, 2018 (the *"**Petition Date**"*), the Debtor filed a voluntary petition under chapter 7 of the Bankruptcy Code with the U.S. Bankruptcy Court, in the Southern District of New York, which was assigned case no. 18-36566 (CGM)(the "**Chapter 7 Case**").

10. The Debtor listed LAK as an unsecured creditor holding a noncontingent, disputed, unliquidated claim on Schedule E/F: Creditors Who Have Unsecured Claims on his Schedules of Liabilities filed with this Court.

11. On November 21, 2018, LAK commenced an adversary proceeding related to the Chapter 7 Case for a determination, *inter alia*, that the debts owed by the Debtor to LAK are nondischargeable under Section 523 of the Bankruptcy Code and a denial of the Debtor's discharge under Section 523 of the Bankruptcy Code, which was assigned case no. 18-09038 (the "**Adversary Proceeding**").

12. The Adversary Proceeding was settled pursuant to a settlement agreement between the Debtor and LAK, which was approved pursuant to an order of this Court dated April 25, 2022 (the "**Settlement Agreement**"), a copy of which is annexed hereto as Exhibit A. The Settlement Agreement provides that LAK "withdraw the United States IRS 1099 forms that LAK3 issues in response of Sean Dunn and Jerry Dunn…and take any reasonable steps to resolve the deficiency notice resulting from the 1099 forms." *See,* Settlement Agreement, ¶2.

13. LAK issued United States IRS 1099 forms for payment to the Debtor and Jerry for tax years 2016 and 2017, the two (2) years during which LAK remitted payment to the Debtor. Following approval of the Settlement Agreement, on or about May 20, 2022, LAK filed United States IRS 1096 forms for tax years 2016 and 2017 which corrected the 1099 income paid to the Debtor to $0. A copy of the United States IRS 1096 form and corrected 1099 forms for 2016 and 2017 are annexed hereto as Exhibit B.

14. At no time subsequent to 2017 did LAK remit payment to the Debtor and/or Jerry.

15. LAK did not issue any United States IRS 1099 forms for payment to the Debtor and/or Jerry for tax year 2019.

16. Notwithstanding that LAK did not issue a United States IRS 1099 form for tax year 2019, apparently the IRS reported 1099 income from LAK attributable to the Debtor for tax year 2019 in the amount of $322,868.75 (which is the same amount that LAK reported for tax year 2016) pursuant to the "Wage and Income Transcript" for tax year 2019 (see attached Exhibit C).

17. Although the Debtor has provided LAK with the "Wage and Income Transcript" for tax year 2019, the Debtor has not provided any other documents or information from the IRS to evidence the basis for the IRS reporting 1099 income from LAK to the Debtor for tax year 2019.

18. The 1099 income from LAK attributable to the Debtor for tax year 2019 is either (i) a mistake on the part of the IRS, or (2) the mis-reporting by a party other than LAK.

19. LAK has complied with the Settlement Agreement and wishes to resolve the issue regarding the mis-reported 1099 income paid by LAK to the Debtor for tax year 2019.

20. In order to resolve this mis-reporting issue, LAK is seeking to subpoena from the IRS a copy of the United States Form 1099 received by the IRS which the IRS relied upon in reporting $322,868.75 to the Debtor for tax year 2019, or such other filing relied upon by the IRS in reporting $322,868.75 income to the Debtor from LAK for tax year 2019.

21. Simply put, LAK is looking to review the "backup" documents relied upon by the IRS with respect to the United States Form 1099 for tax year 2019 attributable to payments to the Debtor from LAK.

**RELIEF REQUESTED AND BASIS FOR RELIEF**

22. By this Application, LAK seeks entry of an order allowing the issuance of a

subpoena to the IRS directing the production of documents related to the United States Form 1099 for tax year 2019 attributable to payments to the Debtor from LAK. A copy of the proposed subpoena (the "**Subpoena**") that LAK seeks permission to serve upon the IRS is attached hereto as Exhibit D.

23. Bankruptcy Rule 2004 provides that "[o]n motion of any party in interest, the court may order the examination of any entity." Fed. R. Bankr. P. 2004(a). Bankruptcy Rule 2004(c) further authorizes the Court to Order the production of documents. Fed. R. Bankr. P. 2004(c). Examinations under Bankruptcy Rule 2004 include within their scope, *inter alia*, any matter that may relate to the property and assets of the estate; the financial condition of the debtor; and any matter that may affect the administration of a debtor's estate. *See* Fed. R. Bankr. P. 2004(b); *see also In re Reconton Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004) ("The purpose of a Rule 2004 inquiry examination is to assist a party in interest in determining the nature and extent of the bankruptcy estate, revealing assets, examining transactions and assessing whether wrongdoing has occurred.").

24. Courts have consistently recognized the extraordinarily broad scope of an examination under Bankruptcy Rule 2004. *See In re Recoton Corp.*, 307 B.R. at 755. ("The scope of a Rule 2004 examination is very broad, broader even than discovery under the Federal Rules of Civil Procedure"). The scope of inquiry is extraordinarily broad because "[t]he purpose of a Rule 2004 examination is to assist a party in interest in determining the nature and extent of the bankruptcy estate, revealing assets, examining transactions and assessing whether wrongdoing has occurred." *Id.*

25. LAK is a scheduled creditor and party in interest in this case and "may raise and

may appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b)).

26. Insofar as the documents that LAK seeks to discover relate to LAK's obligations under the Settlement Agreement with the Debtor, the requested documents are within the permissible scope of a Rule 2004 examination.

27. Annexed hereto as <u>Exhibit E</u> is the proposed order which permits LAK to serve the Subpoena upon the IRS for the production of documents.

28. In light of the facts and authorities set forth above, LAK submits that its request for the production of documents pursuant to Bankruptcy Rule 2004 is well founded and, in light of this bankruptcy case, warranted. Accordingly, LAK respectfully requests the proposed Order be entered.

## **CONCLUSION**

29. For all of the foregoing reasons, the Debtor respectfully requests entry of an order allowing LAK to serve the Subpoena upon the IRS, and directing the IRS to respond to the Subpoena, together with such other and further relief as may be appropriate under the circumstances.

Dated: Scarsdale, New York
April 17, 2024

        KIRBY AISNER & CURLEY, LLP
        *Co-counsel for LAK3 LLC*
        700 Post Road, Suite 237
        Scarsdale, New York 10583
        (914) 401-9500

        By: */s/ Julie Cvek Curley*
             Julie Cvek Curley