Carlos J. Cuevas, Esq.                    Hearing Date: 5/13/25 @ 10:00 AM
Attorney for Debtor
1250 Central Park Avenue
Yonkers, New York 10704
Tel. No. 914.964.7060
Carlos J. Cuevas

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
POUGHKEEPSIE DIVISION
------------------------------------------------------------X

In re                                     Chapter 7

SEAN M. DUNN,                             Case No. 18-36566(CGM)

           Debtor.

------------------------------------------------------------X

## DEBTOR'S MOTION TO HOLD LAK3, LLC IN CIVIL CONTEMPT

**TO THE HON. KYU Y. PAEK,**
**UNITED STATES BANKRUPTCY JUDGE:**

     Sean M. Dunn by his attorney, Carlos J. Cuevas, Esq., for his Motion to Hold LAK3,

LLC in Civil Contempt respectfully represents:

## PRELIMINARY STATEMENT

1. The Debtor is compelled to prosecute this motion for civil contempt because

   LAK3, LLC ("LAK3") willfully and contumaciously violated the Order Approving Set-

   tlement Among Sean Dunn, LAK3 and Gerald Dunn entered on April 25, 2022 (the "Set-

   tlement Order") for 926 days. (Exhibit A).

2. LAK3 participated in drafting and sought the entry of the Settlement Order.

3. LAK3 had issued an erroneous 2019 1099 form to the Debtor for $322,868.00.

4. It took LAK3 926 days to issue a corrected 2019 1099 form for that reflected zero in-

   come.

1

5. LAK3's continuous contumacious violations of the Settlement Order have severely damaged the Debtor.

6. As set forth herein and the accompanying Declaration of Sean M. Dunn, the Debtor has suffered substantial emotional distress because of the erroneous LAK3 2019 1099 form issued to the Debtor for $322,868.00.

7. Consequently, the Debtor is seeking compensatory damages for his legal and accounting fees and emotional distress damages that emanated from LAK3's continuous, willful and egregious violations of the Settlement Order.

## INTRODUCTION AND PROCEDURAL HISTORY

8. On September 17, 2018, the Debtor filed a voluntary Chapter 7 petition. (Dkt. No. 1).

9. On September 18, 2018, Fred Stevens, Esq. was appointed the Interim Chapter 7 Trustee, and thereafter, he qualified as the Permanent Chapter 7 Trustee.

10. On November 16, 2018, LAK3 filed an adversary proceeding against the Debtor, *LAK3, LLC v. Dunn*, Adv. Pro. No. 18-9038(KYP), United States Bankruptcy Court for the Southern District of New York, Poughkeepsie Division (the "Adversary Proceeding"). (Dkt. No. 16).

11. On May 5, 2022, this Court entered the Order of Final Decree. (Dkt. No. 94). On May 5, 2022, this bankruptcy case was closed.

12. On April 3, 2024, Judge Morris granted the Debtor's motion to reopen bankruptcy case. (Dkt. No.102).

## THE SETTLEMENT ORDER

13. On April 25, 2022, this Court entered the Settlement Order. (Dkt. No. 93)(Exhibit A).

14. Consequently, as part of the settlement of the Adversary Proceeding the parties agreed that LAK3 would withdraw the United States IRS 1099 Forms that LAK3 issued with respect to Sean Dunn within seven days of the Effective Date, and that LAK3 would take any reasonable steps to resolve the deficiency notice resulting from the 1099 Forms. (Exhibit A)(Settlement Order, Exhibit A ¶ 2).

15. Paragraph 2 of the Settlement Order is a material provision of the settlement. As set forth herein, LAK3 erroneously issued three 1099 forms to the Debtor for tax years 2016, 2017, and 2019.[1]

16. Paragraph 2 of the Settlement Order requires that LAK3 withdraw all the 1099 forms that it issued concerning the Debtor, and that it would take any reasonable steps to resolve the deficiency notice resulting from the 1099 Forms. (Exhibit A)(Settlement Order, Exhibit A ¶ 2).

17. Paragraph 2 of the Settlement Order does not limit its applicability to any particular year or years for which LAK3 must take remedial action. (Exhibit A)(Settlement Order, Exhibit A ¶ 2).

**LAK 3'S WILLFUL AND CONTUMACIOUS REFUSAL TO RECTIFY ITS ERRORNEOUS 2019 1009 FORM ISSUED TO THE DEBTOR AND ITS WILLFUL AND CONTUMACIOUS VIOLATION OF THE SETTLEMENT ORDER**

18. After the entry of the Settlement Order LAK3 withdrew its 2016 and 2017 1099 forms that it had erroneously issued concerning the Debtor. (Dkt. No. 98-18)(Kleinschmidt Dec. ¶ 9). The LAK3 amended 2016 and 2017 1099 forms issued to the Debtor to reflect zero income. (Dkt. No. 98-18)(Kleinschmidt Dec. ¶ 9).

---

[1] LAK3 would subsequently amend the three erroneous 1099 forms, 2016, 2017, and 2019, that it had issued to the Debtor to reflect zero income.

19. Attached as Exhibits B & C are the Debtor's 2019 tax transcripts (the "Transcripts") that contain the income from the erroneous LAK3 2019 1099 form. (Exhibits B & C).

20. Page 5 of each of the Transcripts unequivocally states that LAK3 issued a Form 1099 to the Debtor for $322,868.00. (Exhibits B & C).

21. The Debtor denies that during 2019 he received $322,868.00 from LAK3.

22. Although LAK3 denied issuing the erroneous LAK3 2019 1099 form, the erroneous 2019 LAK 2019 1099 form contains all the tax information required for the issuance of a 1099 form that only LAK3 would possess. (Exhibits B & C).

23. The correct Federal Identification Number and address for LAK3 are set forth in the Tax Transcripts, which is sensitive information that only LAK3 and its accountants would know. (Exhibits B & C). LAK3 has never asserted that the Tax Transcripts contain LAK3's incorrect Federal Identification Number or address.

24. Only an LAK3 manager or its accountants would have access to the information that is necessary to prepare a LAK3 1099 form

25. It is also consequential that for tax year 2016 that LAK3 issued a 1099 form to the Debtor for $322,868.75, which is almost the exact amount of the erroneous LAK 2019 1099 form and for which it also subsequently issued a corrected 1099 form that reflected zero income. (Exhibits D & E).

26. It is apparent that Mr. Kleinschmidt directed LAK3 to issue false 1099 forms to the Debtor that had to be subsequently corrected. (Exhibit E).

27. However, as set forth herein, LAK3 unwaveringly refused to withdraw its erroneous 2019 1099 form that falsely stated that the Debtor had received $322,860.00 in income.

28. Prior to seeking judicial intervention in this Court the Debtor made several requests to LAK3 to comply with the Settlement Order and issue a corrected 2019 1099 form to the Debtor reflecting zero income.

