**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x

In re:

SEAN M. DUNN

              Debtor.

----------------------------------------------------------------x

Chapter 7

Case No. 18-36566 (KYP)

**MEMORANDUM DECISION AND ORDER DENYING**
**DEBTOR'S MOTION FOR RECONSIDERATION**

**APPEARANCES:**

CARLOS J. CUEVAS, ESQ.
*Counsel for the Debtor*
1250 Central Park Avenue
Yonkers, New York 10704

KIRBY AISNER & CURLEY LLP
*Co-Counsel for LAK3, LLC*
700 Post Road
Suite 237
Scarsdale, New York 10583
By:    Julie Cvek Curley, Esq.
          Of Counsel

AMINI LLC
*Co-Counsel for LAK3, LLC*
131 West 35th Street, 12th Floor
New York, New York 10001
By:    Avery Samet
          Of Counsel

**HONORABLE KYU YOUNG PAEK**
**UNITED STATES BANKRUPTCY JUDGE**

**INTRODUCTION AND BACKGROUND**

On August 11, 2025, the Court denied Sean M. Dunn's ("Debtor") motion to sanction LAK3, LLC ("LAK3"), and granted LAK3's motion to exclude testimony of the Debtor's accounting expert, by entering the *Memorandum Decision and Order (1) Excluding Testimony of Brandon Lang, CPA, and (2) Denying Debtor's Motion to Hold LAK3, LLC in Civil Contempt* ("August 11 Decision") (ECF Doc. # 138).[1] The Debtor now moves for reconsideration of the August 11 Decision ("Reconsideration Motion"), and LAK3 objects to the motion.[2] For the reasons stated, the Reconsideration Motion is DENIED.

The Court assumes familiarity with the August 11 Decision, that decision is incorporated here by reference, and capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the August 11 Decision.

The dispute between the parties boils down to the following question of fact: did LAK3 file a 1099 tax form reporting to the IRS that the Debtor made $322,868 in 2019? If the answer to this question is yes, then LAK3's failure to timely file an amended 2019 1099 to reflect zero income is a violation of the Settlement Agreement and the Settlement Order. If the answer is no, then LAK3 did not violate the provision in the Settlement Agreement requiring LAK3 to file amended 1099s previously issued to reflect

---

[1] "ECF Doc. #_" refers to documents filed on the electronic docket of this bankruptcy case. The August 11 Decision is also available on the Westlaw database at 2025 WL 2315446.

[2] *See Debtor's Memorandum in Support of His [Motion] for Reconsideration of this Court's Memorandum Decision and Order (1) Excluding [Testimony] of Brandon Lang, CPA and (2) Denying Debtor's Motion to Hold LAK3, LLC in Civil Contempt*, dated Aug. 21, 2025 ("Debtor Brief") (ECF Doc. # 139); *LAK3 LLC's Opposition to the Debtor's Motion for Reconsideration*, dated Sept. 4, 2025 ("LAK3 Brief") (ECF Doc. # 141); and *Debtor's Reply Memorandum in Support of His Motion for Reconsideration of this Court's Memorandum Decision and Order (1) Excluding [Testimony] of Brandon Lang, CPA and (2) Denying Debtor's Motion to Hold LAK3, LLC in Civil Contempt*, dated Sept. 9, 2025 ("Debtor Reply") (ECF Doc. # 143).

2

that the Debtor made zero income from LAK3. In the August 11 Decision, the Court found that the Debtor failed to show by clear and convincing evidence that LAK3 had issued a 2019 1099 to the Debtor and denied the Debtor's Contempt Motion.