29. Attached hereto as Exhibit F is the Declaration of David Azrin, Esq. and the exhibits thereto.

30. Subsequent to the entry of the Settlement Order David T. Azrin, Esq., the Debtor's state court litigation counsel, contacted Michael Gordon, Esq., LAK3's state court litigation counsel, concerning LAK3 withdrawing or correcting the erroneous LAK3 2019 1099 form issued to the Debtor. (Dkt. No. 96, Azrin Dec. ¶ 3)(Exhibit F).

31. Mr. Azrin sent Mr. Gordon numerous emails seeking LAK3's voluntary compliance with the Settlement Order. (Azrin Dec.¶¶ 4-10)(Exs. 1-8)(Exhibit F).

32. Although the Debtor made several requests to LAK3 for its compliance with Paragraph 2 of the Settlement Order, LAK3 contumaciously and willfully failed to comply with Paragraph 2 of the Settlement Order.

33. Mr. Azrin's Declaration and exhibits thereto detail the numerous requests that the Debtor made to LAK3 to withdraw its erroneous 2019 1099 Form issued to the Debtor. (Exhibit F)(Azrin Dec. ¶¶ 4-10)(Exhibits 1-7). The Debtor made its requests to LAK3 to withdraw the erroneous LAK3 erroneous 2019 1099 over an extended period of time. (Exhibit F)(Azrin Dec. ¶¶ 4-10)(Exhibits 1-7).

34. Mr. Azrin transmitted seven emails requesting that LAK3 withdraw its erroneous 2019 1099 for that it had issued to the Debtor. (Exhibit F)(Azrin Dec. ¶¶ 4-10)(Exhibits. 1-7).

35. Attached as Exhibit 8 to the Azrin Declaration is a letter dated January 29, 2024 from Mr. Gordon to Mr. Azrin. (Exhibit F, Azrin Dec. Ex. 8).

36. In the January 29, 2024 letter Mr. Gordon stated his disgust with the Debtor's efforts to

   have LAK3 comply with the Settlement Order:

   > This is the third time in less than a year that I have had to waste my time
   > and LAK3's money responding to your demonstrably false contention
   > that LAK3 is somehow responsible for the IRS recording income from
   > LAK3 to Sean Dunn and/or Well Dunn Construction Corp. in Tax Year
   > 2019. (Footnote omitted).

   (Exhibit F, Azrin Dec. Ex. 8).

37. Equally important, Mr. Gordon was emphatic that LAK3 would not take remedial action

   to correct the erroneous LAK3 2019 1099 form that it had issued to the Debtor:

   > But stop harassing us with a matter that has nothing to do with us. As I
   > pointed out to you in writing on October 30, 2023, July 31, 2023, and
   > April 25, 2023, ***LAK3 did not issue a 1099 to Sean Dunn, Gerry Dunn,
   > Well Dunn Construction Corp., or any other person or entity connected
   > to Sean Dunn or Well Dunn for Tax Year 2019***.  So, for the fourth and
   > final time, LAK3 cannot and will not 'file a corrected 1099 form for
   > 2019,' as no such form exists to correct." (Footnote omitted) (Exhibit B,
   > Azrin Dec. Ex. 8).

   (Exhibit F, Azrin Dec. Ex. 8).

38. Mr. Gordon's statements reflected LAK3's arrogance and its contumacious and willful

   refusal to comply with the Settlement Order. Furthermore, Mr. Gordon's statements

   demonstrate LAK3's dogmatic refusal to accept responsibility for the issuance of the er-

   roneous LAK3 2019 1099 form issued to the Debtor.

## **THE DEBTOR'S MOTION TO REOPEN THIS CHAPTER 7 CASE**

39. For approximately two years prior to the reopening of this bankruptcy case LAK3 refused

   to correct the erroneous 2019 1099 form that it had issued to the Debtor.

40. The Debtor sought to reopen this bankruptcy case because LAK3 was in breach of a ma-

   terial provision of the Settlement Order: The Settlement Order requires that LAK3 to

withdraw the United States IRS 1099 form that LAK3 issued with respect to the Debtor within seven days of the Effective Date, and that LAK3 will take any reasonable steps to resolve the deficiency notice resulting from the 1099 form it issued concerning the Debtor. (Exhibit A)(Settlement Order, Exhibit A ¶ 2).

41. LAK3's intransigent refusal to consensually comply with the Settlement Order compelled the Debtor to seek judicial intervention in this Court.

42. On March 25, 2024, the Debtor filed a motion to reopen this Chapter 7 case. (Dkt. No. 96). The Debtor filed the Motion to Reopen because of LAK3's obstinate and willful refusal to rectify its erroneous 2019 1099 form that it had issued to the Debtor. (Dkt. No. 96, Motion to Reopen ¶ 7).

43. The Debtor sought to hold LAK3 in civil contempt for its prolonged violation of the Settlement Order. (Dkt. No. 96, Motion to Reopen ¶¶ 20-23).

44. LAK3 strenuously opposed the motion to reopen. (Dkt. No. 98). LAK3 stated:

> There is no legitimate reason for Debtor to have filed this Motion. And there is no legitimate reason why LAK3 or this Court should have to waste time addressing it. As discussed below, this Court lacks jurisdiction to consider the motion, Debtor brought his claim in the wrong court, and that claim is utterly and demonstrably meritless.

(Dkt. No. 98-1)(Objection to Motion to Reopen ¶ 2).

45. Mr. Jay A. Friedman is a partner at the firm Perelson Weiner, which is an accounting firm that does accounting work for LAK3. (Dkt. No. 98-2)(Friedman Dec. ¶¶ 1-3).

46. Mr. Friedman did acknowledge that at the direction of LAK3 that his firm did issue 1099 forms to the Debtor for 2016 and 2017. (Dkt. No. 98-2)(Friedman Dec. ¶ 5).

47. In May 2022 at the direction of LAK3 and its counsel, Perelson Weiner issued amended 1099 forms for 2016 and 2017 to reflect zero income for the Debtor. (Dkt. No. 98-2)(Friedman Dec. ¶ 5).[2]

48. According to Friedman, LAK3 did correct two erroneously issued 1099 forms for 2016 and 2017 that were issued to the Debtor. (Dkt. No. 98-2)(Friedman Dec. ¶ 5).

49. Under oath Mr. Friedman stated the following concerning the erroneous LAK3 2019 1099 form issued to the Debtor:

> 3. My firm handled and one of my partners and I oversaw the handling by Perelson Weiner of any tax filings that LAK3 was required to make.
> 4. I know, from my own personal knowledge and my review of Perelson Weiner records for LAK3, that at no time did I or anyone else at Perelson Weiner ever issue an IRS Form 1099 to Debtor or any person or business connected to Debtor on behalf of LAK3 for Tax Year 2019.

(Dkt. No. 98-2)(Friedman Dec. ¶¶ 3-4).