In the Reconsideration Motion, the Debtor argues that LAK3's eventual filing of a corrected 2019 1099 for the Debtor in November 2024 constituted a "judicial admission" that it had previously issued an *original* 2019 1099. (Debtor Brief ¶¶ 50-66.) In his reply brief, the Debtor argues that the Court overlooked material evidence showing that LAK3 issued a 2019 1099 for the Debtor. (Debtor Reply ¶¶ 11-59.) The Court took the matter under submission.[3]

## DISCUSSION

A.   **Legal Standard Governing Reconsideration**

Motions for reargument or reconsideration are subject to a "strict" standard and will "generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)). A motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Id.* (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)). "These criteria are strictly construed against the moving party so as to avoid repetitive arguments on issues that have been considered fully by the court." *Wansdown Props. Corp. N.V. v. 29 Beekman Corp.* (*In re Wansdown Props. Corp.*

---

[3]   Under Local Bankruptcy Rule 9023-1, "no oral argument shall be heard unless the Court grants the motion [for reargument] and specifically orders that the matter be re-argued orally." Bankr. S.D.N.Y. R. 9023-1(a). The Court did not schedule oral argument on the Reconsideration Motion.

*N.V.*), 626 B.R. 141, 144-45 (Bankr. S.D.N.Y. 2021) (quoting *Griffin Indus., Inc. v. Petrojam, Ltd.*, 72 F. Supp. 2d 365, 368 (S.D.N.Y. 1999)).

**B.    Judicial Admission**

"A judicial admission is a statement made by a party or its counsel which has the effect of withdrawing a fact from contention and which binds the party making it throughout the course of the proceeding." *Pillars v. Gen. Motors LLC* (*In re Motors Liquidation Co.*), 957 F.3d 357, 360 (2d Cir. 2020) (per curiam). "To constitute a judicial admission, the statement must be one of fact – a legal conclusion does not suffice." *Id.* "It is well-established that judicial admissions are limited to statements of fact, and do not include an attorney's legal theories, arguments, or conclusions." *Craft v. Covey*, No. 5:10–cv–246, 2011 WL 923487, at *4 (D. Vt. Mar. 4, 2011). The statement of fact must "have sufficient formality or conclusiveness to be a judicial admission." *Motors Liquidation Co.*, 957 F.3d at 360 (quoting *Berner v. British Commonwealth Pac. Airlines, Ltd.*, 346 F.2d 532, 542 (2d Cir. 1965)); *Banks v. Yokemick*, 214 F. Supp. 2d 401, 405 (S.D.N.Y. 2002) ("Judicial admissions are formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them.") (citation and internal quotation marks omitted).

In addition to the formality requirement, a statement must be "intentional, clear, and unambiguous" to constitute a judicial admission. *Motors Liquidation Co.*, 957 F.3d at 360-61; *see also id.* ("This requirement finds its roots in a 19th century Supreme Court case, *Oscanyan v. Arms Co.*, in which the Court explained that a court may act 'upon facts conceded by counsel' but will not do so where 'a doubt exists as to the statement of counsel.'") (quoting *Oscanyan v. Arms Co.*, 103 U.S. 261, 263 (1880)). "[J]udicial admissions relate to factual assertions made by one party concerning matters

4

peculiarly within its knowledge or control, that is, facts the declarant is best situated to know and attest to in managing its affairs . . . ." *Banks*, 214 F. Supp. 2d at 406. "Trial judges are given broad discretion to relieve the parties from the consequences of judicial admissions in the appropriate circumstances." *In re Methyl Butyl Ether Prods. Liab. Litig.*, 379 F. Supp. 2d 348, 371 (S.D.N.Y. 2005) (footnote omitted).