50. Mr. Ned Kleinschmidt is the managing member of LAK3. (Dkt. No. 98-18)(Kleinschmidt Dec. ¶ 1).

51. Mr. Kleinschmidt is an Executive Director of RPA Advisors, LLC, a financial and turnaround services firm:

> Ned Kleinschmidt is an Executive Director at RPA specializing in financial and advisory turnaround services. For over twenty-five years, he has focused on advising lender groups and debtors in various distressed situations and bankruptcy matters. His consulting experience includes strategic planning, business plan analysis, complex negotiations, financings, mergers and acquisitions, interim management and fiduciary roles, cost reduction strategies, and forensic services.
>
> Mr. Kleinschmidt has extensive experience as an acting CEO and advisor to lenders in a large number of commodities related and hard asset industries, including almost all value chain segments of oil and gas, power generation, mining and minerals, ethanol and biofuels. Mr. Kleinschmidt has served as a member of the board of directors, Chairman of

---

[2] It must be noted that the 2016 and 2017 LAK3 1099 forms issued to the Debtor were also erroneous, and that they were subsequently corrected to reflect zero income.

the Board, and CEO of over a dozen companies, encompassing industries such as telecom, energy, automotive and manufacturing. He has also held CFO and controllership positions in the manufacturing, real estate, and senior and assisted living industries.

Prior to founding RPA Advisors in 2011, Mr. Kleinschmidt was a member of Capstone Advisory Group, and a Senior Managing Director with FTI Consulting. He was also an audit manager with Ernst & Young, LLP and worked for Policano & Manzo.

Mr. Kleinschmidt holds a B.A. in Public Accounting from Fordham University, and an M.B.A. in Finance from Pace University. He has been qualified as a Certified Public Accountant, and Certified Insolvency and Restructuring Advisor. He is also a member of the Association of Insolvency and Restructuring Advisors ("AIRA"), the Turnaround Management Association, the American Institute of Certified Public Accountants, and the New York Society of Certified Public Accountants. He is recognized as an expert on restructuring and energy issues and has presented, written, and been called upon to provide expert testimony in these areas.

https://rpaadvisors.com/our-team/ned-kleinschmidt/.

52. Although Mr. Kleinschmidt has been qualified as a C.P.A. and has an M.B.A., he directed

LAK3's accounting firm to issue 1099 forms for 2016 and 2017 to the Debtor that were

erroneous and subsequently had to be amended to reflect zero income. (Dkt. No. 98-

18)(Kleinschmidt Dec. ¶ 1).

53. Mr. Kleinschmidt made the following statements under oath concerning the erroneous

LAK3 2019 1099 form issued to the Debtor:

3. I have retained and directed the accounting firm of Perelson Weiner to prepare and file any tax forms that LAK3 has been required to file. No other firm or person has handled that work. The accountant at Perelson Weiner who handles that work is Jay A. Friedman, a Perelson Weiner Partner.

4. At no time did I or anyone else on behalf of LAK3 ever direct Mr. Friedman or anyone else at Perelson Weiner to issue an IRS Form 1099 to Debtor or any person or business connected to Debtor on behalf of LAK3 for Tax Year 2019.

. (Dkt. No. 98-18)(Kleinschmidt Dec. ¶¶ 3-4).

54. It was also Mr. Kleinschmidt's contention that "he" could not withdraw the erroneous LAK3 2019 1099 form because there was no such form to withdraw. (Dkt. No. 98-18)(Kleinschmidt Dec. ¶ 10).[3]

55. Judge Morris granted the motion to reopen. (Dkt. No. 102)(Order Reopening Bankruptcy Case).

56. In granting the motion to reopen Judge Morris stated:

> This Court also has the inherent power to enforce compliance with its orders through civil contempt. We're not at that yet. We're simply reopening the case. Debtor continued to resolve Creditor's failure to comply with the settlement order without judicial intervention for two years, and reopening the case would allow the Debtor the ability to prosecute any kind of motions it sees fit for failure to comply with the settlement order.

(Exhibit G)(Trans. 4/2/23 p.12, lns. 24-25, p. 13, lns.1-6).

**THE DOCUMENTS THAT THE IRS TRANSMITTED IN RESPONSE TO RULE 2004 ORDER AND SUBPOENAS ESTABLISHED THAT LAK3 ISSUED THE LAK3 2019 1099 FORM**

57. After this bankruptcy case was reopened, on April 17, 2024, LAK3 filed an Application for a Federal Rule of Bankruptcy Procedure 2004 Examination (Dkt. No. 105).

58. LAK3 sought to issue a subpoena to the IRS to obtain documents pertaining to the erroneous LAK3 2019 1099 form issued by LAK3 to the Debtor. (Dkt. No. 105)(LAK3 Rule 2004 App., Ex E).

59. Thereafter, Judge Morris granted LAK3's Federal Rule of Bankruptcy Procedure 2004 Examination Application. (Dkt. No. 107).

---

[3] Contrary to Mr. Kleinschmidt's statement under oath, LAK3 did subsequently issue a corrected 2019 1099 form reflecting zero income.

60. On April 25, 2024, the Debtor filed an Application for a Federal Rule of Bankruptcy Procedure 2004Examination to obtain documents from the IRS concerning the erroneous LAK3 2019 1099 form issued to the Debtor. (Dkt. No. 108).

61. The Debtor contended that he needed to resolve the erroneous 2019 1099 form that he received from LAK3 because LAK3 steadfastly refused to retract or amend to zero its erroneous 2019 1099 form:

> 11. Attached as Exhibit B is a true copy of Mr. Dunn's 2019 tax transcript (the "Transcript").
> 12. The Transcript unambiguously states that for tax year 2019 that LAK3 issued a 1099 Form for $322,868.00.
> 13. For two years Mr. Dunn has attempted to have LAK3 retract the erroneous LAK3 2019 1099 Form.
> 14. LAK3 has steadfastly denied issuing a 2019 1099 Form to Mr. Dunn.
> 15. Mr. Dunn seeks to obtain the documents pertaining to the LAK3 2019 1099 Form, including the Form 1096 that is associated with the LAK3 2019 1099 Form.

(Dkt. No. 108, Debtor's Rule 2004 App. ¶¶ 11-15).

62. On April 26, 2024, Judge Morris granted the Debtor's Federal Rule of Bankruptcy Procedure 2004 Application. (Dkt. No.110).

63. On April 30, 2024, counsel for the Debtor received a fax transmission from the IRS. (Exhibit H).

64. The 2019 1099 form attached to the IRS fax transmission contains the Debtor's social security number and states that it was issued to the Debtor by LAK3. (Exhibit H).

65. Equally important, the 2019 1099 form attached to the IRS fax transmission unequivocally states that the 2019 1099 form payer was LAK3. (Exhibit H). The 2019 1099 form attached to the IRS fax transmission contains LAK3's federal identification number and address. (Exhibit H).