The Reconsideration Motion focuses on three statements by Michael Gordon, Esq. ("Gordon") – one of LAK3's attorneys. The first two statements come from correspondence Gordon had with David Azrin, Esq ("Azrin") – one of the Debtor's attorneys. As outlined in the August 11 Decision, Gordon and Azrin exchanged multiple correspondence between April 2023 and January 2024 regarding LAK3's requirement under the Settlement Agreement to file corrected 1099s for the Debtor. August 11 Decision at 7-11. In general, Azrin asked Gordon to have LAK3 file a corrected 2019 1099 for the Debtor, and Gordon responded that LAK3 never issued a 2019 1099. *See id.*[4] In his current motion, the Debtor focuses on an October 30, 2023 email from Gordon in which he stated as follows: "Since no 1099 was ever submitted by LAK3 for tax year 2019, there is no 1099 for LAK3 to correct." *See* August 11 Decision at 9 (quoting Gordon email).[5] Likewise, in a January 29, 2024 letter, Gordon stated that "LAK3 cannot and will not 'file a corrected 1099 form for 2019,' as no such form exists to correct." (*See id.* at 10 (quoting Gordon letter).) The third statement was made by Gordon during an April 2, 2024 hearing before this Court on the Debtor's motion to

---

[4] Among other things, Gordon suggested to Azrin that the Debtor address the matter directly with the IRS as his brother, Gerald Dunn, had done. August 11 Decision at 9 n.14 ("Gordon was informed by Gerald's attorney in March 2024 that Gerald and his wife resolved the issue directly with the IRS by explaining that LAK3 paid nothing to Gerald in TY 2019.").

[5] The full text of this email was quoted in the August 11 Decision at 9.

reopen the bankruptcy case.[6] Consistent with his prior email and letter, Gordon stated that LAK3 "withdrew the 1099s for tax years 2016 and 2017, but it can't withdraw something that it never issued." (*Transcript of Apr. 2, 2024 Hr'g* at 6:14-15 (ECF Doc. # 104).)

On November 6, 2024, LAK3 filed a corrected 1099 for the Debtor reflecting zero income for 2019. August 11 Decision at 11. In the current Reconsideration Motion, the Debtor argues that the act of filing a corrected 2019 1099 is an admission that LAK3 had issued an *original* 2019 1099 because Gordon had previously represented that LAK3 could not correct a tax form it never filed. (*See* Debtor Brief ¶ 37 ("By filing . . . a corrected 2019 1099 Form for [the Debtor] LAK3 acknowledged that it issued the erroneous 2019 1099 Form to [the Debtor].").)

The Debtor's argument fails. Initially, all of Gordon's statements were made prior to the Debtor's Contempt Motion but the Debtor did not argue as part of that motion that Gordon's statements constituted judicial admissions. A motion for reconsideration is a not vehicle to present the case under "new theories." *Analytical Surveys*, 684 F.3d at 52 (citation omitted).[7]

---

[6]    The Debtor sought to reopen the case to move for sanctions against LAK3. The Court granted that motion over LAK3's objection. (*See Order Reopening Bankruptcy Case*, dated Apr. 3, 2024 (ECF Doc. # 102).)

[7]    In the Contempt Motion, the Debtor raised a variation of this argument through his proposed accounting expert, Brandon Lang, CPA. Mr. Lang opined that LAK3's eventual filing of the corrected 2019 1099 was an admission that it filed an original 1099. The Court disallowed this opinion because it was "conclusory" and because Mr. Lang cited "neither authority nor evidence" to support his conclusion. August 11 Decision at 17. Even if the Court were to interpret the Debtor's current "judicial admission" argument as directly analogous to his prior argument conveyed through Mr. Lang, reconsideration would still be improper because a reconsideration motion is "not a vehicle for relitigating old issues" or otherwise allowing a "second bite at the apple." *Analytical Surveys*, 684 F.3d at 52 (citation omitted).

Assuming the argument was properly raised, it still fails on the merits. As stated above, only a conclusive statement of fact can constitute a judicial admission. *Motors Liquidation Co.*, 957 F.3d at 360 (citation omitted). When viewed in the full context of the correspondence exchange he had with Azrin, as well as during oral argument of the Debtor's motion to reopen, it is plain that Gordon's statements were part of his argument as to why LAK3 had no obligation to file a corrected 2019 1099. *Craft*, 2011 WL 923487, at *4 (judicial admissions do not include an attorney's arguments or conclusions). Gordon has no actual knowledge as to whether a taxpayer can file a corrected 1099 when the IRS reports income that the taxpayer did not earn. *Banks*, 214 F. Supp. 2d at 406 (judicial admissions relate to facts within the declarant's "knowledge or control").