66. An attempt was made by LAK3 to obtain Form 1096, which is the form that a payer submits to the IRS with Form 1099; concerning the LAK3 2019 1099 Form. (Exhibit I). However, this effort was fruitless because the IRS destroys the 1096 Form when it is entered into the system. (Exhibit I).

67. Significantly, the correspondence from the IRS dated September 24, 2024, states that the payer for the for the LAK3 2019 1099 Form is LAK3. (Exhibit I).

68. All the correspondence received from the IRS in response to the subpoenas and subsequent correspondence from the LAK3 and the Debtor stated that the payer and issuer of the erroneous LAK3 2019 1099 form is LAK3.

69. On or about of November 6, 2024, Perelson Weiner LLP transmitted to the IRS a corrected 1099 Form for 2019 that reflected zero income. (Exhibit J).

70. It took LAK3 926 days to comply with the Settlement Order and issue a corrected 2019 1099 form that reflected zero income. (Exhibit JH).

71. Therefore, contrary to Mr. Kleinschmidt's sworn Declaration, LAK3 did correct its erroneous 2019 1099 form by submitting a corrected 2019 1099 form that reflected zero income.

72. Consequentially, as set forth herein, the Debtor's legal team expended a significant amount of time in obtaining compliance from LAK3 with the Settlement Order.

73. Equally important, as set forth herein, LAK3 unnecessarily forced the Debtor to endure a horrific period of torment from the IRS that made his life an insufferable nightmare.

74. The Debtor has been damaged by LAK3's protracted, willful and contumacious breach of the Settlement Order.

## JURISDICTION

75. The Court has jurisdiction over this motion for contempt pursuant to 28 U.S.C. §§ 157

and 1334 and the *Amended Standing Order of Reference* (M-431), dated January 31, 2012

(Preska, C.J.), referring to the Bankruptcy Judges of the Southern District of New York

bankruptcy cases filed in this District as well as proceedings arising under title 11 or aris-

ing in or related to a bankruptcy case. This matter is a core proceeding pursuant to 28

U.S.C. § 157(b)(2)(N). This Court has jurisdiction to interpret and enforce the Settlement

Order. *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) ("[T]he Bankruptcy

Court plainly had jurisdiction to interpret and enforce its own prior orders.").

## LEGAL ARGUMENT

A. *Pursuant to Bankruptcy Code Section 105(a), the Bankruptcy Court has the Authority to Issue a Civil Contempt Order*

76.  The contempt power serves to protect the due and orderly administration of justice and to

maintain the dignity of the court. *CBS Broadcasting, Inc. v. FilmOn.com, Inc.,* 814 F.3d

91, 98 (2nd Cir. 2016).

77. Bankruptcy Code Section 105(a) vests a bankruptcy court with the authority to issue a

civil contempt order. *In re: Old Concrete Co., Inc. f/k/a Titan Concrete, Inc.*, 2025 WL

567126 *7 (Bankr. S.D.N.Y. 2025).

78. The Second Circuit Court of Appeals has made the following statements concerning

Bankruptcy Code Section 105(a):

> The statutory contempt powers given to a bankruptcy court under §
> 105(a) complement the inherent powers of a federal court to enforce its
> own orders.... [Section] 105(a) does not itself create a private right of ac-
> tion, but a court may invoke § 105(a) if the equitable remedy *utilized* is
> demonstrably necessary to preserve a right elsewhere provided in the
> Bankruptcy Code.... These powers are in addition to whatever inherent
> contempt powers the court may have and must include the award of

monetary and other forms of relief to the extent such awards are neces-
sary and appropriate to carry out the provisions of the Bankruptcy Code
and provide full remedial relief.

*Solow v. Kalikow (In re Kalikow)*, 602 F.3d 82, 96-97 (2d Cir. 2010).

B.  *There is Clear and Convincing Proof that LAK3 Violated the Settlement Order;
Therefore, LAK3 Committed Civil Contempt*

79.  The Second Circuit has ruled that a movant must prove the following to hold a party in civil contempt: a) the order that the party failed to comply with is clear and unambiguous; b) the proof of noncompliance is clear and convincing, and c) the party has not diligently attempted to comply in a reasonable manner. *CBS Broadcasting, Inc. v. FilmOn.com, Inc.*, 814 F.3d 91, 98 (2nd Cir. 2016).

80. The federal inferior courts of the Second Circuit are bound by decisions by the Second Circuit or the Supreme Court until the decision is overruled. *Ithaca College v. N.L.R.B.*, 623 F.2d 224, 228 (2nd Cir. 1980). It is well settled law that a Second Circuit panel remains bound by a prior decision of the Second Circuit until it is overruled by an *en banc* panel or the Supreme Court. *Medunjanin v. U.S.*, 99 F.4th 129, 135 (2nd Cir. 2024).

81. The Supreme Court in *Taggart v. Lorenzen*, 587 U.S. 554, 557 (2019) solely determined the standard for adjudicating civil contempt of the discharge injunction. The Court stated:

> We conclude that neither a standard akin to strict liability nor a purely subjective standard is appropriate. Rather, in our view, a court may hold a creditor in civil contempt for violating a discharge order if there is *no fair ground of doubt* as to whether the order barred the creditor's conduct. In other words, civil contempt may be appropriate if there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful.

*Id.* at 557.

82. It is respectfully submitted that the standard that is being employed to adjudicate civil contempt in the Second Circuit is the standard enunciated in *CBS Broadcasting, Inc. v.*

*FilmOn.com, Inc.,* 814 F.3d 91, 98 (2nd Cir. 2016). *See, Manus v. Pincione*, 2025 WL 5600750 *3 (S.D.N.Y. 2025); *Nunez v. New York City Department of Correction*, 2024 WL 4896317 *18 (S.D.N.Y. 2024).

83. Civil contempt is appropriate if there is no reasonable basis for concluding that the party's conduct might be lawful. *In re: Old Concrete Co., Inc. f/k/a Titan Concrete, Inc*., 2025 WL 567126 *7 (Bankr. S.D.N.Y. 2025).

84. Recently, Judge Morris made the following statements concerning the quantum of proof necessary to prove civil contempt:

> "In the context of civil contempt, the clear and convincing standard requires a quantum of proof adequate to demonstrate 'reasonable certainty' that a violation occurred." *In re Chief Exec. Officers Clubs*, 359 B.R. 527, 535 (Bkrtcy.S.D.N.Y. 1995). Courts should only resort to civil contempt if there is no "fair ground of doubt" about a party's wrongful conduct. *Taggart*, 139 S. Ct. at 1801. The standard is an objective one: A party's "subjective belief that she was complying with an order ordinarily will not insulate her from civil contempt if that belief was objectively unreasonable." *Id.* at 1797.