Further, two of the three statements were made by Gordon in attorney-to-attorney communications via email or letter. These statements lack the formality that is required of judicial admissions. *Id.* at 405 (judicial admission are "formal concessions in the pleadings, or stipulations by a party or its counsel") (citation omitted).

LAK3's filing of the corrected 2019 1099 for the Debtor is likewise not a judicial admission that LAK3 filed a prior 2019 1099. A judicial admission must be "intentional, clear, and unambiguous." *Motors Liquidation Co.*, 957 F.3d at 360-61. Far from being a clear admission that LAK3 issued a prior 1099, LAK3's managing member stated that it filed a corrected 1099 "so that the IRS could use the form to correct the erroneous entries inputted into its electronic system." August 11 Decision at 11 (quoting Kleinschmidt Declaration).

Therefore, the Debtor's argument is improperly raised on a reconsideration motion and lacks merit.

7

**C.    Repetitive Arguments**

The Debtor's reply brief makes multiple references to the record and largely rehashes arguments made in the Contempt Motion leading to the August 11 Decision. This is improper argument on a reconsideration motion. *Analytical Surveys*, 684 F.3d at 52 (reconsideration motion is not a vehicle for "a rehearing on the merits, or otherwise taking a 'second bite at the apple'") (citation omitted).

One part of the reply brief merits clarification. In the Debtor Reply, the Debtor implies that the Court *concluded* that an IRS clerical error was the cause of the IRS tax transcripts showing 1099 income from 2019. (*See* Debtor Reply ¶ 41 ("It is respectfully submitted that this Court overlooked that the record was barren of evidence that the IRS had committed an error when it inputted the data concerning the erroneous LAK3 2019 1099 Form.").)

The Debtor mischaracterizes the Court's ruling. In the contempt proceeding, the Debtor had the burden to establish by "clear and convincing" evidence that LAK3 violated the Settlement Agreement by failing to correct every 1099 it issued for the Debtor. The Court ruled that the Debtor failed to clear this high evidentiary hurdle notwithstanding the existence of the tax transcripts because:

- Authorized representatives of LAK3 and its accounting firm provided sworn testimony that they never issued a 2019 1099 for the Debtor;
- Gordon, after conferring with LAK3's accountant, consistently informed Azrin that LAK3 never issued a 2019 1099 for the Debtor;
- There was no rational basis for LAK3 to issue a 1099 to the Debtor because by 2019, (i) more than a year had passed since LAK3 terminated the Debtor from the construction project, and (ii) the parties were actively litigating against each other;
- LAK3 had no motive to refuse correcting a 1099 it had issued; it would be nonsensical to intentionally breach the Settlement Agreement by correcting most, but not all, of the 1099s it issued to the Debtor;

8

- Although the parties had copies of all other original tax forms submitted by LAK3, no party had a copy of any 1099 (or 1096 tax form) issued by LAK3 for tax year 2019; and
- The income amount reflected in the tax transcript for 2019 - $322,868 – was the same dollar amount that LAK3 reported in its 2016 1099 issued for the Debtor, supporting the possibility that the 2019 income could have been due to an IRS clerical error.

August 11 Decision at 19-21.

Thus, the Court did not "conclude" that the IRS made a clerical error. Rather, it ruled that, based on the record, the Debtor failed to meet its burden of proof.

## **ORDER**

For the reasons stated, the Reconsideration Motion is DENIED.[8]

Dated:    January 20, 2026
         Poughkeepsie, New York

                                          /s/ *Kyu Y. Paek*
                                          Honorable Kyu Y. Paek
                                          United States Bankruptcy Judge

---

[8] Arguments made by the parties but not specifically addressed herein have been considered by the Court and rejected or rendered moot by the Court's ruling.