*In re Johns-Manville Corp*., 666 B.R. 476, 484 (Bankr. S.D.N.Y. 2025).

1. *The Settlement Order is Clear and Unambiguous*

85. An order is clear and unambiguous where it is specific and definite enough to notify those within its purview of the conduct that is required to be in compliance with the order. *Nunez v. New York City Department of Correction*, 2024 WL 4896317 *18 (S.D.N.Y. 2024).

86. In *Nunez*, Chief Judge Swain made the following comments concerning that the clear and unambiguous requirement had been established:

> Not only were the orders at issue entered on consent, after Defendants participated in negotiating and drafting their precise terms, but Defendants have never suggested to the Court that additional clarity was needed.

> Because the language of the orders is clear and unambiguous, the first prong of the contempt standard is satisfied.

*Id.* at *18.

87. As in *Nunez*, the Settlement Order was entered on consent after LAK3 participated in negotiating and drafting the precise terms of the Settlement Order.

88. As in *Nunez*, LAK3 has never contended that additional clarity was required concerning the Settlement Order.

89. LAK3 has never sought to modify the Settlement Order because it contended it was ambiguous.

90. The Settlement Order directed that LAK3 would withdraw the United States IRS 1099 Forms that LAK3 issued with respect to Sean Dunn within seven days of the Effective Date, and that LAK3 would take any reasonable steps to resolve the deficiency notice resulting from the 1099 Forms. (Exhibit A)(Settlement Order, Exhibit A ¶ 2).

91. Indeed, after the entry of the Settlement Order LAK3 corrected its erroneous 1099 forms for 2016 and 2017. (Dkt. No. 98-2)(Friedman Dec. ¶ 5).

92. It is evident that LAK3 understood what action it was required to undertake to be in compliance with the Settlement Order.

93. Under these circumstances, the Settlement Order is clear and unambiguous.

94. Consequently, the first prong of the contempt standard is satisfied. *Nunez v. New York City Department of Correction*, 2024 WL 4896317 *18 (S.D.N.Y. 2024); *see also*, *In re Johns-Manville Corp.*, 2025 WL 354974 **6-7 (Bankr. S.D.N.Y. 2025).

    2.  *There is Clear and Convincing Evidence that LAK3 has Violated the Settlement Order*

95. A party's failure to comply with a court order must be demonstrated by clear and convincing evidence. *In re Johns-Manville Corp.*, 666 B.R. 476, 485 (Bankr. S.D.N.Y. 2025).

96. In *Nunez*, Chief Judge Swain found that the defendants' non-compliance had been demonstrated by clear and convincing evidence:

> Second, the proof of Defendants' noncompliance with the Contempt Provisions is clear and convincing. As summarized above, Plaintiffs point to copious, undisputed evidence in the record to support their argument that Defendants are not in compliance with eighteen provisions of four court orders related to failures (1) to implement the use of force directive; (2) to conduct adequate use of force investigations and hold staff accountable; (3) to correct failures in security and basic correctional practice; (4) to adequately supervise staff and facility leadership; (5) to effectively deploy uniform staff to adequately supervise incarcerated individuals; (6) to curb the emergency response teams' excesses; and (7) to ensure the safety of young people in custody. The plentiful evidence of non-compliance with the eighteen Contempt Provisions, as summarized above and detailed in the parties' proposed findings of fact, is clear and convincing—and more than enough to satisfy the second prong of the contempt standard.

*Nunez v. New York City Department of Correction*, 2024 WL 4896317 *18 (S.D.N.Y. 2024).

97. The pertinent part of the Settlement Order provides that LAK3 would withdraw the United States IRS 1099 Forms that LAK3 issued with respect to Sean Dunn within seven days of the Effective Date, and that LAK3 would take any reasonable steps to resolve the deficiency notice resulting from the 1099 Forms. (Exhibit A)(Settlement Order, Exhibit A ¶ 2).

98. On April 25, 2022, this Court entered the Settlement Order. (Dkt. No. 93)(Exhibit A).

99. On or about November 6, 2024, Perelson Weiner LLP transmitted to the IRS a corrected LAK3 20191099 form that reflected zero income for the Debtor. (Exhibit G).

100. It took LAK3 926 days to comply with the Settlement Order. (Exhibit G).

101. On or about of November 6, 2024 issue a corrected 2019 1099 Form that reflected zero income. (Exhibit G).

102.     Under these circumstances, there is clear and convincing evidence that LAK3 violated the Settlement Order. *Mister Softee, Inc. v. Tsirkos*, 2014 WL 2971106 *4 (S.D.N.Y. 2014); *see also*, *In re Johns-Manville Corp.*, 666 B.R. 476, 484-87 (Bankr. S.D.N.Y. 2025).

*3. LAK3 has not Diligently Attempted to Comply with Settlement Order in a Reasonable Manner Since the Order was Issued*

103.     Chief Judge Swain has made the following comments as to what constitutes reasonable diligence in complying with a court order:

> "Reasonable diligence, at the very least, requires a party to develop reasonably effective methods of compliance." *Zino Davidoff SA v. CVS Corp.*, No. 06-CV-15332-RJS, 2008 WL 1775410, at *8 (S.D.N.Y. Apr. 17, 2008). While it is not required that a party "exhaust all means available" to comply, *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 293 (2d Cir. 2008), "[m]ore is required than a grudging, half-hearted or foot dragging attempt at compliance," *Chere Amie, Inc. v. Windstar Apparel, Corp.*, 175 F. Supp. 2d 562, 565 (S.D.N.Y. 2001) (quoting 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 30:22, at 43 (4th ed. 1999)). The relevant inquiry is whether a defendant has been "reasonably diligent and energetic in attempting to accomplish what was ordered." *Aspira of N.Y. v. Bd. of Educ. of the City of N.Y.*, 423 F. Supp. 647, 654 (S.D.N.Y. 1976) (finding contempt where government agency "neglected to marshal [its] own resources, assert [its] high authority, and demand the results needed from subordinate persons and agencies in order to effectuate the course of action required by the consent decree"). "Reasonably energetic compliance, at a minimum, requires a party 'to energetically police' the effectiveness of its compliance measures and, when advised that such measures have fallen short, to modify them accordingly." *Zino Davidoff*, 2008 WL 1775410, at *8 (quoting *Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.*, 885 F.2d 1, 5 (2d Cir. 1989)).

*Nunez v. New York City Department of Correction*, 2024 WL 4896317 *19 (S.D.N.Y. 2024).

104.     In *Nunez*, the Chief Judge Swain found that for nine years the defendants failed to comply with the contempt provisions of a consent decree.

105.     In the case at bar, the record amply establishes that LAK3 was neither diligent, nor reasonable in attempting to comply with the Settlement Order.

106.     It took LAK3 926 days, more than two-and-one-half years, to comply with the Settlement Order.

107.     Mr. Azrin wrote several emails to Mr. Gordon requesting that LAK3 take remedial action to correct the bogus LAK3 2019 1099 form. (Exhibit F, Azrin Dec. ¶¶ 3-11, Exs. 1-8).

108.     LAK3 was unreasonable and intransigent, and it willfully refused to comply with the Debtor's requests to comply with the Settlement Order. (Exhibit F, Azrin Dec. ¶¶ 3-11, Exs. 1-8).

109.     In the January 29, 2024, letter Mr. Gordon unequivocally stated that it was not LAK3 that issued LAK3 2019 1099 form to the Debtor. (Exhibit B, Azrin Dec. Ex. 8). Equally important, Mr. Gordon stated: "So, for the fourth and final time, LAK3 cannot and will not 'file a corrected 1099 form for 2019,' as no such form exists to correct." (Exhibit B, Azrin Dec. Ex. 8).

110.      Mr. Kleinschmidt admitted that he did not take any action to reasonably comply with the Settlement Order with respect to the erroneous LAK3 2019 1099 form. (Kleinschmidt Dec. ¶¶ 9-10).

111.     LAK3 was not diligent in complying with the Settlement Order.

112.     The Debtor had to reopen this bankruptcy case because of LAK3's lack of diligence in complying with the Settlement Order.

113.     It took LAK3 926 days to comply with the Settlement Order and issue a corrected 2019 1099 Form that reflected zero income. (Exhibit H).

114.     The record in the case at bar conclusively proves that LAK3 was not diligent, and

it did not reasonably attempt to comply with the Settlement Order. *Nunez v. New York*

*City Department of Correction*, 2024 WL 4896317 *19 (S.D.N.Y. 2024); *Mister Softee,*

*Inc. v. Tsirkos*, 2014 WL 2971106 *4 (S.D.N.Y. 2014).

115.     Under these circumstances, the Debtor has proven by clear and convincing evi-

dence that LAK3 has committed civil contempt. *Nunez v. New York City Department of*

*Correction*, 2024 WL 4896317 *19 (S.D.N.Y. 2024); *Mister Softee, Inc. v. Tsirkos*, 2014

WL 2971106 *4 (S.D.N.Y. 2014); *see also*, *In re Johns-Manville Corp.*, 2025 WL 354974

**7-8 (Bankr. S.D.N.Y. 2025).

4.   *Under the Taggart Standard LAK3 has Committed Contempt Because There is No*
     *Objectively Reasonable Basis for Concluding that LAK3's Conduct is Lawful*

116.     In *In re: Old Concrete Co., Inc. f/k/a Titan Concrete, Inc.*, 2025 WL 567126 *7

(Bankr. S.D.N.Y. 2025) this Court adopted a new standard for regular civil contempt that

has not been adopted by the Second Circuit Court of Appeals.

117.     The following is the exact standard that Justice Breyer set forth in *Taggart*:

> We conclude that neither a standard akin to strict liability nor a purely
> subjective standard is appropriate. Rather, in our view, a court may hold
> a creditor in civil contempt for violating a discharge order if there is *no*
> *fair ground of doubt* as to whether the order barred the creditor's conduct.
> In other words, civil contempt may be appropriate if there is no objec-
> tively reasonable basis for concluding that the creditor's conduct might
> be lawful.

*Taggart v. Lorenzen*, 587 U.S. 554, 557 (2019).

118.     In the case at bar, LAK3 should be held in civil contempt because there is no rea-

sonable basis for concluding that LAK3's conduct was reasonable.

119.     Although LAK3 denied issuing the erroneous LAK3 2019 1099 form, an investigation revealed that LAK3 had indeed issued the erroneous LAK3 2019 1099 form to the Debtor.

120.     Every document obtained from the IRS stated that it was LAK3 that had issued the erroneous 2019 1099 form to the Debtor.

121.     Every document obtained from the IRS contained LAK3's Federal Identification Number and address.

122.     As set forth in Mr. Lang's Declaration, the IRS does not issue a 1099 form; rather, it is the payer of the income that issues the 1099 form. (Lang Dec. ¶ 8).

123.     LAK3'S issuance of a corrected LAK3 2019 1099 form is an admission that it issued the erroneous LAK3 2019 1099 form to the Debtor.

124.     It was only after 926 days after the entry of the Settlement Order that LAK3 issued a corrected 2019 1099 form to the Debtor.

125.     Moreover, LAK3 engaged in a pattern and practice of issuing false 1099 forms to the Debtor.  LAK3 issued three false 1099 forms to the Debtor for 2016, 2017 and 2019 for which it to subsequently issue corrected 1099 forms.

126.     Equally important, LAK3 submitted declarations of Messrs. Kleinschmidt and Friedman which now appear to contain false representations to this Court. (Kleinschmidt Dec. ¶¶ 8-9)(Friedman Dec. ¶ 4).

127.     Under these circumstances, it is respectfully submitted that LAK3 should be held in civil contempt. *In re: Old Concrete Co., Inc. f/k/a Titan Concrete, Inc.*, 2025 WL 567126 (Bankr. S.D.N.Y. 2025).

5. *The Debtor is Entitled to Receive Compensatory Damages Because of LAK3's Heinous and Willful Civil Contempt Concerning the Settlement Order*

    a. *Under the Law of Civil Contempt the Debtor is Entitled to Compensatory Damages*

128. Under the law of civil contempt a victim of contempt, such as the Debtor, is entitled to be compensated for his or her losses resulting from the contemnor's civil contempt. *Taggart v. Lorenzen*, 587 U.S. 554, 557 (2019).

129. Bankruptcy courts possess inherent authority and discretion to fashion appropriate sanctions for civil contempt. *In re Lonce*, 2025 WL 828829 *6 (Bankr. S.D.N.Y. 2025).

    b. *The Debtor is Entitled to an Award of Professional Fees*

        i. *The Debtor is Entitled to an Award of His Attorneys' Fees*

130. A bankruptcy court has the authority to award attorneys' fees to the victim of contempt. *Law offices of Francis J. O'Reilly, Esq. v. Selene Finance, L.P. (In re DiBattista)*, 33 F.4th 698, 702-03 (2nd Cir. 2022); *Weitzman v. Stein*, 98 F.3d 717 (2nd Cir. 1996).

131. For almost two years, the Debtor diligently attempted to consensually have LAK3 comply with the Settlement Order. The Debtor's counsel sent several emails to obtain LAK3's compliance with the Settlement Order.

132. However, LAK3 was intransigent, and it refused to comply with the Settlement Agreement.

133. The Debtor had to seek to reopen this bankruptcy case. LAK3 vigorously fought to prevent the reopening of this bankruptcy case.

134. The Debtor had to apply to this Court for a Federal Rule of Bankruptcy Procedure 2004 Order to obtain documents from the IRS.

135.     Thereafter, Debtor's counsel continued to communicate with the IRS to obtain ev-

idence concerning the stated payer of the erroneous LAK3 2019 1099 form issued to the

Debtor.

136.     The Debtor incurred substantial attorneys' fees because for 926 days LAK3 con-

tinuously, willfully and contumaciously violated the Settlement Order. In the case at bar,

LAK3's contempt is willful, and therefore, this Court should award attorneys' fees to the

Debtor. *Weitzman v. Stein*, 98 F.3d 717, 719 (2nd Cir. 1996).

  ii.     *The Debtor is Entitled to an Award of His Expert's Fees*

137.     The Debtor has incurred expert's fees in the prosecution of this motion for civil

contempt for which he should be compensated.

138.     The Debtor was compelled to retain the services of Brandon Lang, CPA as an ex-

pert witness as a component of the prosecution of this motion for contempt.

139.     Mr. Lang's fees are a consequence of LAK3's violation of the Settlement Order.

140.     Accordingly, the Debtor is entitled to an award for his expert fees incurred in the

prosecution of this motion for contempt. *Taggart v. Lorenzen*, 587 U.S. 554, 560 (2019).

  iii.     *The Debtor is Entitled to be Awarded Emotional Distress Damages Be-*
    *cause of LAK3's Contumacious and Prolonged Violation of the Settlement*
    *Order*

141.     Compensatory civil contempt sanctions are remedial in nature, and therefore, fed-

eral courts have a longstanding authority to enter broad compensatory awards for civil

contempt. *Valdellon v. PHH Mortgage Corp. (In re Valdellon)*, 665 B.R. 420, 434 (Bankr.

9th Cir. 2024).

142.	A debtor who is the victim of civil contempt is entitled to receive compensatory damages for his or her emotional distress damages. *In re Lonce*, 2025 WL 828829 *6 (Bankr. S.D.N.Y. 2025); *In re Manzanares*, 345 B.R. 773, 794 (Bankr. S.D.Fla. 2006); *see also*, *Sterling v. Southlake Nautilus Health & Raquet Club, Inc.*, 736 F.Supp.3d 626, 634 (N.D.Ind. 2024).

143.	One court has made the following statements concerning civil contempt and emotional distress damages:

> Emotional distress constitutes actual damages. *In re Nibbelink*, 403 B.R. 113, 120–21 (Bankr.M.D.Fla.2009). Emotional distress is expected to occur where the conduct is egregious or extreme. *Id.* at 120. Significant emotional distress is readily apparent where the conduct is egregious and corroborating medical evidence is not required. *Dawson v. Washington Mut. Bank, F.A. (In re Dawson)*, 390 F.3d 1139, 1150 (9th Cir.2004). Entitlement to emotional distress damages exists "even in the absence of an egregious violation, if the individual in fact suffered significant emotional harm and the circumstances surrounding the violation make it obvious that a reasonable person would suffer significant emotional harm." *Id.* at 1151.

*In re Wassem*, 456 B.R. 566, 572 (Bankr. M.D.Fla. 2009).

144.	In *Lansaw v. Zokaites (In re Lansaw)*, 853 F.3d 657 (3rd Cir. 2017) a landlord was found to have committed multiple willful and egregious violations of the automatic stay.

145.	The Third Circuit ruled that Bankruptcy Code Section 362(k) embraces emotional harms from stay violations. *Id* at 668.

146.	The court stated that there is no rigid rule concerning the necessity of medical evidence:

> Depending on the circumstances of each individual case, corroborating medical evidence may be required to prove emotional harm and causation. But we decline to adopt a bright-line rule requiring such evidence to prove emotional-distress damages under § 362(k)(1).

*Id.* at 669.

147.    The Third Circuit held that the facts in a case, such as the case at bar, can suffice

for proof of emotional distress damages:

> And we agree with the Bankruptcy Court that, at least where a stay violation is patently egregious, a claimant's credible testimony alone can be sufficient to support an award of emotional-distress damages. *See Dawson*, 390 F.3d at 1150. "We are confident that courts ... can ensure that plaintiffs recover only for actual injury even in the absence of expert medical testimony in such cases." *Bolden*, 21 F.3d at 36.

> We conclude, moreover, that the Lansaws presented sufficient evidence of emotional distress to support the Bankruptcy Court's award. Testimony at trial demonstrated that Zokaites willfully and egregiously violated the automatic stay.

> *Id.*

148.    In summary, the Third Circuit affirmed the awards of $7,500.00 in compensatory

damages and $40,000.00 in punitive damages for the egregious stay violations.

149.    Another germane case in which a bankruptcy court awarded emotional distress

damages for civil contempt is *In re Wassem*, 456 B.R. 566 (Bankr. M.D.Fla. 2009.

150.    Emotional distress damages were warranted because of the creditor's egregious

disregard of the discharge injunction. The court stated:

> Aurora's actions constitute willful and intentional violations of the Debtor's discharge injunction. *In re Hardy,* 97 F.3d at 1390; *In re Jove,* 92 F.3d at 1555. Aurora knew the discharge was entered and intended its actions which violated the discharge injunction. It is in contempt of Court for its continuous and repeated failures to honor the discharge injunction of 11 U.S.C. Section 524(a). 11 U.S.C. §§ 524(a), 105(a); *In re Hardy,* 97 F.3d at 1390; *In re Jove,* 92 F.3d at 1555. Aurora committed forty-four separate willful violations of the discharge injunction.

> Aurora's repeated failures to honor the discharge injunction are intentional, egregious, and extreme. It acted in bad faith. Its conduct was vexatious, wanton, and oppressive. The Debtor's discharge constitutes an order of this Court essential to the Debtor's fresh start. Aurora willfully disobeyed the discharge injunction.

> The Debtor has suffered actual damages as a direct result of Aurora's
> willful actions. Aurora caused him to suffer significant aggravation,
> emotional distress, and inconvenience each time it called him post-dis-
> charge. It caused him to suffer significant aggravation, emotional distress
> and inconvenience on forty-four separate occasions. It caused him to in-
> cur attorney's fees and costs.

*Id.* at 572.

151.      In the case at bar, there is ample evidence to demonstrate that the Debtor has suffered emotional distress damages.

152.      LAK3 willful violations of the Settlement Order occurred over a period of 926 days.

153.      The Debtor has suffered emotional distress damages because of the issuance of the erroneous LAK3 2019 1099 that it failed to rectify in accordance with the Settlement Order. (Dunn Dec. ¶ 56).

154.      The Debtor is married, and he is the father of young children. (Dunn Dec. ¶ 57). The erroneous LAK3 2019 1099 form damaged the Debtor's family and him. (Dunn Dec. ¶ 57).

155.      The erroneous 2019 LAK 1099 form issued by LAK3 caused stress in the Debtor's marriage. (Dunn Dec. ¶ 58).

156.      The erroneous tax debt created by the erroneous LAK3 2019 1099 form inhibited the Debtor's financial ability to provide for his family. (Dunn Dec. ¶ 59).

157.      The erroneous LAK3 2019 1099 form has resulted in the issuance of tax liens against the Debtor. (Dunn Dec. ¶ 60).

158.      The erroneous LAK3 2019 1099 form destroyed the Debtor's credit score. (Dunn Dec. ¶ 61).

159.     The erroneous LAK3 2019 1099 has made it impossible for the Debtor to obtain a mortgage because of the pending tax liens caused solely by LAK3's willful failure to comply with the Settlement Order. (Dunn Dec. ¶ 62).

160.     In the interim, house prices and mortgage rates have increased. (Dunn Dec. ¶ 63).

161.     The Debtor continues to rent, and his children do not have their own home, and this pains the Debtor as a father who loves his children. (Dunn Dec. ¶ 64).

162.     The inability to buy a house for his family has been emotionally excruciating because the Debtor feels that he has failed my children. (Dunn Dec. ¶ 65).

163.     The IRS has been relentless in its collection efforts against the Debtor. (Dunn Dec. ¶ 66).

164.     Throughout the past years the IRS has been aggressively pursuing the Debtor to collect the purported taxes due from the erroneous LAK3 2019 1099 form issued to him. (Dunn Dec. ¶ 67).

165.     The Debtor has had to endure the unnecessary and relentless collection efforts of the IRS because of LAK3's continuous contumacious disregard of the Settlement Order. (Dunn Dec. ¶ 68).

166.     During this ordeal because of the erroneous 2019 LAK 1099 form, the IRS seized a $10,000.00 tax refund that was due to the Debtor. (Dunn Dec. ¶ 69).

167.     The Debtor's emotional and physical health have suffered because of the unrelenting nightmare that he has had to endure because of the erroneous LAK3 2019 1099 form that LAK3 issued. (Dunn Dec. ¶ 70).

168.     The Debtor constantly felt depressed because of the continuous barrage of collection activity by the IRS to collect federal income taxes on account of the erroneous LAK3 2019 1099 form that LAK3 issued to him. (Dunn Dec. ¶ 71).

169.     The Debtor gained weight because of the incessant stress from the IRS. (Dunn Dec. ¶ 72).

170.     The stress was debilitating. (Dunn Dec. ¶ 73). The Debtor developed high blood pressure, the Debtor developed debilitating headaches, and the Debtor developed nose bleeds because of the erroneous LAK 2019 1099 form. (Dunn Dec. ¶ 73).

171.     The Debtor developed sleep apnea because of the erroneous LAK3 2019 1099 form. (Dunn Dec. ¶ 74).

172.     The telephone phone calls, paper mail, and emails from the IRS for the past five years concerning the erroneous LAK3 2019 1099 have been unbearably devastating for the Debtor. (Dunn Dec. ¶ 75).

173.     The Debtor entered into a settlement with LAK3 in good faith to facilitate his fresh start from bankruptcy. (Dunn Dec. ¶ 76). The Debtor abided by the terms of the Settlement Order. (Dunn Dec. ¶ 76).

174.     However, as set forth herein, LAK3, through its managing member and agents, has violated the Settlement Order by refusing to promptly take reasonable remedial action to correct the erroneous LAK3 2019 1099 form that it issued to the Debtor. (Dunn Dec. ¶ 77).

175.     Mr. Kleinschmidt is a former CPA, a financial advisor, and LAK3's managing member. (Dunn Dec. ¶ 78).

176.     LAK3 has issued three erroneous 1099 forms for which it was required to issue corrected 1099 forms. (Dunn Dec. ¶ 79).

177.     The erroneous LAK3 2019 1099 form falsely reported that the Debtor had received $322,868.00 in income that he had never received.  (Dunn Dec. ¶ 80).

178.     By falsely reporting that the Debtor received $322,868.00 in income LAK3 created a huge tax liability for him. (Dunn Dec. ¶ 81).

179.     The inability to address this tax liability made the Debtor's life an unbearable nightmare. (Dunn Dec. ¶ 82).

180.     A person who was a CPA and is a financial advisor, such as Mr. Kleinschmidt, would understand that issuing an erroneous 1099 that falsely reported income would create financial havoc and other chaos for the Debtor. (Dunn Dec. ¶ 83).

181.     For more than two-and-one-half years LAK3 contumaciously and willfully defied the Settlement Order, which thwarted the Debtor's fresh start and severely hurt his family. (Dunn Dec. ¶ 84). Moreover, the Debtor has been emotionally, physically and financially harmed by LAK3's willful defiance of the Settlement Order. (Dunn Dec. ¶ 84).

182.     Mr. Kleinschmidt filed a Declaration that LAK3 did not issue the erroneous LAK3 2019 1099 form, which is false. (Dkt. No. 98-18).

183.      Under oath Mr. Kleinschmidt stated:

> 3. I have retained and directed the accounting firm of Perelson Weiner to prepare and file any tax forms that LAK3 has been required to file. No other firm or person has handled that work. The accountant at Perelson Weiner who handles that work is Jay A. Friedman, a Perelson Weiner Partner.
>
> 4. At no time did I or anyone else on behalf of LAK3 ever direct Mr. Friedman or anyone else at Perelson Weiner to issue an IRS Form 1099 to Debtor or any person or business connected to Debtor on behalf of LAK3 for Tax Year 2019.

(Kleinschmidt Dec. ¶¶ 3-4)(Dkt. No. 98-18).

184.       It is now known that LAK3 did issue the erroneous LAK3 2019 1099 form.

185.       It appears Mr. Kleinschmidt did interpose a misleading statement under oath to this Court.

186.       LAK3's conduct concerning the erroneous 2019 LAK3 1099 form is atrocious.

187.       For over two- and one-half years LAK3 willfully violated the Settlement Order, which is atrocious.

188.       LAK3 vigorously and wantonly opposed efforts to enforce the Settlement Order in this Court.

189.       Under these circumstances, this Court should award compensatory damages for emotional distress.

190.       LAK3's conduct is heinous. LAK3's continuous contumacious defiance of the Settlement Order also warrants the imposition of a $100.00 a day penalty for each day that LAK3 violated the Settlement Order.

## CONCLUSION

191.       For all the reasons set forth herein, the motion for contempt should be granted.

WHEREFORE, the Movant respectfully requests that this Court enter an order granting the motion for contempt; awarding compensatory damages; and such other and further relief as this Court deems just and equitable.

Dated: Yonkers, New York
    April 5, 2025

RESPECTFULLY SUBMITTED,

CARLOS J. CUEVAS, ESQ.
Attorney for Debtor
SEAN M. DUNN

By: */s/ Carlos J. Cuevas*
    Carlos J. Cuevas
    1250 Central Park Avenue
    Yonkers, New York 10704
    Tel. No. 914.964.7060
    Email ccuevas576@aol.com